UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNTRUST MORTGAGE, INC.,

        Plaintiff,

v.                                          Civil Action No. 3:09cv00529

AIG UNITED GUARANTY CORPORATION
a/k/a UNITED GUARANTY CORPORATION, et al.,

        Defendants.

## AMENDED COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, for its Amended Complaint against Defendant United Guaranty Residential Insurance Company of North Carolina ("UGRICNC"), states as follows:

## INTRODUCTION AND NATURE OF DISPUTE

1.      SunTrust brings this action against UGRICNC for breach of contract, and alternatively for fraud, with regard to mortgage insurance sold to SunTrust by UGRICNC (the "Mortgage Insurance Policy"), that SunTrust purchased to protect itself against losses sustained by SunTrust as a result of payment defaults by borrowers on mortgage loans that SunTrust originated. Pursuant to the terms of the Mortgage Insurance Policy, UGRICNC agreed that it would cover the risks of and losses caused by payment defaults in connection with the mortgage loans originated by SunTrust. UGRICNC nevertheless has refused to pay valid claims submitted by SunTrust on certain individual loans and certain categories of loans, as more fully described hereinafter, despite repeated confirmations and representations to SunTrust that those loans qualified for coverage under the Mortgage Insurance Policy. In reliance on the representations

US_ACTIVE-102546063.5

and actions of UGRICNC, SunTrust commenced making the loans and continued to make the loans, which it would not have done if UGRICNC had informed SunTrust that the loans did not qualify for coverage by the Mortgage Insurance Policy.

2.      In an effort to escape its insurance coverage obligations to SunTrust and contrary to its repeated representations that coverage existed, UGRICNC has breached its obligations under the Mortgage Insurance Policy by systematically failing and refusing to pay valid claims made by SunTrust under the Mortgage Insurance Policy, resulting in substantial direct and consequential damages to SunTrust.  UGRICNC's actions have thus frustrated one of the fundamental purposes of the Mortgage Insurance Policy and consequently constitute a material breach of the parties' contract.

3.      Because of UGRICNC's wrongful conduct, SunTrust brings this Complaint seeking damages, including punitive damages, attorneys' fees and costs, for UGRICNC's breach of contract, bad faith claims settlement practices and, in the alternative, actual and constructive fraud.

## THE PARTIES

4.      Plaintiff SunTrust Mortgage, Inc. is a Virginia corporation with its principal place of business located in the City of Richmond, Virginia.  SunTrust is in the business of, *inter alia*, making mortgage loans to consumers for the purchase of residential real estate and the refinancing of existing mortgage loans.

5.      Defendant UGRICNC is an insurance company domiciled under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  Upon information and belief, UGRICNC is a subsidiary of United Guaranty Corporation whose ultimate parent is American International Group, Inc.

## JURISDICTION AND VENUE

6.      SunTrust seeks damages in excess of the minimum jurisdictional limits of this Court in connection with the insurance coverage purchased by and sold to SunTrust insuring SunTrust operations located in the City of Richmond, Virginia.

7.      Venue is proper in this Court as the causes of action alleged herein accrued, in whole or in part, in the City of Richmond, Virginia.

8.      Furthermore, UGRICNC does business in the City of Richmond, or otherwise transacts the business of insurance in Virginia.

## THE MORTGAGE INSURANCE POLICY

9.      SunTrust purchased insurance pursuant to the Mortgage Insurance Policy for a period of years, including 2004 through 2009.  The Mortgage Insurance Policy in effect during this period consists of, *inter alia*, a "Master Policy" and other documents defined therein as comprising the Master Policy.  A true and correct copy of the Master Policy received by SunTrust at or about the beginning of this period of coverage is attached as Exhibit A.

10.      The terms of the Master Policy were modified by a "SunTrust Mortgage Agreement Closed-End Purchase Money Seconds - Flow Business Risk Sharing Program" dated June 23, 2004 and an "AIG United Guaranty SunTrust Mortgage Agreement Closed-End Purchase Money Second—Flow Business Risk Sharing Experienced Rating Plan (ERP)" dated October 17, 2005 (the "Flow Plans"), copies of which are attached as Exhibits B and C.

11.      The Flow Plans "covers all products that are currently issued to [*sic* by] SunTrust Mortgage."

12.     Under the Flow Plans, the "loans covered" are "those loans submitted to United Guaranty for insurance that are still in force at the effective date and are not currently 30 days or more delinquent."

13.     Under the Flow Plans, the covered loans were loans that conformed to SunTrust Mortgage guidelines that were currently being used when the loan was made and had been mutually agreed upon.

14.     The Flow Plans extended coverage to "100% of the claim amount per loan minus any other recoverables."

15.     The Master Policy was also modified by one or more endorsements issued by UGRICNC, including one that allowed coverage under the Policy for mortgage loans with a 100% loan to value ration ("LTV").

16.     The Mortgage Insurance Policy is also comprised of "Certificates" assigned and issued by UGRICNC for each loan UGRICNC has undertaken an obligation to insure.  Based upon representations made by UGRICNC, it issued certificate numbers in lieu of individual certificate documents for the loans at issue.

17.     SunTrust paid substantial insurance premiums for the Mortgage Insurance Policy, which UGRICNC accepted and deposited.

**The IO Combo 100 Loans**

18.     In the early 2000's, SunTrust developed a second lien program for combined loan to value ratios in excess of 90%.  Because of regulatory requirements and internal SunTrust risk policies, SunTrust required lender-paid mortgage insurance for these second lien mortgage loans. UGRICNC insured the second lien mortgage loans since at least 2004.  In the latter part of 2004, SunTrust made plans to issue a new loan product consisting of second lien loans following

"traditionally underwritten" interest-only first lien loans with combined loan to value ratios of up to 100 percent ("IO Combo 100 Loans").  Because of the regulatory requirements and its own internal risk policies, SunTrust determined that it would not offer the IO Combo 100 Loans unless it could obtain lender-paid mortgage insurance from UGRICNC to cover potential losses on such loans.  Accordingly, SunTrust advised UGRICNC of the anticipated IO Combo 100 Loan program and sought confirmation from UGRICNC that such loans met UGRICNC's criteria for coverage under the Mortgage Insurance Policy.  In seeking such confirmation, SunTrust expressly advised UGRICNC that such loans would be "traditionally underwritten" (meaning that a potential borrower's ability to qualify for the loan would be assessed by a SunTrust employee engaged in loan underwriting) rather than being underwritten using an automated underwriting program.

19.   UGRICNC confirmed and represented orally and in writing both at the time SunTrust was considering making these loans and after it had commenced making the loans that the loans met UGRICNC's internal criteria for coverage by the Mortgage Insurance Policy.  Such representations included, but are not limited to:  (a) a January 7, 2005 email from Rick Hughes, who on information and belief is an officer of UGRICNC, responding to a request from Mary Pettitt of SunTrust that UGRICNC confirm that the IO Combo 100 Loans qualified for coverage under the Policy, in which Mr. Hughes confirmed the coverage and stated, among other things: "Let me know if this e-mail does not suffice for documentation of our acceptance."; and (b) repeated oral and written confirmations and representations by Pam Gavin, who on information and belief is also an officer of UGRICNC, to Mary Pettitt and Christine Stumbo of SunTrust that such loans were covered in full by UGRICNC, including, but not limited to, the following written communications:  May 20, 2005 emails between Mary Pettitt and Pam Gavin;

January 27, 2006 emails between Pam Gavin and Mary Pettitt; February 1, 2006 email between

Pam Gavin and Mary Pettitt; August 24, 2007 email between Mary Pettitt and Pam Gavin;

February 2008 email from Pam Gavin to Mary Pettitt.

20.     Based on the representations of UGRICNC that the IO Combo 100 Loans met

UGRICNC's internal criteria for coverage under the Mortgage Insurance Policy, SunTrust began

making such loans and ultimately made thousands of such loans, totaling millions of dollars.

SunTrust submitted such loans to UGRICNC for coverage under the Policy, and UGRICNC

routinely confirmed that it had issued certificates of insurance, identified by unique certificate

numbers for the covered loans, which confirmed that the loans were covered.  Based on

information made available to SunTrust as of the date of filing this Amended Complaint, such

certificate numbers were issued for each of the loans that are the subject of this action.  SunTrust

in turn paid UGRICNC in excess of $14 million for this coverage.  But for UGRICNC's repeated

representations and actions confirming that the IO Combo 100 Loans met UGRICNC's internal

criteria for coverage by the Mortgage Insurance Policy, SunTrust would not have commenced or

continued to make those loans.

21.     From the point SunTrust commenced making the IO Combo 100 Loans in March,

2005 through December, 2007, UGRICNC paid without objection or reservation of rights

approximately nine claims, totaling approximately $510,000.00, submitted by SunTrust as a

result of borrower defaults on IO Combo 100 Loans.

22.     However, as a result of the unanticipated sharp declines in the economy and the

overall real estate market in the United States that began in 2007 - 2008, borrower defaults on the

IO Combo 100 Loans, as well as other loans insured by the Mortgage Insurance Policy,

increased significantly, resulting in a substantial increase in the claims filed by SunTrust under

the Mortgage Insurance Policy.  Thereupon, in an effort to avoid its obligations under the

Mortgage Insurance Policy and contrary to its prior representations and actions confirming that

the IO Combo 100 Loans were covered under the Mortgage Insurance Policy, in January 2008

UGRICNC began to systematically refuse to cover losses suffered by SunTrust resulting from

defaults on the IO Combo 100 second-lien mortgages originated by SunTrust.  UGRICNC's

contrived excuse for denying such claims was that the interest-only first-lien mortgages were

traditionally underwritten and not underwritten using a particular automated software program

known as "Desktop Underwriter" ("DU"), which UGRICNC asserted was a requirement under

its internal guidelines.

       23.     The Mortgage Insurance Policy does not, however, contain a requirement that the

interest-only first-lien mortgages were to be underwritten using the Desktop Underwriter

program, the use of which would have been contrary to SunTrust's underwriting guidelines.

Indeed, at the time SunTrust initiated its IO Combo 100 Loan program, it was not possible to

underwrite such 100% LTV loans using this software, a fact that UGRICNC knew or should

have known at the time it agreed that the IO Combo 100 underwriting guidelines were acceptable

under the Mortgage Insurance Policy.  In fact, other specific requirements in SunTrust's IO

Combo 100 underwriting guidelines are irrelevant when a loan is underwritten using Desktop

Underwriter, which highlighted to UGRICNC that SunTrust was not employing Desktop

Underwriter in underwriting these loans.  UGRICNC therefore knew that SunTrust's

underwriting guidelines for the IO Combo 100 Loans called for traditional underwriting (not DU

underwriting), since the SunTrust underwriting guidelines were made available to UGRICNC

and UGRICNC had been told at the inception of the IO Combo 100 loan program that the loans

were being traditionally underwritten.  Moreover, the traditional underwriting procedures

employed by SunTrust to underwrite these loans provided a higher degree of scrutiny and protection against the risk of loss than would have been provided using the Desktop Underwriter program, if it could have been used to underwrite the loans.

24.     If in fact one of UGRICNC's internal criteria for providing coverage under the Mortgage Insurance Policy was that such loans be underwritten using the Desktop Underwriter program, such purported criteria was not disclosed to SunTrust until more than two years after SunTrust had originated thousands of such loans in the millions of dollars and UGRICNC had affirmatively represented that such loans were covered by the Mortgage Insurance Policy, had issued certificate numbers for each of such loans and had accepted millions of dollars in premiums for such coverage.

25.     Indeed, once United Guaranty began to assert that the IO Combo 100 product purportedly "had" to be underwritten using DU, UGRICNC set upon a campaign to misrepresent and deceive SunTrust's operations personnel into believing that UGRICNC's internal "matrices" overrode the SunTrust underwriting guidelines.  This deception included email communications between Pam Gavin of UGRICNC and Vicki Bolick of SunTrust on or about May 1, 2007.

26.     All of the IO Combo 100 Loans on which UGRICNC has denied claims are ones that were "products currently issued by SunTrust" and that "conform to SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon" as provided in the Flow Plans' terms.

### Other Loans on which UGRICNC has Wrongfully Denied SunTrust's Claims

27.     In addition to the IO Combo 100 Loans, UGRICNC agreed to insure other second liens under the Mortgage Insurance Policy, including second lien mortgage loans for which SunTrust did not independently verify all of the facts stated on the borrowers' loan applications.

UGRICNC also agreed to insure other types of loans that were underwritten by SunTrust and made to borrowers under various loan programs maintained by SunTrust.  For each of these loan programs, UGRICNC was made aware by SunTrust of its underwriting criteria for making the loans in question.

28.     UGRICNC was aware of and approved of SunTrust's underwriting practices with respect to these loans and charged and collected from SunTrust premiums for covering such mortgage loans.

29.     Borrower defaults on mortgage loans made by SunTrust have increased dramatically as a result of the economic turmoil in the United States that began in 2007-2008, which has resulted in significant job losses and "negative equity" due to declining home values, leading to a significant increase in SunTrust's claims for coverage under the Mortgage Insurance Policy for loans made under its various loan programs.

30.     Once it became clear that SunTrust's mortgage loan losses were increasing significantly, UGRICNC began to refuse to cover SunTrust's losses from defaults on such loans and has engaged in a pattern of asserting unfounded excuses for its failure to provide coverage for such loans, and has otherwise engaged in unreasonable claims processing with regard to such loans (hereinafter the "Defaulted Loans").

31.     One of the devices UGRICNC has employed to avoid paying claims on the Defaulted Loans is to assert an exclusion in the Mortgage Insurance Policy for borrower misrepresentation.  In doing so, UGRICNC has engaged in inappropriate post-loss underwriting with respect to such loans.

32.     Among UGRICNC's inappropriate post-loss underwriting practices are its practices of (a) ignoring the underwriting facts that existed at the time the loan application was

made; (b)  asserting that facts arising after the insured mortgage loan application was made and accepted establish the existence of a misrepresentation at the time the application was made; (c) the use of inappropriate "retro" appraisals to contend that the values of the properties securing the loans were materially lower than represented in the loan applications; and (d) asserting that information obtained through unreliable sources or obtained improperly is somehow accurate and demonstrates a misrepresentation at the time the application was made.

33.     The risk of increased defaults in an economic downturn is exactly the risk for which the Mortgage Insurance Policy was purchased by SunTrust.

34.     Instead of honoring its obligations under the Mortgage Insurance Policy, UGRICNC repeatedly and without reliable evidence on which to act, has systematically denied claims under the Mortgage Insurance Policy on Defaulted Loans and has unreasonably refused to consider SunTrust's evidence that the borrowers' applications did not contain material misrepresentations at the time they were presented to and accepted by SunTrust.

35.     UGRICNC's failure and refusal to honor its insurance coverage obligations promptly and in full is unreasonable, in material breach of the Mortgage Insurance Policy, contrary to its representations on which SunTrust relied to its detriment, in bad faith, and violates applicable law.  In attempting to evade its obligations, UGRICNC has engaged in deceptive and fraudulent conduct.

36.     SunTrust has satisfied all of the conditions under the Mortgage Insurance Policy and has paid all insurance premiums due and owing.

## FIRST CAUSE OF ACTION

### [Breach of Contract – IO Combo 100 Loans]

37.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 36 above as though set forth fully herein.

38.     UGRICNC has breached its obligations under the Mortgage Insurance Policy, as modified by the Flow Plans, by failing and refusing to cover SunTrust, in full, for its covered losses on the IO Combo 100 Loans.  As a direct and proximate result of UGRICNC's breach of contract, SunTrust is entitled to recover damages, including substantial consequential damages, which as of June 30, 2009 were not less than $88,000,000.00 but which continue to increase, plus prejudgment and post-judgment interest.

39.     Through the conduct described above, UGRICNC has engaged in bad faith claim settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair and equitable settlement of claims in which UGRICNC's liability has become clear; (d) compelling SunTrust to instigate the instant litigation to recover amounts due under the Mortgage Insurance Policy; (e) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to SunTrust; and (f) failing to pay SunTrust's claims without a legitimate or arguable reason.  As a direct and proximate result of the acts of UGRICNC, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## SECOND CAUSE OF ACTION

### [Breach of Contract – Defaulted Loans]

40.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 36 above as though set forth fully herein.

41.     UGRICNC has breached its obligations under the Mortgage Insurance Policy, as modified by the Flow Plans, by failing and refusing to cover SunTrust, in full, for its covered losses on the Defaulted Loans.  As a direct and proximate result of UGRICNC's breach of contract, SunTrust is entitled to recover damages, including substantial consequential damages, which as of June 30, 2009 were not less than $13,000,000.00 but which continue to increase, plus prejudgment and post-judgment interest.

42.     Through the conduct described above, UGRICNC has engaged in bad faith claim settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair and equitable settlement of claims in which UGRICNC's liability has become clear; (d) compelling SunTrust to instigate the instant litigation to recover amounts due under the Mortgage Insurance Policy; (e) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to SunTrust; and (f) failing to pay SunTrust's claims without a legitimate or arguable reason.  As a direct and proximate result of the acts of UGRICNC, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## THIRD CAUSE OF ACTION

### [Alternative Claim for Actual Fraud with Regard to IO Combo 100 Loans]

43.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 36 above as though set forth fully herein.

42.     Through its words, actions and silence when it had a duty to speak, UGRICNC intentionally misrepresented to SunTrust that the IO Combo 100 Loans met UGRICNC's internal criteria for coverage by the Mortgage Insurance Policy.  In commencing and continuing to make the IO Combo 100 Loans, SunTrust reasonably relied on the representations and actions of UGRICNC, and would not have made such loans if UGRICNC had timely informed SunTrust that UGRICNC believed that such loans were not eligible for coverage under the Policy. Furthermore, if in fact one of UGRICNC's internal criteria for coverage of such loans was that they had to be underwritten using the Desktop Underwriter program, UGRICNC was under a duty to timely disclose that fact to SunTrust.   Rather than disclose this supposed criteria to SunTrust, UGRICNC continued to represent that these traditionally underwritten loans were eligible for coverage, issued certificates of insurance for them, and collected millions of dollars in premiums on the loans.  If UGRICNC's current contention that, because the IO Combo 100 Loans were not underwritten using the Desktop Underwriter program they are not covered by the Mortgage Insurance Policy, is correct, as a result of its reliance on the prior contrary representations of UGRICNC SunTrust has suffered substantial actual and consequential damages resulting from making and continuing to make the IO Combo 100 Loans that it would not have incurred but for UGRICNC's misrepresentations.

43.     UGRICNC's actions were intended to benefit UGRICNC through its collection of substantial additional premiums, were malicious and were in knowing or reckless disregard for the rights and interests of SunTrust.

44.     As a result of UGRICNC's wrongful acts, SunTrust is entitled to recover as damages all losses sustained by it as a result of its commencing and continuing to make the IO Combo 100 Loans, which as of June 30, 2009 were not less than $76,000,000.00 but which continue to increase, plus punitive damages.

45.     As a direct and proximate result of the acts of UGRICNC, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

<u>**FOURTH CAUSE OF ACTION**</u>

**[Alternative Claim for Constructive Fraud with Regard to IO Combo 100 Loans]**

46.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 36 above as though set forth fully herein.

47.     Through its words, actions and silence when it had a duty to speak, UGRICNC misrepresented to SunTrust that the IO Combo 100 Loans met UGRICNC's internal criteria for coverage by the Mortgage Insurance Policy.  In commencing and continuing to make the IO Combo 100 Loans, SunTrust reasonably relied on the representations and actions of UGRICNC, and would not have made such loans if UGRICNC had timely informed SunTrust that UGRICNC believed that such loans were not eligible for coverage under the Policy. Furthermore, if in fact one of UGRICNC's internal criteria for coverage of such loans was that they had to be underwritten using the Desktop Underwriter program, UGRICNC was under a duty to timely disclose that fact to SunTrust.   Rather than disclose this supposed criteria to SunTrust, UGRICNC continued to represent that these traditionally underwritten loans were

eligible for coverage, issued certificates of insurance for them, and collected millions of dollars in premiums on the loans.  If UGRICNC's current contention that, because the IO Combo 100 Loans were not underwritten using the Desktop Underwriter program they are not covered by the Mortgage Insurance Policy, is correct, as a result of its reliance on the prior contrary representations of UGRICNC SunTrust has suffered substantial actual and consequential damages resulting from making and continuing to make the IO Combo 100 Loans that it would not have incurred but for UGRICNC's misrepresentations.

48.     UGRICNC's actions were intended to benefit UGRICNC through its collection of substantial additional premiums, and were in reckless disregard for the rights and interests of SunTrust.

49.      As a result of UGRICNC's wrongful acts, SunTrust is entitled to recover as damages all losses sustained by it as a result of its commencing and continuing to make the IO Combo 100 Loans, which as of June 30, 2009 were not less than $76,000,000.00 but which continue to increase.

50.     As a direct and proximate result of the acts of UGRICNC, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## **JURY DEMAND**

52.     Plaintiff requests a trial by jury on all issues so triable.

WHEREFORE, SunTrust prays that the Court award it the following relief:

1.     Under Count I, direct and consequential damages in an amount to be proven at trial, but not less than $88,000,000.00, plus reasonable attorney's fees and all costs of litigation incurred;

2.      Under Count II, direct and consequential damages in an amount to be proven at trial, but not less than $88,000,000.00, plus reasonable attorney's fees and all costs of litigation incurred;

3.      In the alternative as to Count I, under Count III direct and consequential damages in an amount to be proven at trial, but not less than $76,000,000.00, plus reasonable attorney's fees and all costs of litigation incurred, and punitive damages in an amount sufficient to punish UGRICNC and to make an example of UGRICNC in order to deter similar conduct in the future;

4.      In the alternative as to Count I, under Count IV direct and consequential damages in an amount to be proven at trial, but not less than $76,000,000.00, plus reasonable attorney's fees and all costs of litigation incurred;

5.      Pre-judgment and post-judgment interest; and

6.      Such other and further relief as may be deemed just and proper.

## <u>RESERVATION</u>

On October 22, 2009 the Court heard argument on the Motion to Dismiss filed by UGRICNC and United Guaranty Corporation ("UGC").  At the conclusion of the hearing, the Court granted SunTrust leave to file an Amended Complaint.  One of Defendants' contentions in support of the Motion had been that UGC and the John Doe defendants were not parties to the insurance contract at issue and were not proper parties defendant to SunTrust's breach of contract claim.  Because the parties did not agree on the operative insurance contract documents, the Court directed that the parties should confer and attempt to agree on the documents constituting the insurance contract as a means of resolving the dispute over the identity of the proper parties defendant to the contract count.

The parties thereafter had multiple discussions on this issue and UGRICNC produced certain documents which it contended constituted documents comprising the insurance policy at issue.  However, as of the extended deadline for SunTrust's filing this Amended Complaint, SunTrust does not believe that UGRICNC has produced all documents comprising the insurance policy.  SunTrust also denies that some of the documents that UGRICNC produced are part of the policy. Consequently, SunTrust is filing the present Amended Complaint and reserves its right to file a second amended complaint adding additional parties and claims once it has had an opportunity to review any additional documents received from UGRICNC and that may be produced by it and other parties during discovery.

SUNTRUST MORTGAGE, INC.

By Counsel

/s/ S. Miles Dumville
S. Miles Dumville (VSB #15748)
Curtis G. Manchester (VSB # 32696)
Travis A. Sabalewski (VSB #47368)
Reed Smith LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, VA  23219
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
        Counsel for Plaintiff, SunTrust Mortgage, Inc.

Joshua Gold
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
        Of Counsel for Plaintiff, SunTrust Mortgage, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2009 a copy of the foregoing was served by hand and through CM/ECF on:

> Wyatt B. Durrette, Jr., Esquire
> Durrette Bradshaw PLC
> 600 East Main Street, 20th Floor
> Richmond, VA 23219
> wdurrette@durrettebradshaw.com

and through CM/ECF on the following:

> John C. Millian, Esquire
> Christyne K. Brennan, Esquire
> Brian C. Baldrate, Esquire
> Gibson, Dunn & Crutcher LLP
> 1050 Connecticut Avenue, N.W.
> Washington, DC 20036-5306
> cbrennan@gibsondunn.com
> jmillian@gibsondunn.com
> bbaldrate@gibsondunn.com
> Counsel for United Guaranty Residential Insurance
>     Company of North Carolina

> /s/ S. Miles Dumville
> S. Miles Dumville (VSB No. 15748)
> Curtis G. Manchester (VSB No. 32696)
> Travis A. Sabalewski (VSB No. 47368)
> Reed Smith LLP
> Riverfront Plaza - West Tower
> 901 East Byrd Street, Suite 1700
> Richmond, VA 23219-4068
> Telephone:  (804) 344-3400
> Facsimile:  (804) 344-3410
> mdumville@reedsmith.com
> cmanchester@reedsmith.com
> tsabalewski@reedsmith.com
>     Counsel for SunTrust Mortgage, Inc.
> Joshua Gold
> Anderson Kill & Olick, P.C.
> 1251 Avenue of the Americas
> New York, NY 10020
> Telephone:  (212) 278-1000
> Facsimile:  (212) 278-1733
> jgold@andersonkill.com
>     Of Counsel for SunTrust Mortgage, Inc.