**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SUNTRUST MORTGAGE, INC.,

          Plaintiff,

    v.

AIG UNITED GUARANTY CORPORATION
a/k/a UNITED GUARANTY
CORPORATION, et al.,

          Defendants.

Civil Action No. 3:09cv00529

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT UNITED GUARANTY RESIDENTIAL**
**INSURANCE COMPANY OF NORTH CAROLINA'S**
**MOTION TO DISMISS COUNTS III AND IV**
**OF PLAINTIFF'S AMENDED COMPLAINT**

Christyne K. Brennan (Va. Bar No. 48114)
John C. Millian (admitted *pro hac vice*)
Brian C. Baldrate (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500 (main phone)
cbrennan@gibsondunn.com
jmillian@gibsondunn.com
bbaldrate@gibsondunn.com

Wyatt B. Durrette, Jr.
Virginia Bar Number 04719
DURRETTE BRADSHAW PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
(804) 775-6900 (phone)
wdurrette@durrettebradshaw.com

*Attorneys for Defendant United Guaranty*
*Residential Insurance Company of North Carolina*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. AMENDED COMPLAINT........................................................................................................2

    A.    The Parties ..................................................................................................................2

    B.    The "Mortgage Insurance Policy" ............................................................................2

    C.    The Loans at Issue ....................................................................................................5

    D.    SunTrust's Breach of Contract Claims (Counts I and II) .........................................6

    E.    SunTrust's Fraud Claims (Counts III and IV) ..........................................................6

III. SUNTRUST'S ACTUAL AND CONSTRUCTIVE  FRAUD CLAIMS MUST BE
DISMISSED ...........................................................................................................................9

    A.    Legal Standards.........................................................................................................9

    B.    Counts III and IV of SunTrust's Amended Complaint Remain Barred by
the Economic Loss Rule, Still Fail to State Claims for Actual or
Constructive Fraud, and Fail to Meet the Particularity Requirements of
Rule 9(b) .................................................................................................................10

        1.    SunTrust's Fraud Claims Fail on Their Face Because They Are
Barred by the Economic Loss Rule ...........................................................11

        2.    SunTrust's Fraud Claims Fail to State a Cause of Action .........................16

            a.    The January 7, 2005 Email ............................................................16

            b.    The May 20, 2005 Emails..............................................................17

            c.    The January 27, 2006 and February 1, 2006 Emails.....................19

            d.    The August 24, 2007 Email ...........................................................20

            e.    The February 2008 Email ..............................................................21

         3.    SunTrust's New Allegations Regarding a Purported "Campaign to
Deceive" Are Illogical and Irrelevant .......................................................23

IV. CONCLUSION.....................................................................................................................26

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page(s)</u>

*A.T. Massey Coal Company Inc. v. Rudimex*,
   No. 3:05cv190, 2006 U.S. Dist. LEXIS 1882 (E.D. Va. Jan. 9, 2006)……………………12, 13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)……………………………………………………9, 10, 22

*Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290 (Va. 2007)……………………………………15

*Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999)………………………………... 10

*Douros v. State Farm Fire & Cas. Co.,* 508 F. Supp. 2d 479 (E.D. Va. 2007)…………………10

*Dunn Constr. Co., Inc. v. Cloney*, 682 S.E. 2d 943 (Va. 2009)……………………………...11, 15

*Evaluation Research Corp. v. Alequin,* 439 S.E.2d 387 (Va. 1994)……………………………10

*Filak v. George*, 594 S.E.2d 610 (Va. 2004)……………………………………………………… 15

*Godwin v. Kerns*, 17 S.E.2d 410 (Va. 1941)…………………………………………………… 14

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)……………...10, 22

*Hillson Partners L.P. v. Adage, Inc.*, 42 F.3d 204 (4th Cir. 1994)………………………………10

*Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614 (4th Cir. 1999)………………………...14

*Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*,
   256 Va. 553, 507 S.E.2d 344 (1998)……………………………………………………… 15

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55 (Va. 1988)…………... 11

*Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323 (Va. 2005)………………...14

*Walker v. Prince George's County, Md*,
   No. 08-1462, 2009 U.S. App. LEXIS 16872  (4th Cir. July 30, 2009)………………………… 10

*White v. Potocska P.C.*, 589 F. Supp. 2d 631 (E.D. Va. 2008)…………………………………..10

<u>**Other Authorities**</u>

5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 (2d
   ed. 1990) ......................................................................................................................... 10

# I.

# INTRODUCTION

SunTrust Mortgage, Inc.'s ("SunTrust's") Amended Complaint is yet another futile attempt to assert unfounded fraud claims against United Guaranty Residential Insurance Company of North Carolina ("United Guaranty").  Other than conceding that United Guaranty Corporation and "John Does 1 through 10" are not parties to the insurance contracts at issue, SunTrust's Amended Complaint is strangely proverbial.  Indeed, at the hearing on United Guaranty's initial motion to dismiss, the Court granted the motion to dismiss with leave to replead and specifically directed SunTrust to: (1) clarify that its purported fraud claims only relate to the "combo loans"; (2) plead its fraud claims with particularity to satisfy Rule 9(b); (3) identify the "nexus between the fraud and the cause of action"; and (4) assert "plausible facts instead of conclusory language":

> With respect to the fraud counts, the fraud count relates only to the Combo plan, but the complaint doesn't really tell us that. The briefs do, but the complaint doesn't.  And the complaint needs to be pled with particularity to satisfy Rule 9(b) so that the people are on notice of what the fraud was, who committed it, when, and where.  And that isn't the case in this complaint.
>
> In addition to that, if it is the theory that it is the entering into these subsequent contracts or lines of business in connection with the master policy and the fraud relates to that, then somehow there needs to be a nexus between the fraud and the cause of action, and is it a fraud in the inducement to do what?  If your theory is fraud to induce the performance of a contract, then you need to assert that in a way that contains plausible facts instead of conclusory language, which is what the complaint does now.

October 22, 2009 Hearing Transcript at 69-70.

In its Amended Complaint, SunTrust acknowledges that its purported fraud claims relate only to second loan mortgages behind interest-only first mortgages and asserts a few additional allegations.  Otherwise, SunTrust flatly ignores the Court's direction.  While SunTrust's counsel appeared to recognize the significant undertaking that was required to survive another motion to

1

dismiss, stating, at the hearing, "we have basically got to do a major rewrite," SunTrust's

Amended Complaint is largely identical to its original Complaint.  For this reason, United

Guaranty stands by the arguments raised in its prior motion to dismiss and addresses the few new

allegations asserted by SunTrust in its Amended Complaint.  As addressed in Section III below,

SunTrust once again fails to adequately allege claims for either actual or constructive fraud

against United Guaranty; thus, Counts III and IV must be dismissed in their entirety, this time

with prejudice.

**II.**

**AMENDED COMPLAINT**

**A.      The Parties**

SunTrust Mortgage, Inc. is the sole plaintiff in this action.  Amended Complaint ¶ 4.

United Guaranty is now the sole defendant.  *Id.* ¶ 5.  SunTrust has noticeably abandoned its

attempt to state a claim against United Guaranty Corporation and it has *not* asserted a claim

against American International Group, Inc. (AIG).

**B.      The "Mortgage Insurance Policy"**

Paragraph 1 of the Amended Complaint states that this action is brought "with regard to

mortgage insurance sold to SunTrust by [United Guaranty] (the 'Mortgage Insurance Policy')."

What SunTrust refers to as the "Mortgage Insurance Policy" is described in paragraphs 9–16 of

the Amended Complaint, where SunTrust refers to a "Master Policy" attached as Exhibit A to the

Amended Complaint, related "Flow Plans" attached as Exhibits B and C to the Amended

Complaint, and "Certificates" issued by United Guaranty for "each loan [United Guaranty] has

undertaken an obligation to insure."  Despite the Court's direction to "tender with the amended

complaint the insurance policy," SunTrust fails to attach (or even identify) in its Amended

Complaint the specific insurance policies, including the declaration pages and endorsements,

2

under which SunTrust asserts its claims against United Guaranty.  SunTrust also fails to submit

to the Court a complete copy of Exhibit C.

Before SunTrust filed its Amended Complaint, United Guaranty's counsel provided to

SunTrust's counsel: (1) the declaration pages and endorsements for nine of the potentially

relevant insurance policies at issue in this litigation and (2) a *complete* copy of the document –

the "SunTrust Mortgage Agreement Closed-End Purchase Money Seconds – Flow Business Risk

Sharing Experienced Rating Plan (ERP) October 17, 2005" ("2005 Flow Plan") – at Exhibit C of

SunTrust's Amended Complaint.  Although SunTrust should already have these documents in its

own files, United Guaranty provided them to SunTrust once more on November 17, 2009

pursuant to the Court's direction to the parties to "sort out" the policy documents.  *See* October

22, 2009 Hearing Transcript at 72.  Notwithstanding, SunTrust fails to attach to its Amended

Complaint a complete copy of the 2005 Flow Plan at Exhibit C or any of the various declaration

pages and endorsements provided by United Guaranty, thus leaving unspecified which policies

SunTrust contends are at issue.  Instead, the only document that SunTrust attaches that was not

previously submitted with its original Complaint, is the "SunTrust Mortgage Agreement Closed-

End Purchase Money Seconds – Flow Business Risk Sharing Program June 23, 2004" ("2004

Flow Plan"), attached at Exhibit B to the Amended Complaint.  At that, the third page of Exhibit

B does not appear in fact to be part of the 2004 Flow Plan document.[1]

---

[1]   The third page of Exhibit B is not attached to the 2004 Flow Plan in United Guaranty's
business records.  Further, on its face, this page does not appear to belong with the other two
pages of the 2004 Flow Plan.  The 2004 Flow Plan, which has signature lines at the bottom of
page 2, does not reference an attachment, and the table on "page 3" is not otherwise referred
to on the first two pages.  In addition, the third page of Exhibit B contains a facsimile line of
July 2, 2004 (unlike the other pages) and the facsimile line identifies it as the second (not
third) page of the faxed document.

In its Amended Complaint, SunTrust also largely ignores the Reporting Program Guidelines (the "Guidelines") that are central to the Master Policy, and a key to this lawsuit. While SunTrust failed to even refer to the Guidelines in its original Complaint, SunTrust now appears to realize that it cannot avoid the fact that both parties understood the Guideline spreadsheets prepared by Pam Gavin at United Guaranty and provided to and reviewed by SunTrust constituted the applicable Guidelines under the insurance policies.  However, instead of addressing the Guidelines "head on," SunTrust attempts to avoid this obvious fact by referring to the Guidelines as United Guaranty's "*internal* guidelines," "*internal* criteria for coverage," or "*internal* 'matrices'," rather than the Guidelines specifically addressed in the Master Policy that set forth the criteria for coverage of SunTrust's loans.  Amended Complaint ¶¶ 19, 20, 22, 24, 25 (emphasis added).

Indeed, Section 3.1 of the Master Policy, titled "Coverage," states that "an extension of coverage under this Policy" can be obtained *only* by:

(1)     "*If a loan meets the Reporting Program Guidelines*," submitting a loan with a "New Loan Summary Form . . . [and] a properly completed New Loan Reporting Form" pursuant to § 3.1(a) (emphasis added);

(2)     "If the loan does not meet the Reporting Program Guidelines" in some respect, obtaining an "Exception Approval" pursuant to § 3.1(b), permitting a variance from the guidelines for that loan; or

(3)     "For any loan," submitting an individual application and obtaining a "Commitment" applicable to that loan (without reference to the Guidelines) pursuant to § 3.1(c).

Further, SunTrust expressly represents in the Master Policy that each loan submitted by SunTrust to United Guaranty under § 3.1(a) or § 3.1(b) "complies with the Reporting Program Guidelines . . . except as set forth in an Exception Approval issued by the Company under Section 3.1(b)." Master Policy, § 3.2(b)(iii).  Therefore, as we have previously noted, and contrary to the absence of any accurate reference to the Guidelines in SunTrust's Amended Complaint, this litigation

ultimately is about whether the loans at issue meet the Guidelines, and thus are or are not insured under the respective policies.  *See* October 22, 2009 Hearing Transcript at 52-54.

## C.       The Loans at Issue

The loans at issue in this litigation are so-called "Combo" second-lien mortgage loans, that is, second-lien mortgage loans issued by SunTrust "in combination" with first-lien mortgage loans.  In these mortgage loan arrangements, SunTrust typically gives the borrower both a first mortgage loan covering 80% of a home's purchase price and a "Combo" second mortgage loan covering another 10%, or 15%—or the entire remaining 20%—of the total purchase price.   A Combo second loan for 10% of the purchase price is known as a "Combo 90," because the first- and second-lien loans together cover 90% of the purchase price; similarly, a Combo second loan for 15% of the purchase price is known as a "Combo 95," and a Combo loan for the entire remaining 20% of the purchase price is known as a "Combo 100."

As does the original Complaint, the Amended Complaint seeks to bring claims with respect to two groups of Combo Loans.  The first group is comprised of "second lien loans following . . . interest-only first mortgages with combined loan to value ratios of *up to* 100 percent."  Amended Complaint ¶ 18 (emphasis added).  SunTrust confusingly refers to this group of loans as "IO Combo 100 Loans," even though they (a) are not actually interest-only ("IO") Combo loans, but rather Combo loans *following* interest-only *first-lien* ("IOF") loans, and (b) apparently include not only Combo 100s but Combo 90s and Combo 95s (note the phrase "up to" 100% financing; "up to" was missing in the original Complaint).  For clarity's sake we use herein the more accurate term "IOF Combo Loans."

The second group of loans addressed in the Amended Complaint includes what SunTrust refers to as "other loans" or other "Defaulted Loans," which are described as "*including* second lien mortgage loans for which SunTrust did not independently verify all of the facts stated on the

borrowers' loan applications." *Id.* ¶¶ 27, 30 (emphasis added).  In its original Complaint, SunTrust referred to loans for which SunTrust did not independently verify all of the facts stated on the borrowers' loan applications as "Non-Verification Loans," but, SunTrust abandons this term in its Amended Complaint apparently because, in addition to the formerly titled "Non-Verification Loans," SunTrust now also includes "other types of loans that were underwritten by SunTrust and made to borrowers under various loan programs maintained by SunTrust" in this second group of loans. *Id.* ¶ 27.  Although, SunTrust's Amended Complaint thus broadens the types of loans that may now be in dispute in this litigation, SunTrust fails to identify any specifics with respect to these mysterious "other loans."

**D.      SunTrust's Breach of Contract Claims (Counts I and II)**

SunTrust's breach of contract claims in its Amended Complaint are similarly pled to the breach of contract claims in its original Complaint.  The primary difference is that SunTrust now alleges that United Guaranty has breached its obligations under the "Mortgage Insurance Policy" *as "modified by the Flow Plans*."  Amended Complaint ¶¶ 37-42 (emphasis added).  SunTrust, however, fails to identify the terms of the "Mortgage Insurance Policy" that were purportedly modified by the Flow Plans.

**E.      SunTrust's Fraud Claims (Counts III and IV)**

Counts III and IV of the Amended Complaint assert claims for "actual fraud" and "constructive fraud," respectively.  Each asserts that (1) United Guaranty "misrepresented" that the IOF Combo Loans "met [United Guaranty's] internal criteria for coverage by the Mortgage Insurance Policy"; (2) SunTrust reasonably relied on those misrepresentations; and (3) SunTrust would not have made such loans if United Guaranty had "timely informed SunTrust that [United Guaranty] believed that such loans were not eligible for coverage under the Policy."  Amended Complaint ¶¶ 42 [sic], 47.  Contrary to its original Complaint, but consistent with its opposition

to United Guaranty's initial motion to dismiss, SunTrust now makes clear that its actual and constructive fraud claims only relate to the IOF Combo Loans and *not* the "other loans" or other "Defaulted Loans." *See id.* ¶¶ 37-42.

In SunTrust's original Complaint the alleged misrepresentations purportedly supporting SunTrust's fraud claims, all contained in paragraph 20 of that Complaint, consisted of (1) an email of January 7, 2005 from "AIG" (no name) to "SunTrust" (no name); (2) "repeated confirmations and representations" by Pam Gavin (no dates, nothing as to the form of communication, no recipients or listeners); and (3) representations by Jason Bohrer (again no dates, no form of communication, no recipients or listeners).  Original Complaint ¶ 20.

In SunTrust's Amended Complaint, the alleged misrepresentations purportedly supporting its fraud claims are similarly contained in a single paragraph 19 and now consist of (1) the same January 7, 2005 email referenced in the original Complaint (with sender and recipient now identified), and (2) five email communications between Pam Gavin of United Guaranty and Mary Pettitt of SunTrust, albeit without any indication at all of what statements in those emails allegedly constitute the misrepresentations.  Amended Complaint ¶ 19.  The Amended Complaint conspicuously omits the alleged unspecified oral misrepresentations by Jason Bohrer, mentioned in the original Complaint.  Paragraph 19 of SunTrust's Amended Complaint states, in its entirety:

> [United Guaranty] confirmed and represented orally and in writing both at the time SunTrust was considering making these loans and after it had commenced making the loans that  the loans met [United Guaranty's] internal criteria for coverage by the Mortgage Insurance Policy. Such representations included, but are not limited to: (a) a January 7, 2005 email from Rick Hughes, who on information and belief is an officer of [United Guaranty], responding to a request from Mary Pettitt of SunTrust that [United Guaranty] confirm that the [IOF Combo Loans] qualified for coverage under the Policy, in which Mr. Hughes confirmed the coverage and stated, among other things: "Let me know if this email does not suffice for documentation of our acceptance."; and (b) repeated

oral and written confirmations and representations by Pam Gavin, who on information and belief is also an officer of [United Guaranty], to Mary Pettitt and Christine Stumbo of SunTrust that such loans were covered in full by [United Guaranty], including, but not limited to, the following written communications: May 20, 2005 emails between Mary Pettitt and Pam Gavin; January 27, 2006 emails between Pam Gavin and Mary Pettitt; February 1, 2006 email between Pam Gavin and Mary Pettitt; August 24, 2007 email between Mary Pettitt and Pam Gavin; February 2008 email from Pam Gavin to Mary Pettitt.

Additionally, in an attempt to add "flavor" to its fraud claims—and likely to try and "inoculate" itself from the fact that SunTrust's position in the litigation is contravened by the written records and apparently as well by the "belief" of its own employees—SunTrust now identifies an alleged "campaign" by United Guaranty to "misrepresent and deceive SunTrust's operations personnel into believing that [United Guaranty's] internal 'matrices' overrode the SunTrust underwriting guidelines." Amended Complaint ¶ 25. According to the Amended Complaint, in January 2008 United Guaranty "began to systematically refuse to cover losses suffered by SunTrust" on IOF Combo Loans on the basis that the interest-only first mortgages accompanying those Combo Loans were not DU approved, despite the fact that (according to SunTrust) no "DU approval" requirement had ever been communicated to SunTrust. *Id.* ¶ 22. Further, according to SunTrust, "once United Guaranty began to assert that the IO Combo 100 product purportedly 'had' to be underwritten using DU, [United Guaranty] set upon a campaign to misrepresent and deceive SunTrust's operations personnel into believing that [United Guaranty's] internal 'matrices' overrode the SunTrust underwriting guidelines. This deception included email communications between Pam Gavin of [United Guaranty] and Vicki Bolick of SunTrust on or about May 1, 2007." *Id.* ¶ 25. As discussed in Section III below, this contention is nonsensical on its face; even setting aside the utter implausibility of the "campaign" SunTrust seeks to allege, it is not possible for this "campaign" to include an email from May 2007 when it supposedly began in January 2008.

Finally, although fairly implied in its original Complaint, SunTrust now expressly states that its fraud claims are pled *in the alternative* to its breach of contract claims. *See* "*Alternative Claim* for Actual Fraud with Regard to IO Combo 100 Loans," Amended Complaint ¶¶ 43-45 (emphasis added), and "*Alternative Claim* for Constructive Fraud with Regard to IO Combo 100 Loans," Amended Complaint ¶¶ 46-50 (emphasis added). As discussed in more detail in United Guaranty's prior motion to dismiss, SunTrust's fraud claims are thus essentially an effort, should SunTrust's breach of contract claim with regard to the IOF Combo Loans fail, to replace the actual terms of the written contracts with alleged contrary oral promises, thereby allowing SunTrust to recover the same damages it would have obtained had its breach of contract claim succeeded. *See* Memorandum in Support of United Guaranty Corporation's Motion to Dismiss and United Guaranty's Motion to Dismiss Counts II and III (Docket No. 10) ("Initial Opening Memorandum") at 16-19; Reply in Support of United Guaranty Corporation's Motion to Dismiss and United Guaranty's Motion to Dismiss Counts II and III (Docket No. 19) ("Initial Reply") at 11-17.

### III.

### SUNTRUST'S ACTUAL AND CONSTRUCTIVE FRAUD CLAIMS MUST BE DISMISSED

A.     **Legal Standards**

The Supreme Court has recently declared that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.; see also Walker v. Prince George's County, Md*, No. 08-1462, 2009 U.S. App. LEXIS 16872, at *13  (4th Cir. July 30, 2009).

As set forth in our Initial Opening Memorandum, under Virginia law, to state a claim for actual fraud SunTrust must adequately allege: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin,* 439 S.E.2d 387, 390 (Va. 1994) (emphasis added); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999); *White v. Potocska P.C.*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008).  To state a claim for constructive fraud, SunTrust must adequately allege: "1) a statement of material fact; 2) that is false, 3) made with the intent to induce reliance by another, 4) actual reliance by the other party on the statement, and 5) damages as a result." *Douros v. State Farm Fire & Cas. Co.,* 508 F. Supp. 2d 479, 484 (E.D. Va. 2007) (emphasis added).

To comport with Rule 9(b), the "circumstances" constituting fraud are required to be pled with particularity; namely, a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).  "Mere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)." *Id.*; *see also Hillson Partners L.P. v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994).

**B.     Counts III and IV of SunTrust's Amended Complaint Remain Barred by the Economic Loss Rule, Still Fail to State Claims for Actual or Constructive Fraud, and Fail to Meet the Particularity Requirements of Rule 9(b)**

SunTrust has now attempted to plead its fraud claims four times.  The first was in its original Complaint, where SunTrust asserted purported fraud claims with respect to the IOF

Combo Loans and Non-Verification Loans.  The second was in its opposition to United

Guaranty's prior motion to dismiss, where SunTrust conceded that its fraud claims did not relate

to the Non-Verification Loans and then, in direct violation of Fed. R. Civ. P. 12(b)(6), added

numerous entirely new factual assertions in an attempt to buttress the Complaint.  SunTrust's

third effort was at oral argument on United Guaranty's initial motion to dismiss, where SunTrust

asserted what appeared to be a type of fraud in the inducement claim nowhere to be found in its

original Complaint.  The Amended Complaint is now SunTrust's fourth effort.  As explained

below, however, SunTrust's Amended Complaint fares no better than its original Complaint.

SunTrust's only slightly modified fraud claims remain barred by the economic loss rule, still fail

to state any cause of action, and once again fall short of the particularity requirements of Rule

9(b).

     **1.**     **SunTrust's Fraud Claims Fail on Their Face Because They Are Barred by the
Economic Loss Rule**

     As explained in United Guaranty's prior motion to dismiss, Virginia follows the so-called

"economic loss rule," which provides that "recovery in tort is available only when there is a

breach of duty to 'take care for the *safety* of the person or property of another,' as opposed to

purely economic losses for which contract damages could make a plaintiff whole."

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988).  As the

Virginia Supreme Court recently noted, the rule is necessary to prevent 'turning every breach of

contract into an actionable claim for fraud' simply because of misrepresentations of the

contractor entwined with a breach of the contract."  *Dunn Constr. Co., Inc. v. Cloney*, 682 S.E.2d

943, 947 (Va. 2009) (citations omitted).  Under the economic loss rule, where allegations of

fraud are "considerably intertwined with allegations of breach of contract, a court must take a

close look at the nature of the damages being sought for each claim.  Fraud claims should be

dismissed when a plaintiff fails to sufficiently allege damages flowing from fraudulent conduct .

. . . This principle is typically enforced when the damages alleged in support of a claim for fraud,

in essence, share the same root as the damages alleged in support of a claim for breach of

contract." *A.T. Massey Coal Company Inc. v. Rudimex*, No. 3:05cv190, 2006 U.S. Dist. LEXIS

1882, at *2-3 (E.D. Va. Jan. 9, 2006).

Here, SunTrust's fraud claims are entirely intertwined with its breach of contract claim;

indeed those fraud claims are simply an effort to recover under a different legal theory the same

alleged compensatory damages sought in the breach of contract claim in Count I.  By pleading

the fraud counts expressly in the alternative, SunTrust makes clear its goal of substituting the

actual written contract terms with the alleged contrary promises in order to recover damages it

would be able to obtain if it succeeds on the breach of contract claim.  The Amended Complaint

could hardly be more clear on this point.  As to the breach of contract claim in Count I, the

Amended Complaint alleges that:

> [United Guaranty] has breached its obligations under the Mortgage Insurance Policy, as
> modified by the Flow Plans, by failing and refusing to cover SunTrust, in full, for its
> *covered losses on* the [IOF Combo Loans.]  As a direct and proximate result of [United
> Guaranty's] breach of contract, SunTrust is entitled to recover damages, including
> substantial consequential damages.

Amended Complaint ¶ 38 (emphasis added).

In its fraud claims, Counts III and IV, SunTrust alleges that United Guaranty

misrepresented or, otherwise, intentionally misrepresented to:

> SunTrust that [IOF Loans] met [United Guaranty's] internal criteria for *coverage* by the
> Mortgage Insurance Policy  . . . and continued to represent that these traditionally
> underwritten loans were eligible for coverage. . . .[a]s a result of its reliance on the prior
> contrary representations of [United Guaranty] SunTrust has suffered substantial actual
> and consequential damages.

*Id.* ¶ 42[sic], and ¶47 (emphasis added).  Thus, both the breach of contract claim and the fraud

claims seek consequential damages for losses that SunTrust asserts in its breach of contract claim

*are in fact* covered under the "Mortgage Insurance Policy," and asserts in its fraud claims were

*represented* to be covered by that same Policy.  This is made even more clear by the fact that the

fraud claims are explicitly pled in the alternative to the breach of contract claim.

The present circumstances are very much like those before this Court in *A.T. Massey*.

There, as here, plaintiff brought a breach of contract claim and claims for actual fraud and

constructive fraud, respectively.  As here, the plaintiff asserted (a) the existence of a contractual

obligation upon which plaintiff relied to perform; (b) representations on which the plaintiff

allegedly also relied for the same performance; and (c) damages resulting from the failure by

defendant to pay as allegedly agreed under the contract.  This Court concluded that in these

circumstances the economic loss rule required dismissal of the counts for actual and constructive

fraud:

> It is clear to the Court that A.T. Massey's claims for actual and constructive fraud
> cannot coexist with its breach of contract claim. . . . A.T. Massey does allege that
> Defendants made false representations concerning their ability to persuade
> MMTC [the intended ultimate purchaser] to accept the coal specified in the
> Massey Contracts.  The Court makes no ruling as to the merit of these allegations
> but does find that the damages resulting from this alleged fraud simply cannot be
> isolated from the damages sought under Count One's breach of contract claim.
> As discussed earlier, a court must dismiss fraud-based claims if the plaintiff has
> not properly alleged damages flowing from fraudulent conduct, independent of
> damages for breach of contract.  A.T. Massey's basic and overarching grievance
> in this litigation is that Rudimex wrongfully rejected the second shipment and
> wrongfully repudiated the final six shipments of coal.  Because A.T. Massey
> could be made whole through damages for breach of contract, the Court must
> dismiss Counts Two and Three under Virginia law.

*A.T. Massey*, 2006 U.S. Dist. LEXIS 1882, at *12, *14-15.

The essentially "contractual" nature of SunTrust's purported fraud claims is further

brought home by consideration of the parol evidence rule.  That rule provides that "[i]n

controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." *Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005) (quoting *Godwin v. Kerns*, 17 S.E.2d 410, 412 (Va. 1941)); *see also Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614, 624 (4th Cir. 1999)) ("Under Virginia law . . . courts adhere to the 'plain meaning' rule in interpreting and enforcing a contract. 'Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.'" (internal citations omitted)). Permitting SunTrust's fraud claim to proceed based on statements allegedly made by United Guaranty, a party to a written contract with SunTrust, during performance of that contract, regarding what the contract meant, would permit nearly any disappointed contract party to concoct, as SunTrust seeks to do, an "alternative" claim for fraud if the other side's interpretation of the contract prevails. Virginia's economic loss rule precludes such a result, however, and accordingly Counts III and IV must be dismissed for this reason.

Further, with regard to fraud in the inducement, in *Dunn Construction Co., Inc. v. Cloney*, the Virginia Supreme Court dealt with a situation where the parties had entered into a contract for the construction of a home, and after work was completed the contractor made "unquestionably deliberate and false" statements regarding repairs undertaken in order to induce the homeowner's payment of amounts due under the contract. While stating that "[w]e do not condone such misrepresentations," the Court made clear that misrepresentations regarding matters covered by contract cannot support an independent tort claim—*even if* they result in "inducement" to perform an executory contract.

> [W]e have consistently adhered to the rule that, in order to recover in tort, "the
> duty tortiously or negligently breached must be a common law duty, not one

14

existing between the parties solely by virtue of the contract." . . . [I]n *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998), . . . we explained that the determination whether a cause of action sounds in contract or tort depends on the source of the duty violated. . . . *Dunn's false representation that he had made adequate repairs thus related to a duty that arose under the contract. The fact that the representation was made in order to obtain payment from Cloney does not take the fraud outside of the contract relationship.*

*Dunn*, 682 S.E.2d at 947 (emphasis added). Here, as in *Dunn*, SunTrust fails to allege any independent duty that United Guaranty owes SunTrust beyond the terms of the insurance policies; therefore, SunTrust's fraud and constructive fraud claims must be dismissed.

Finally, the Supreme Court of Virginia has repeatedly held that disagreements *specifically relating to insurance contracts* fall under the province of contract law and not the law of tort. In *Filak v. George*, plaintiffs alleged that defendant told them if they purchased an "elite" policy, which provided for coverage in the event of a fire resulting in the loss of their house, plaintiffs would receive "the total replacement costs 'within a few days or the next day' after sustaining such a loss.'" 594 S.E.2d 610, 611 (Va. 2004). The "elite" policy, however, provided that in the event of a complete loss, plaintiffs were entitled to receive "total replacement costs *only* if they repaired and replaced the house within six months after receiving payment for the 'actual cash value of the damage.'" *Id.* at 611-12 (emphasis added). After their house burned to the ground, plaintiff's alleged constructive fraud against the insurance agent because the insurance policy did not actually provide as the agent allegedly promised. The Supreme Court rejected plaintiffs constructive fraud claim, stating that "whatever duties [defendant] may have assumed arose solely from the parties' alleged oral contract," not a common law duty. *Id.* at 619; *see also Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) ("the allegations [are] insufficient to state an actionable claim for fraud in the inducement because [plaintiff] failed to assert that [defendant's] alleged actions violated any

15

duties apart from those contract duties").  Similar to *Filak* and *Augusta Mutual*, the only

purported duty that SunTrust alleges that United Guaranty violated is a duty directly related to

the contract and not any duty apart from the contract.  Thus, as in *Filak* and *Augusta Mutual*,

SunTrust's fraud claims fail.

> **2.      SunTrust's Fraud Claims Fail to State a Cause of Action**

The "misrepresentations" purportedly supporting SunTrust's fraud claims are all

referenced in Paragraph 19 of the Amended Complaint and are limited to (1) the January 7, 2005

email (previously referenced in its original Complaint) and (2) five email communications

between Pam Gavin of United Guaranty and Mary Pettitt of SunTrust (without any specifics of

what was said in these communications).  Amended Complaint ¶ 19.  The five Gavin/Pettitt

emails are allegedly from: (1) May 20, 2005; (2) January 27, 2006; (3) February 1, 2006; (4)

August 24, 2007; and (5) "February 2008."  Amended Complaint ¶ 19.  SunTrust declined to

attach any of these emails to its Amended Complaint.

Notwithstanding the identification of these handful of additional email communications,

however, SunTrust has completely disregarded the Court's guidance that SunTrust identify the

"nexus between the fraud and the cause of action."  Indeed, none of the email communications

that SunTrust references in its Amended Complaint come close to identifying a false

representation by United Guaranty much less one upon which SunTrust could have relied on in

deciding to make IOF Combo Loans.  Put differently, nothing in these emails can plausibly

establish any nexus between any United Guaranty representations and SunTrust's claim that

these representations caused SunTrust to make or continue to make IOF Combo Loans.

> **a.      The January 7, 2005 Email**

The January 7, 2005 email from Rick Hughes to Mary Pettitt, previously referenced

generically in SunTrust's original Complaint and identified in its initial Opposition, lacks any

language that could possibly suggest, as SunTrust claims, that IOF Combo Loans "qualified for coverage under the Policy" and met the criteria set forth in the Guidelines.  As we have previously explained, this email exchange is completely irrelevant to the issue of whether IOF Combo Loans are covered without DU Approval, a requirement of the Guidelines for interest only first mortgages.  Initial Reply at 18.

The January 7, 2005 email merely contains a request from Mary Pettitt at SunTrust for certain "combo enhancements," specifically to: (a) increase the debt to income ratio on traditionally underwritten Combo 95 and 100 loans; (b) confirm there were no additional requirements on loans that were underwritten by DU/LP via the Automated Underwriting System ("AUS"); and (c) increase the maximum combined loan amounts for both traditionally and AUS underwritten Combo 95 and 100 loans.  Rick Hughes responded to Mary Pettitt's email by agreeing to those three requests.  *See* Exhibit 1.  This email exchange does not even mention "interest only" first combo loans and nothing in the email even suggests an understanding that all IOF Combo Loans are (according to SunTrust) traditionally underwritten.  Further, this email is clearly not a recitation of all terms and conditions of coverage, as it addresses only a few specific terms.  Rather, on its face the email makes clear that there are different types of Combo 95 and Combo 100 loans, some that are traditionally underwritten, and others that are underwritten with AUS.  In no way can one infer any plausible explanation of how any representation in the January 7, 2005 email influenced SunTrust's decision to make IOF Combo Loans.

### b.        The May 20, 2005 Emails

Despite the Amended Complaint's reference to the May 20, 2005 emails (plural), United Guaranty has located only one email string that includes a May 20, 2005 email between Pam Gavin of United Guaranty and Mary Pettitt at SunTrust.  *See* Exhibit 2.  As with the January 7, 2005 emails, this email string in no way suggests that United Guaranty has represented to

SunTrust that the IOF Combo Loans at issue here–loans where SunTrust failed to obtain DU Approval on the accompanying IOF loan–met the criteria set forth in the Guidelines.  To the contrary, the exchange makes clear that both SunTrust and United Guaranty understood that the applicable Guidelines were as set forth in the numerous guideline spreadsheet matrices (the "Guideline Spreadsheets") Gavin sent to Pettit which unequivocally set forth a requirement that IOF Combo Loans must have DU Approval.

The May 20, 2005 email from Pettitt titled "SunTrust Guideline Change Approvals" responds to a May 6, 2005 email from Gavin stating that "[a]ttached are the spreadsheets that have the new approved guidelines in bold italics," and attaching the most recent Guideline Spreadsheets.  Exhibit 2.  Pettitt's responding email sought clarification from Gavin on one of the requirements set forth in those Guidelines, asking: "Pam – did the $850,000 apply to second homes and investment properties?  Any feedback on the LLC item?  thanks." *Id*.  Gavin responded to Pettitt's questions on May 23, 2005. *Id*.

Nothing in this exchange remotely supports SunTrust's fraud claim.  As an initial matter, Pettitt's specific question to Pam Gavin in this email chain does not even concern IOF Combo Loans.  More important, the attachment to this email chain *directly refutes* the central assertion in the Amended Complaint that the "requirement that such [IOF Combo] loans be underwritten using Desktop Underwriter  . . .was not disclosed to SunTrust until more than two years after SunTrust had originated thousands of such loans in the millions of dollars."  Amended Complaint ¶ 24.  The Guideline Spreadsheets attached to the email (and referenced by Pettitt) clearly set forth the DU Approval requirement for IOF Combo Loans, stating that interest-only first-lien loans may be coupled with the various Combo Loans listed in those spreadsheets, stating "if DU approved" or with "DU/LP approve/accept" – apart from the case of "Investment

Properties Only," where IOF Combo Loans are prohibited. *See* Exhibit 2 at pp. 1, 3, 6, 8, 10, 12, 14, and 15.[2] And as this email exchange also makes clear, Pettitt and Gavin were discussing these Guidelines and using them as the criteria for coverage as of May 2005, very shortly after SunTrust alleges it commenced making IOF Combo Loans in March 2005. Amended Complaint ¶ 21.[3]

Far from supporting a claim of misrepresentation, the May 20, 2005 email and its attachment thus directly refute SunTrust's assertions that it was unaware of the DU Approval requirement on IOF Combo Loans until more than two years after SunTrust started making those loans. Indeed, the attached Guideline Spreadsheets destroy the central argument in SunTrust's fraud claim that United Guaranty did not convey to SunTrust that there was a requirement for DU Approval on IOF Combo Loans.

### c. The January 27, 2006 and February 1, 2006 Emails

The Amended Complaint also references January 27, 2006 and February 1, 2006 emails between Gavin and Pettitt. Given that these emails appear to be part of the same email exchange, we address them together. As with the emails addressed above, these emails simply do not permit any plausible inference that United Guaranty misrepresented the requirements for providing insurance on IOF Combo Loans–for the simple reason that the emails do not even refer to, or in any way reference, IOF Combo Loans.

_____

[2] The Guideline Spreadsheets did not include handwritten page numbers, but for ease of reference they have been added.

[3] United Guaranty will establish that the DU Approval requirement was first communicated to SunTrust prior to March 2005.

On January 27, 2006, in an email titled "Combo Enhancement," Pettitt wrote to Gavin stating that, "[o]ur Retail Line of Business manager has asked if I could pursue the following enhancement.  It appears we allow this with our Flex Equity HELOC today so we are trying to stay consistent."  Exhibit 3.  The document attached to Pettitt's email—her requested enhancement—references Combo 100 Loans and it lists "eligible terms," one of which is "DU Approve/Eligible recommendations and traditional underwriting are eligible for Combo 100." *Id.*  It also states that the "more restrictive of the first mortgage or second mortgage guidelines always apply."  *Id.*  Gavin responded to Pettitt in a February 1, 2006 email informing Pettitt that her request had been approved.  *See id.*  Gavin also stated that she would "add to the guideline sheets and send them to [Pettitt]."  *Id.*

SunTrust cites an email exchange that, at most, indicates that *some* Combo 100 Loans may be traditionally underwritten, a proposition that is not in dispute.  But the email does not refer to, or in any way reference, IOF Combo Loans, which are the specific subset of "Combo Loans" at issue in SunTrust's fraud claims.  Even viewed in the light most favorable to SunTrust, therefore, nothing in this email can possibly be construed to suggest IOF Combo Loans (traditionally underwritten or not) would be covered by United Guaranty without DU Approval.  What the email exchange does do, however, is again reinforce that both Gavin and Pettitt recognized that the Guideline Spreadsheets contained the Guidelines governing insurance coverage.

### d.    The August 24, 2007 Email

The August 24, 2007 email between Pettitt and Gavin is titled "Combo Int. Only Seconds."  *See* Exhibit 4.  This email likewise does not support SunTrust's position.  As the email's title suggests, the discussion it contains concerns interest only *second* mortgages, and not IOF Combo Loans, that is, Combo Loans coupled with "interest-only *first* lien loans with

20

combined loan to value ratios of up to 100 percent," which are the loans at issue in the Amended Complaint.  Amended Complaint ¶ 18 (emphasis added).  Moreover, the emails do not discuss the use of "traditional" versus DU underwriting requirements even for interest-only *second* Combo Loans; rather, they simply discuss whether United Guaranty intends to tighten the eligibility requirements for borrowers to qualify for interest-only second mortgages.

As indicated in Exhibit 4, on August 22, 2007, Pettitt emailed Gavin inquiring, "can you advise if UG is considering the second mortgage—if Interest Only—be qualified at fully amortizing fully indexed or will you continue to allow qualification at the interest only payment?"  Exhibit 4.  SunTrust thus wished to know whether United Guaranty would require borrowers to demonstrate only that they could make mortgage payments on the interest-only payment amount, or whether borrowers would have to demonstrate that they had the ability to make the payments once they also included amortization of principal and the floating interest rate had been adjusted upward to the "fully indexed rate."  Gavin responded that United Guaranty found it "prudent underwriting to use the fully indexed rate with the amortizing term on the 2nd as well."  *Id.*  Pettitt replied, among other things, by requesting that if [United Guaranty] requires fully indexed fully amortized (FIFA) on interest only second mortgages hopefully "[United Guaranty] can revise [the debt to income] ratio."  Gavin responds on August 24 stating that she "do[oes]n't think that's a problem" to raise the DTI to 50%.  *Id.*

This exchange simply email does not address IOF Combo Loans at all, and hence in any way does not support SunTrust's assertion that United Guaranty represented that it would cover IOF Combo Loans absent DU Approval.

### e.   The February 2008 Email

The last email referenced in paragraph 19 of the Amended Complaint is an unspecified "February 2008" email from Gavin to Pettitt.  Given the lack of any specific date, United

Guaranty requested that SunTrust provide a copy of the referenced email, and received in return the communication attached hereto as Exhibit 5.  United Guaranty has been unable to locate in its records any email with a text identical to the text in the document sent by SunTrust.  For the purposes of this Memorandum, however, United Guaranty accepts Exhibit 5 as what it purports to be.

Exhibit 5 is the only document referenced in the Complaint—other than the emails transmitting the Guideline Spreadsheets explicitly setting forth the DU Approval requirement—that even mentions "a combo behind an IO 1st," that is, an IOF Combo Loan.  This document, likewise, is inconsistent with, rather than supportive of, SunTrust's assertion that United Guaranty "confirmed and represented" that the IOF Combo Loans at issue here—those where SunTrust failed to obtain DU Approval on the accompanying interest-only first-lien loans— "qualified for coverage under the Policy" notwithstanding the failure to obtain DU Approval.

Exhibit 5 states in pertinent part that:

> We located the document from SunTrust that requested multiple combo enhancements.  In that document is the request to insure a combo behind an IO 1st.  Sue Huber asked for the guideline enhancement on 12/1/03.  The [United Guaranty] Risk Committee approved an IO first *on DU approved loans* in March of '04.  [Emphasis added].

Exhibit 5 thus states exactly the same thing as do the Guideline Spreadsheets attached as part of Exhibit 5, discussed above—United Guaranty *has* agreed to provide mortgage insurance on IOF Combo Loans, but *only if* the "IO First" is "DU approved."

In order to state a fraud claim, SunTrust must plead with particularity "the time, place, and contents of the [allegedly] false representations, as well as the identify of the person making the misrepresentation and what he obtained thereby," *Harrison*, 176 F.3d at 784, and these alleged misrepresentations must contain sufficient factual substance, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  This Court has already

concluded that SunTrust's original Complaint, which contained reference to only a single specific communication (the January 7, 2005 email), as well as the same vague references to other "oral and written confirmations and representations by Gavin," failed to meet this test. SunTrust's attempt to now meet this test by adding five more emails to its list must likewise fail. If anything, SunTrust has gone "backwards," since none of these emails provides any "particularity" in support of SunTrust's fraud claims, and several provide "particularity" that *refutes* SunTrust's fraud claims. After four attempts to do so, SunTrust thus still utterly fails to plead a fraud claim that is plausible on its face. Counts III and IV accordingly should be dismissed, this time with prejudice.

### 3. SunTrust's New Allegations Regarding a Purported "Campaign to Deceive" Are Illogical and Irrelevant

In addition to its specific instructions that SunTrust re-plead its claims with particularity and establish a nexus between the alleged fraud and SunTrust's cause of action, this Court also instructed SunTrust to assert "plausible facts instead of conclusory language." SunTrust's utter failure to abide by the Court's instructions is made particularly clear by its new effort to allege that United Guaranty set out on a "campaign" to "misrepresent and deceive SunTrust's operations personnel into believing that [United Guaranty's] internal 'matrices' overrode the SunTrust underwriting guidelines." Amended Complaint ¶ 25. This attempt demonstrates just how implausible SunTrust's fraud allegations truly are.

SunTrust alleges that it "commenced making the [IOF Combo Loans] in March, 2005 through December, 2007." *Id.* ¶ 21. As borrower defaults on IOF Combo Loans "increased significantly," according to SunTrust, United Guaranty sought to "avoid its obligations" with respect to these loans. *Id.* ¶ 22. In particular, SunTrust alleges that in January 2008, United Guaranty "began to systematically refuse to cover losses suffered by SunTrust" resulting from

defaults on IOF Combo Loans on the basis that the interest-only first mortgages were not DU

approved.  *Id.*   At this point, according to paragraph 25 of SunTrust's Amended Complaint:

> [O]nce United Guaranty began to assert that the [IOF Combo Loans] purportedly
> "had" to be underwritten using DU, [United Guaranty] set upon a campaign to
> misrepresent and deceive SunTrust's operations personnel into believing that
> [United Guaranty's] internal "matrices" overrode the SunTrust underwriting
> guidelines.  This deception included email communications between Pam Gavin
> of [United Guaranty] and Vicki Bolick of SunTrust on or about May 1, 2007.

Thus, in an effort to run away from the obvious conclusion that both parties understood that the

Guideline Spreadsheets provided to SunTrust beginning in 2005 set forth the operative

Guidelines for insurance coverage purposes, SunTrust now attempts to plead the fantastical

notion that United Guaranty somehow deceived SunTrust personnel into *believing* that the

matrices were the applicable Guidelines through a "campaign" that SunTrust alleged began *only*

*after* United Guaranty started in January 2008 to assert that IOF Combo Loans had to satisfy a

DU Approval requirement and was somehow carried out through an email from seven months

before.

The only support SunTrust offers for its "misrepresentation campaign" assertion is a

reference to a May 1, 2007 email from Pam Gavin of United Guaranty to Vicki Bolick of

SunTrust—an email sent a full eight months *before* the time United Guaranty allegedly hatched

its scheme to refuse to pay claims on IOF Combo Loans without DU Approval.  *Compare*

Amended Complaint ¶ 25 *with* ¶ 22.  Given this purported timing, SunTrust's "deception

campaign" assertion is nonsensical on its face, even before one considers the contents of that

somehow "before its time" email.

Consideration of the contents of the May 1, 2007 email does not change this conclusion.

In that email exchange, United Guaranty's Gavin emails to SunTrust's Vicki Bolick and Rynn

Kitts "the latest copy of the mutual guidelines for Combos."  *See* Exhibit 6.  Bolick responded,

copying several other SunTrust employees, and stated: "Thanks so much for providing the 3 attachments above to cover [United Guaranty's] guidelines on [combo loans] which are more restrictive than [SunTrust's] published guidelines." *Id.* That same day, after the email chain was forwarded to Christine Stumbo, SunTrust's Residential Portfolio Manager, she responded by forwarding the email chain to Mary Pettitt, explaining that "Mary is the point person for the guidelines that we have vs [United Guaranty] . . . put on hold any communication to the field of guideline violations until we make sure we are all straight with [United Guaranty]." *Id.*

In turn, Pettitt forwarded the email chain back to Gavin at United Guaranty. Far from accusing Gavin of "a campaign to misrepresent and deceive" SunTrust into believing United Guaranty's "internal 'matrices'" were the Guidelines, Pettitt candidly acknowledged that these "guidelines" were contained in "the matrices," i.e., the Spreadsheet Guidelines matrices prepared by Gavin *were in fact* the operative Policy Guidelines. She writes:

> Pam - prior to further conversation with [SunTrust's] QC area can we talk about guidelines on Friday first? Unfortunately, *QC is not familiar with the matrices* and are ready to fire messages out to production telling them they can't do [certain loans] which is incorrect. I am hoping we discuss first before we totally confuse our production offices.

*Id.* (emphasis added).

Nothing in this email exchange remotely suggests that United Guaranty embarked on a secret "campaign" to deceive SunTrust a full eight months before SunTrust even *alleges* United Guaranty determined it would stop paying IOF Combo Loans that lacked DU Approval or at any point in time. A more plausible—in fact the only plausible—explanation for Gavin's May 1, 2007 email to Bolick identifying the matrices as the "mutual [G]uidelines" is that both Gavin of United Guaranty and Pettitt—SunTrust's "point person for the guidelines"—understood those matrices were the controlling Guidelines for the policies. *See* Exhibit 6.

SunTrust's inability five months after suit was filed, and after multiple attempts to submit any plausible narrative to the Court as to how United Guaranty allegedly deceived SunTrust into making IOF Combo Loans leaves no doubt that SunTrust's fraud clams should be dismissed for the final time with prejudice.  SunTrust's latest purported fraud allegations, pled essentially now for the fourth time, do not in any way "fix" SunTrust's failure to state a claim for either actual or constructive fraud in its original Complaint.

## IV.

## CONCLUSION

For the foregoing reasons, Counts III and IV of the Amended Complaint must be dismissed in their entirety, with prejudice.


Dated: December 14, 2009                    Respectfully submitted,


                                            _____/s/_____
                                            Christyne K. Brennan
                                            Virginia Bar Number 48114
                                            John C. Millian (admitted pro hac vice)
                                            Brian C. Baldrate (admitted pro hac vice)
                                            Attorneys for Defendants United Guaranty
                                            Corporation and United Guaranty Residential
                                            Insurance Company of North Carolina
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C.  20036
                                            (202) 955-8500 (main phone)
                                            (202) 530-9627 (Brennan direct fax)
                                            (202) 530-9566 (Millian direct fax)
                                            (202) 530-9684 (Baldrate direct fax)
                                            cbrennan@gibsondunn.com
                                            jmillian@gibsondunn.com
                                            bbaldrate@gibsondunn.com

                                            Wyatt B. Durrette, Jr.
                                            Virginia Bar Number 04719

Attorney for Defendants United Guaranty
Corporation and United Guaranty Residential
Insurance Company of North Carolina
DURRETTEBRADSHAW PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
(804) 775-6900 (phone)
(804) 775-6911 (fax)
wdurrette@durrettebradshaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2009, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

S. Miles Dumville
Curtis G. Manchester
Travis Aaron Sabalewski
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1700
Richmond, VA  23219-4068

Joshua Gold
Anderson Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

___/s/_____
Christyne K. Brennan
Virginia Bar Number 48114
Attorney for Defendants United Guaranty
Corporation and United Guaranty Residential
Insurance Company of North Carolina
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 955-8685
Fax: (202) 530-9627
cbrennan@gibsondunn.com

100778606_8.DOC

28