REDACTED VERSION—PUBLICLY FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SUNTRUST MORTGAGE, INC.,

       Plaintiff,

     v.

AIG UNITED GUARANTY CORPORATION
a/k/a UNITED GUARANTY
CORPORATION, et al.,

       Defendants.

Civil Action No. 3:09cv00529

---

**MEMORANDUM IN SUPPORT OF DEFENDANT UNITED GUARANTY**
**RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA'S**
**MOTION FOR EMERGENCY RELIEF PRESERVING EVIDENCE AND GRANTING**
**EXPEDITED DISCOVERY REGARDING SPOLIATION OF EVIDENCE**
**BY PLAINTIFF SUNTRUST MORTGAGE, INC.**

Christyne K. Brennan (Va. Bar No. 48114)
John C. Millian (admitted *pro hac vice*)
Brian C. Baldrate (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500 (main phone)
cbrennan@gibsondunn.com
jmillian@gibsondunn.com
bbaldrate@gibsondunn.com

Wyatt B. Durrette, Jr. (Va. Bar No. 04719)
DURRETTE BRADSHAW PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
(804) 775-6900 (main phone)
wdurrette@durrettebradshaw.com

*Attorneys for Defendant United Guaranty*
*Residential Insurance Company of North Carolina*

Dated:  December 29, 2009

# TABLE OF CONTENTS

INDEX TO EXHIBITS ................................................................................................ iii

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND............................................................................................2

       A.     SunTrust's Claims Are Predicated On a Purported Statement in a
           February 22, 2008 Email From Pam Gavin of United Guaranty to
           SunTrust Senior Vice President Mary Pettitt ...........................................2

       B.     SunTrust "Doctored" the SunTrust Version of the February 22, 2008
           Email to Add the Statement in Question, Which Did Not Exist in the
           Email Actually Sent By United Guaranty to SunTrust...........................4

III.    DISCUSSION...............................................................................................9

       A.     Emergency Relief is Routinely Granted Where There is An Indication
           of Spoliation of Evidence .......................................................................9

       B.     Spoliation of Evidence by SunTrust Likely Has Occurred ................13

       C.     The Requested Emergency Relief Should Be Granted.........................15

IV.     CONCLUSION ..........................................................................................17

# INDEX TO EXHIBITS

December 10, 2009 Email from Gibson Dunn to Reed Smith requesting copy
of "February 2008" email referenced in Amended Complaint.............................................. Ex. A

December 11, 2009 Email from Reed Smith to Gibson Dunn attaching
"SunTrust Version" of February 22, 2008 Email ("February 22 Email").............................. Ex. B

December 14, 2009 Email from Reed Smith to Gibson Dunn .............................................. Ex. C

Declaration of Thomas P. Keegan........................................................................................ Ex. D

    "As Sent" Version of February 22 Email from United Guaranty's
    own electronic records.............................................................................. Ex. D-1

# I.

## INTRODUCTION

Defendant United Guaranty Residential Insurance Company of North Carolina ("United Guaranty") seeks this Court's intervention to prevent the potential destruction and further spoliation of evidence by plaintiff SunTrust Mortgage, Inc. ("SunTrust").

Conclusive evidence exists that SunTrust has deliberately altered the content of a key document in this case—a February 22, 2008 email communication between the parties (the "February 22 Email") that is cited and relied upon by SunTrust in its Amended Complaint.  The document proffered and vouched for by SunTrust's counsel as the cited February 22 Email contains what appears to be a statement by Pam Gavin of United Guaranty to SunTrust Senior Vice President Mary Pettitt acknowledging "the approval [by United Guaranty] for traditionally underwritten guidelines."  Whether any such "approval" existed is a key factual question as to both SunTrust's fraud claims and its breach of contract claims.[1]

As we explain below, the *actual* email sent by Ms. Gavin contained no such statement, as confirmed in the declaration of Thomas Keegan of KPMG submitted as Exhibit D hereto.  The key language has been added after the fact by SunTrust, most likely by Ms. Pettitt, a senior SunTrust executive with responsibility for SunTrust's relations with United Guaranty and other mortgage insurers as well as responsibility for "Capital Markets" and "Investor Relations."

---

[1] This is evident from the Amended Complaint, as well as United Guaranty's Counterclaim and the briefs submitted by both parties on the two motions to dismiss. *See, e.g.,* Amended Complaint ¶¶ 18, 19 ("SunTrust made plans to issue a new loan product consisting of second lien loans following 'traditionally underwritten' interest only first loans. . . . UGRICNC confirmed and represented . . . that the loans met UGRICNC's internal criteria for coverage").

The fact that SunTrust has "doctored" key evidence in this case calls for the immediate entry of emergency relief by this Court.  Absent the entry of such relief, neither United Guaranty nor this Court can have any confidence that no further evidence tampering will occur and that the truth will be uncovered regarding the spoliation of evidence to date.  Accordingly, United Guaranty respectfully seeks entry of an order, as more fully set forth below and in the proposed Order submitted herewith, (a) directing SunTrust and its counsel to preserve all evidence relevant to this action (particularly evidence related to the spoliation question); (b) directing that expedited discovery be conducted to determine the sources and extent of SunTrust's apparent "doctoring" of the record in this case; and (c) staying all other proceedings in this Action until the extent and cause of the spoliation of evidence has been determined.  Once these steps have been accomplished and the facts regarding SunTrust's evidence tampering are clear, United Guaranty will ask for the imposition of sanctions against SunTrust.

Counsel for United Guaranty is available at the Court's convenience to discuss the present motion.  Given the urgent need to ensure that evidence is preserved, United Guaranty requests that the Court hold an in-person conference on this motion today.

**II.**

**BACKGROUND**

**A.     SunTrust's Claims Are Predicated On a Purported Statement in a February 22, 2008 Email From Pam Gavin of United Guaranty to SunTrust Senior Vice President Mary Pettitt**

As this Court is aware, SunTrust's initial Complaint in this action asserted that United Guaranty "confirmed and represented" that SunTrust's "[Combo 100] loans were covered by the Mortgage Insurance Policy."  Complaint ¶ 20.  The only specific such "representation" cited, however, was one email dated January 7, 2005, which as explained in defendants' initial motion

2

to dismiss SunTrust's fraud claims contained no such "confirmation" or "representation."  For this and other reasons the Court dismissed SunTrust's fraud claims, albeit with leave to amend.

In its Amended Complaint filed November 24, 2009, SunTrust again asserts that United Guaranty "confirmed and represented" that the Combo 100 Loans were covered by mortgage insurance.  In support of this renewed allegation SunTrust again identifies the January 7, 2005 email, and also five "new" emails allegedly containing such a representation.  Four are emails between Pam Gavin of United Guaranty and Mary Pettitt of SunTrust identified by specific dates (May 20, 2005; January 27, 2006; February 1, 2006; and August 24, 2007).  The fifth is described—quite oddly—only as a "February 2008" email from Gavin to Pettitt.  Amended Complaint ¶ 19.  The same paragraph of the Amended Complaint also refers to unspecified purported oral representations to both Pettitt and Christine Stumbo, another senior SunTrust employee.

SunTrust declined to attach any of the referenced emails to its Amended Complaint.  In preparing its Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint ("Renewed Motion to Dismiss"), filed Monday, December 14, 2009, United Guaranty was nonetheless able to identify from its electronic files emails matching each of the specific dates provided in the Amended Complaint.  *See* Memorandum in Support of Motion to Dismiss Counts III and IV, at 16-21.  This was not possible with regard to the email identified only as from "February 2008," however, since United Guaranty identified numerous emails between Gavin and Pettitt from that month.

Accordingly, on Thursday, December 10, 2009, United Guaranty's counsel requested that SunTrust's counsel provide a copy of the referenced email.  *See* <u>Exhibit A</u> hereto.  The following day, Friday, December 11, 2009, SunTrust's counsel provided in "pdf" (image) form the

document that SunTrust represents to be the "February 2008 email from Pam Gavin to Mary Pettitt" cited in the Amended Complaint.  The document consists of two pages and appears to be an email from Gavin to Pettitt dated February 22, 2008, with additional typing at the top that (as discussed *infra*) indicates that Pettitt "forwarded" the email.  *See* Exhibit B hereto.  This document vouched for by SunTrust as the February 22 Email contains the purported acknowledgement by Gavin to Pettitt of the existence of "the approval [by United Guaranty] for traditionally underwritten guidelines."  We refer to this document herein as the "SunTrust Version" of the February 22 Email.

**B.     SunTrust "Doctored" the SunTrust Version of the February 22, 2008 Email to Add the Statement in Question, Which Did Not Exist in the Email Actually Sent By United Guaranty to SunTrust**

Following receipt of the SunTrust Version from SunTrust's counsel on December 11, 2009, United Guaranty's counsel noticed that the last sentence in the second paragraph of the SunTrust Version differed markedly from the corresponding sentence in an otherwise identical version of the same email located in United Guaranty's electronic records (the "As Sent Version"), which was among the group of previously identified emails from February 2008.

The As Sent Version from United Guaranty's electronic files states as follows (highlighting added):

4

| | |
|---|---|
| **From:** | pamela j gavin/ugc;nsf;gavinpj@ugcorp.com;smtp |
| **Sent:** | Fri Feb 22 2008 17:15:11 EST |
| **To:** | mary.pettitt@suntrust.com |
| **CC:** | |
| **Subject:** | IO Documentation |
| **Attachments:** | |
| | |
| **Importance:** | Low |
| **Priority:** | Normal |
| **Sensitivity:** | None |

Mary,

We located the document from Suntrust that requested multiple combo enhancements. In that document is the request to insure a combo behind an IO 1st. Sue Huber asked for the guideline enhancement on 12/1/03. The Risk Committee approved an IO first on DU approved loans in March of '04.

RIck went back thru his records in November and December of '03. We had only looked March '04 forward. So that's why we originally missed it -

Take care - have a good weekend!

Pam

*See* Exhibit D-1, attached to Keegan Decl.[2]

     In contrast, the first page of the SunTrust Version (the second includes only "boilerplate"

from the bottom of the email) appears exactly as follows, save for the added highlighting:

---

[2] Note that since Exhibit D-1 is an electronic file formatting, but not content, is dependent upon the manner in which the file is printed.  As discussed further below, ██████████ ████████████████████████████████████████████████

Mary M. Pettitt, Senior Vice President, Capital Markets-Investor Relations
Phone: 804 291-0242/ Fax: 804 319-8395/ mary.pettitt@suntrust.com


-----Original Message-----
From: gavinpj@ugcorp.com [mailto:gavinpj@ugcorp.com]
Sent: Friday, February 22, 2008 5:15 PM
To: Pettitt.Mary
Subject: IO Documentation


Mary,

We located the document from Suntrust that requested multiple combo
enhancements.  In that document is the request to insure a combo behind an
IO 1st.   Sue Huber asked for the guideline enhancement on 12/1/03.  The
Risk Committee approved an IO first on DU approved loans in March of '04.

RIck went back thru his records in November and December of '03.  We had
only looked March '04 forward.  So that's why we originally missed the
approval for traditionally underwritten guidelines -

Take care  - have a good weekend!

Pam

*See* Exhibit B hereto.

Given that both the As Sent Version and the SunTrust Version appear on their face to be

what was sent by Gavin to Pettitt at 5:15 p.m. on Friday, February 22, 2008, this glaring

discrepancy raises a serious issue.  Further, because the SunTrust Version indicates on its face

that it was "forwarded" by Pettitt (note the "-----Original Message-----" line) and

thus it did not appear that SunTrust's counsel had sent the entire document, a request was made

to SunTrust's counsel on Monday, December 14, 2009, for a copy of the remainder of the email

string.  SunTrust's counsel responded that "you have all that we have found at this point."  *See*

Exhibit C hereto.  With no further information from SunTrust, and not having completed its own

internal review of the situation, United Guaranty accordingly filed its Renewed Motion to

Dismiss later the same day based on the representation of SunTrust's counsel that the SunTrust Version is the document referenced and relied upon by SunTrust in its Amended Complaint.

In addition to seeking a copy of the remainder of the SunTrust Version of the February 22 Email, United Guaranty's counsel also requested that KPMG, which is assisting United Guaranty with document production, collect and review the available evidence from United Guaranty's own electronic files regarding the document. As set forth in the accompanying declaration of Thomas Keegan, Managing Director in KPMG's Forensic technology practice, KPMG took appropriate steps in this regard and was able to determine based on a review of United Guaranty's electronic records that the As Sent Version above was in fact sent in that form to Mary Pettitt on Friday, February 22, 2008 at 17:15:11 EST, and that the electronic copies of the email in United Guaranty's computer system have not been altered since the email was sent. *See* Keegan Decl. ¶ 8 (Ex. D). KPMG was further able to confirm that a review of Gavin's electronic files shows no email containing the phrase "missed the approval for traditionally underwritten guidelines," found in the SunTrust Version of the email. *Id.* ¶ 10.

On December 23, 2009, SunTrust delivered two hard drives to United Guaranty's Richmond counsel containing electronic versions of documents produced by SunTrust in response to United Guaranty's first request for production of documents. The hard drives include approximately 134,000 electronic documents with 50,000 corresponding "native" computer files. *Id.* ¶ 11. The hard drives were forwarded to KPMG, which conducted an initial review (limited given the time available) of SunTrust's document production over this past weekend following Christmas Day. *Id.* ¶¶ 11-19. As discussed below, that review

confirms ██████████████████████████████████████████

████████████ 3

███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████

---

3 Each of the documents produced by SunTrust discussed herein was marked by SunTrust as purportedly "CONFIDENTIAL" under the terms of the protective order entered in this action. Given this, United Guaranty has no choice but to file a redacted version of the present Memorandum in the public record, withholding the discussion herein of those documents. However, as discussed in United Guaranty's Motion for Leave to File Under Seal Temporarily and/or to Submit *In Camera* Unredacted Versions of its Memorandum and Exhibits in Support of Motion for Emergency Relief Preserving Evidence and Granting Expedited Discovery Regarding Spoliation of Evidence by Plaintiff SunTrust Mortgage, Inc., United Guaranty does not agree that any of these documents in fact qualifies as "CONFIDENTIAL," and believes that no basis exists for withholding any portion of the present memorandum from the public record.



The timing of this is significant.  August 2008 is when the parties were engaged in senior level negotiations to resolve this dispute; hence, there can be little or no doubt that the SunTrust version was created to bolster SunTrust's case against United Guaranty.  As noted above, this is exactly how the document has now been used by SunTrust in its Amended Complaint.

### III.

### DISCUSSION

**A.    Emergency Relief is Routinely Granted Where There is An Indication of Spoliation of Evidence**

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  "Spoliation can occur when the destruction of evidence in anticipation of litigation is willful.  However, it can also occur

when the destruction is the result of inadvertent, albeit negligent, conduct." *Samsung Elecs. Co.*

*v. Rambus Inc.*, 439 F. Supp. 2d 524, 540 (E.D. Va. 2006).

As this Court has significantly noted, the "'[d]estruction of evidence undermines two

important goals of the judicial system – truth and fairness.'" *Rambus, Inc. v. Infineon Techs. AG*,

222 F.R.D. 280, 290 (E.D.Va. 2004), quoting Lawrence B. Solum & Stephen J. Marzen, *Truth &*

*Uncertainty: Legal Control of the Destruction of Evidence*, 36 Emory L.J. 1085, 1138 (1987).

Because of the seriousness of spoliation of evidence, the party victimized by the spoliation may

seek "sanctions or remedial measures . . . ranging from so-called 'adverse spoliation inferences'

to outright dismissal of the complaint." *Rambus,* 222 F.R.D. at 299; *see also Pope v. Fed. Exp.*

*Corp.*, 974 F.2d 982, 984 (8th Cir.1992) (holding that dismissal was an appropriate sanction

when plaintiff produced and relied on a falsified document).  As the Fourth Circuit has

explained:

> The policy underlying this inherent power of the courts [to impose sanctions for
> spoliation] is the need to preserve the integrity of the judicial process in order to
> retain confidence that the process works to uncover the truth. "[B]ecause no one
> has an exclusive insight into truth, the process depends on the adversarial
> presentation of evidence, precedent and custom, and argument to reasoned
> conclusions-all directed with unwavering effort to what, in good faith, is believed
> to be true on matters material to the disposition." The courts must protect the
> integrity of the judicial process because, "[a]s soon as the process falters ... the
> people are then justified in abandoning support for the system."

*Silvestri*, 271 F.3d at 590 (internal citations omitted).  In this regard, the court looks to several

factors to determine which sanctions or remedies are appropriate with respect to spoliation of

evidence, including "the spoliator's state of mind, bad faith, the kinds of documents destroyed,

and the consequences of the destruction to the adversary's case. *Rambus, Inc.*, 222 F.R.D. at 299.

At this time, neither United Guaranty nor this Court can know an appropriate sanction and

remedy for SunTrust's apparent spoliation of evidence until they are able to investigate and

further develop the circumstances surrounding such spoliation. For this reason, as further discussed in this Motion, United Guaranty is seeking the ability to investigate the spoliation in an expedited and focused manner during the suspension of all other proceedings. Following completion of this investigation, United Guaranty will seek appropriate sanctions and remedy from the Court.

A trial court plainly possesses authority to investigate potential spoliation and to prevent future spoliation as part of "its inherent power to control the judicial process and litigation." *Silvestri*, 271 F.3d 583 at 590. Further, under Fourth Circuit law, "when a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). While the Fourth Circuit has not set forth the precise standard for issuing emergency relief related to spoliation of evidence, the prevailing view is that a party seeking an emergency order to prevent spoliation must demonstrate only that such relief "is necessary and not unduly burdensome." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004); *accord Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370-371 (S.D.N.Y. 2006); *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 147 (D. Mass. 2005); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 617 (N.D. Ill. 2001); *Almarri v. Gates*, 2008 WL 4449858 (D.S.C. Oct. 2, 2008).[4]

---

[4] As one court in the Fourth Circuit has noted, "[w]hile a number of courts have required that any request for a preservation order meet the four requirements for issuance of an injunction, the more persuasive view is that 'a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery.'" *Almarri v. Gates*, 2008 WL 4449858 at *1 (D.S.C. Oct. 2, 2008), citing Jay E. Grenig,

[Footnote continued on next page]

Courts have not hesitated to order emergency relief where there is an indication that responsive documents have been altered or deleted. In *Gates Rubber Co., v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996), for example, plaintiff learned that the defendant had allegedly destroyed files on his computer. As a result plaintiff filed a motion for emergency relief arguing:

> That there was evidence which suggested that [defendant] was engaged in a process of destroying evidence and erasing computer files, and that irreparable harm would result if [plaintiff] was not permitted to enter upon the premises of [defendant's] various entities for the purpose of copying files and records in order to preserve them from destruction.

*Gates Rubber Co.*, 167 F.R.D. at 99. The court stayed discovery on the merits of the case and granted the motion for expedited discovery permitting plaintiff's lawyers "to take various technicians to all of [defendant's] facilities for the purpose of locating and copying materials, including all computer records, which [plaintiff] wished to preserve from the alleged destruction." *Id.* at 100. The court also ordered defendant and its employees not to destroy any

---

[Footnote continued from previous page]
*Preservation Orders*, EDISCOVERY & DIGITAL EVIDENCE § 7:9 (2007). *See also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370-371 (S.D.N.Y. 2006) ("Some courts have taken the position that a party seeking a preservation order must meet the standards for obtaining injunctive relief . . . [However] there is no reason 'to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction . . . . Such an approach would be decidedly to put the cart before the horse.'"); *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004) ("proof of a probability of success in litigation is not an appropriate consideration in the determination whether to order preservation of documents"). Even were this Court to adopt the standards of injunctive relief set forth in *Kalos v. Law Offices of Eugene A. Seidel*, No. 1:09cv833, 2009 WL 3583606, at *3 (E.D. Va. Oct. 26, 2009), United Guaranty's memorandum to this Motion along with its Motion to Dismiss Counts III and Count IV of SunTrust's Amended Complaint amply demonstrate that United Guaranty: (1) is likely to succeed on the merits at trial; (2) is likely to be irreparably harmed absent preliminary relief; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See, e.g., Kalos*, 2009 WL 3583606, at *3.

further records. *Id.* Ultimately the court in *Gates Rubber Co.* stayed proceedings for several years, appointed a special master, and limited discovery to obtaining testimony, evidence, and materials relevant to the issue of spoliation. *Id.*

Similarly, in *Dodge, Warren & Peters Ins. Servs., Inc. v. Riley*, 105 Cal. App. 4th 1414 (2003), the court upheld a preliminary injunction preventing defendant employees "from destroying, deleting or secreting from discovery any of their electronic storage media and . . . requiring them to allow a court-appointed expert to copy all of it, including computer hard drives and discs, to recover lost or deleted files and to perform automated searches of that evidence." 105 Cal. App. 4th at 1417. Other courts have taken comparable action. *See, e.g., The Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652-653 (D. Minn. 2002) (permitting plaintiff to hire an expert to create a "mirror image" or "snapshot" of the defendant's hard drive for inspection and copying in order to resurrect deleted data); *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1051 (S.D. Cal. 1999) (holding that plaintiff was entitled to physically inspect defendant's computer hard drive and attempt to recover potentially responsive emails that plaintiff had deleted during the course of the litigation); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 222 (S.D.N.Y. 2003) (ordering defendant to bear the costs for deposing certain witnesses for the limited purpose of inquiring into issues raised by the destruction of evidence). Indeed, in similar circumstances albeit on a more developed record, this Court has permitted discovery of spoliation issues including depositions of legal counsel in order to identify the extent of spoliation of evidence. *See Rambus,* 222 F.R.D. at 298 (E.D.Va. 2004).

**B.    Spoliation of Evidence by SunTrust Has Plainly Occurred**

The "hard" record is clear that SunTrust altered the As Sent Version of the February 22 Email sometime after it was sent from Gavin to Pettitt to create the SunTrust Version upon which it now bases its claims in this litigation. This is evident for several reasons.

First, as noted above and as the Keegan Declaration makes clear, United Guaranty's own electronic records leave no doubt that the As Sent Version of the email is what actually went from Pam Gavin to Mary Pettitt on February 22, 2008.  Keegan Decl. ¶ 8 and <u>Exhibit D-1</u>.

Second, SunTrust's document production of a few days ago ███████████████████ ████████████████████████████████████████████████ ██████████████████there is no doubt that the As Sent Version was received by SunTrust, and hence the only possible explanation for the existence of the SunTrust Version is that the original email was tampered with by SunTrust before being offered as evidence in this litigation.

Third, it is fairly evident *how* SunTrust tampered with the February 22 Email.  The SunTrust Version of the February 22 Email indicates on its face that it was "forwarded" by Pettitt either to herself or to someone else.  This fact is undeniable from the "`-----Original Message-----`" line that appears on the document, as happens when an email is forwarded, and from Pettitt's address block, which appears directly above this line in a forwarded email Since it is easy to "edit" emails being forwarded—once the "forward" button is clicked in Microsoft Outlook, for example, earlier emails in a chain become editable text—it is not difficult to see how Pettitt (or someone using her computer) would be able to "doctor" the document, either on her own initiative or on someone else's instructions.  *See* Keegan Decl. ¶ 16 and <u>Exhibit B</u>.

Fourth, as described in Section II(B) above, SunTrust's document production ████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████

Finally, it is beyond strange why among the seven emails referenced in the Amended Complaint (six in ¶ 19, one in ¶ 25) only the February 22 Email is not identified by specific date. Although this could be the result of a scrivner's error, it could also be that someone at SunTrust (or possibly Reed Smith) had reason to doubt the authenticity of the document and for this reason was at least initially reluctant to identify it too precisely.

Taken together, this evidence leaves no doubt whatsoever that the original As Sent Version of the February 22 Email was altered by SunTrust to produce the SunTrust Version of that email upon which SunTrust's case is now based. Indeed, no other explanation is possible.

## C.     The Requested Emergency Relief Should Be Granted

Emergency relief is necessary and not unduly burdensome for SunTrust. Indeed, in the absence of emergency relief both United Guaranty as a party, and this Court's strong interest in the integrity of statements made in pleadings filed before it, may well suffer irreparable harm. Given that the evidence shows SunTrust has already altered potentially crucial evidence, no comfort can be had that further spoliation will not occur absent a clear, unequivocal court order to preserve evidence and directing steps to ensure that the truth emerges, the violation of which would carry the most severe consequences.

Of particular concern, with the filing of the present motion disclosing that United Guaranty has discovered that the SunTrust Versions of the February 22 Email is a fraud, SunTrust personnel now have a particular incentive to "cover their tracks" with respect to the creation of that document. Further, an incentive also exists to cover up the creation of any other altered documents. Absent entry of a preservation order and the undertaking of immediate steps to "capture" the existing electronic and hard copy record, neither United Guaranty nor the Court will ever be able to have confidence that this has not occurred. This is particularly true given

that SunTrust has not produced the "native" versions of the four documents in its production that relate to the February 22 Email, or the native versions of many other documents.

The interests of justice also demand expedited discovery directed at determining the ultimate source and full story behind the doctoring of the SunTrust Version of the February 22 Email, and resolving whether altered versions of other documents also exist. As a starting point, the Court can hardly even address United Guaranty's pending Renewed Motion to Dismiss without resolving this question. Further, since the February 22 Email cited in the Amended Complaint is directly relevant to both SunTrust's fraud claims and its breach of contract claims, the entire scope of merits discovery, as well as the ultimate outcome of the case on all of SunTrust's claims, may thus be impacted substantially by the resolution of the spoliation issue. It is critical to resolve this matter as soon as possible.

Accordingly, United Guaranty respectfully seeks entry of immediate relief directing that:

(1)    SunTrust, including its officers, agents, employees and attorneys, are enjoined from destroying, altering or in any way dissipating any hard copy documents, electronically stored information or other evidence related to the issues in this litigation, including without limitation all evidence related to the February 22 Email or to any other email cited in the Amended Complaint;

(2)    SunTrust shall immediately take all affirmative steps necessary to preserve all hard copy documents, electronically stored information and other evidence related to the issues in this litigation, including without limitation all evidence related to the February 22 Email or to any other email cited in the Amended Complaint;

(3)    A third-party expert designated by United Guaranty shall be allowed immediately (and unannounced to affected SunTrust personnel) to image all currently and formerly used computer hard drives, shared drives and any other file directories of Mary Pettitt, the SunTrust recipient of the February 22 Email, and Christine Stumbo, the other individual identified in the Amended Complaint as having received communications from United Guaranty on the matter in question;

(4)    By January 1, 2009, SunTrust shall produce all documents (in hard copy or electronic form) and all other electronically stored information containing or referencing any version of the February 22, 2008 Email or any version of any other email cited in the Amended Complaint, including without limitation all native electronic files and all metadata associated with electronic files;

(5)  United Guaranty shall be permitted to conduct further expedited discovery directed at the February 22 Email and each other email cited in the Amended Complaint, including (a) interrogatories to SunTrust, which shall be answered within 15 calendar days; and (b) the taking of deposition testimony from (i) Mary Pettitt, (ii) Mary Pettitt's direct supervisor(s) during the time period from February 22, 2008 through August 31, 2008; (iii) Christine Stumbo, (iv) SunTrust's custodian of electronic records, and (v) any other current or former SunTrust employee identified in documents or testimony as having received a copy (through a forwarding message or otherwise) of the February 22 Email, or having knowledge of the creation of the SunTrust Version of the February 22 Email, with such expedited discovery to conclude by February 1, 2010; and

(6)  All other proceedings in this action, including further briefing on United Guaranty's pending Renewed Motion to Dismiss, are stayed until further order of the Court to allow adequate opportunity to investigate and resolve the spoliation issue.

SunTrust can offer no legitimate basis for opposing the relief requested herein. SunTrust will suffer little or no harm from entry of the requested relief, at least apart from any "harm" potentially resulting from further proof that SunTrust has engaged in spoliation of evidence. Indeed, SunTrust should at this juncture *agree* to entry of the requested relief in order to mitigate the consequences of its own acts.

## IV.

## CONCLUSION

For the foregoing reasons, United Guaranty respectfully requests that the Court grant defendant United Guaranty's Motion for Emergency Relief Preserving Evidence and Granting

Expedited Discovery Regarding Spoliation of Evidence by Plaintiff SunTrust Mortgage, Inc.,

and enter the proposed order submitted therewith.


Dated: December 29, 2009                    Respectfully submitted,


                                            _____/s/_____
                                            Christyne K. Brennan
                                            Virginia Bar Number 48114
                                            John C. Millian (admitted pro hac vice)
                                            Brian C. Baldrate (admitted pro hac vice)
                                            Attorneys for Defendants United Guaranty
                                            Corporation and United Guaranty Residential
                                            Insurance Company of North Carolina
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C.  20036
                                            (202) 955-8500 (main phone)
                                            (202) 530-9627 (Brennan direct fax)
                                            (202) 530-9566 (Millian direct fax)
                                            (202) 530-9684 (Baldrate direct fax)
                                            cbrennan@gibsondunn.com
                                            jmillian@gibsondunn.com
                                            bbaldrate@gibsondunn.com

                                            Wyatt B. Durrette, Jr.
                                            Virginia Bar Number 04719
                                            Attorney for Defendants United Guaranty
                                            Corporation and United Guaranty Residential
                                            Insurance Company of North Carolina
                                            DURRETTE BRADSHAW PLC
                                            600 East Main Street, 20th Floor
                                            Richmond, Virginia 23219
                                            (804) 775-6900 (phone)
                                            (804) 775-6911 (fax)
                                            wdurrette@durrettebradshaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2009, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

S. Miles Dumville
Curtis G. Manchester
Travis Aaron Sabalewski
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1700
Richmond, VA  23219-4068

Joshua Gold
Anderson Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

          /s/
Christyne K. Brennan
Virginia Bar Number 48114
Attorney for Defendants United Guaranty
Corporation and United Guaranty Residential
Insurance Company of North Carolina
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 955-8685
Fax: (202) 530-9627
cbrennan@gibsondunn.com

100783647_5.DOC