UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNTRUST MORTGAGE, INC.,

        Plaintiff,

v.                                        Civil Action No. 3:09cv00529

AIG UNITED GUARANTY CORPORATION
a/k/a UNITED GUARANTY CORPORATION, et al.,

        Defendants.

## SUNTRUST MORTGAGE, INC.'S MEMORANDUM IN RESPONSE TO THE COURT'S FEBRUARY 11, 2010 ORDER REGARDING PRIVILEGE ISSUES AND REQUEST FOR *IN CAMERA* REVIEW OF CERTAIN DOCUMENTS AND IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, files this Memorandum in

Response to the Court's February 11, 2010 Order Regarding Privilege Issues and Request for *In

Camera* Review of Certain Documents and in Support of Its Motion for Protective Order filed

simultaneously herewith:

## INTRODUCTION

On December 29, 2009, defendant United Guaranty Residential Insurance Company of

North Carolina ("United Guaranty") filed an "emergency" motion (the "Motion") alleging that

one of the e-mails relied upon by SunTrust in pleading its alternative fraud counts in its

Amended Complaint was altered.  The e-mail in question is dated February 22, 2008 and was

sent by Pamela Gavin of United Guaranty to Mary Pettitt of SunTrust (the "February 2008 E-

Mail").  United Guaranty has alleged that Ms. Pettitt, who was a Senior Vice President of

SunTrust at the time, altered the February 2008 E-Mail by inserting language that supported

some of SunTrust's contentions in this case.  The Motion sought various forms of relief,

including an immediate deposition of Ms. Pettitt.  United Guaranty obtained a hearing on its

Motion on the afternoon of December 29, 2009.

The February 2008 E-Mail was one of several e-mails from United Guaranty to Ms.

Pettitt that she provided to Susan Thurman, a SunTrust staff attorney, in August 2008, when

SunTrust was investigating and analyzing the facts underlying its ongoing dispute with United

Guaranty concerning coverage of certain loans made by SunTrust known as Combo 100 Loans.

Prior to their receipt of United Guaranty's Motion, SunTrust and its counsel were unaware that

the version of the February 2008 E-Mail provided to Ms. Thurman by Ms. Pettitt contained

language different from that in the original e-mail.  Consequently, at the December 29 hearing,

SunTrust's counsel was not in a position to fully respond to United Guaranty's allegations.

On December 30, 2009, the Court entered an Order permitting United Guaranty to

conduct certain limited discovery (the "December 30 Order") with respect to the February 2008

E-Mail, including the deposition of Ms. Pettitt.  The following day, the Court entered an Order

directing SunTrust's counsel to advise Ms. Pettitt that she should consider retaining her own

counsel, which she did during the first week of January.  United Guaranty thereafter noticed Ms.

Pettitt's deposition for February 12, 2010.

Subsequent to their retention, Ms. Pettitt's counsel asked SunTrust to provide certain

internal SunTrust documents and information which they said they needed in order to assess Ms.

Pettitt's potential exposure to criminal charges.  Specifically, Ms. Pettitt's counsel asked for any

documentation that had resulted in Ms. Pettitt's providing the February 2008 E-Mail to Ms.

Thurman.  SunTrust declined to provide this documentation because it is protected from

disclosure under the attorney-client privilege and work product doctrine, and SunTrust felt that

providing the documentation to Ms. Pettitt's counsel could result in a waiver of those privileges.[1]

As a result of SunTrust's declining to provide the requested documents, on February 9,

2010, Ms. Pettitt's counsel moved for a protective order asking the Court to require SunTrust to

provide:

> a.  Email, memoranda, or other documents from any SunTrust
> employee or agent requesting that Ms. Pettitt make copies of
> documents related to the pending dispute with United Guaranty
> and any response that Ms. Pettitt made pursuant to any such
> request;
>
> b.  Summaries of any oral communications between counsel for
> SunTrust and Ms. Pettitt regarding information or documents that
> Ms. Pettitt provided regarding the pending dispute with United
> Guaranty.

See Memorandum in Support of Witness Mary Pettitt's Motion for Protective Order Requiring

SunTrust To Produce Documents or, in the Alternative, to Quash Subpoena (the "Pettitt

Motion"), p. 4.  In the alternative, Ms. Pettitt's counsel asked that the subpoena for her to appear

for a deposition be quashed.

Given the multifaceted issues involving the attorney-client privilege and work product

doctrine arising out of the Pettitt Motion, SunTrust suggested, and counsel for Ms. Pettitt agreed,

that issues related to the disclosure of privileged information should be resolved prior to Ms.

Pettitt's deposition.  United Guaranty rejected that suggestion and insisted on proceeding with the

---

[1]  Although SunTrust declined to produce the documents requested by Ms. Pettitt's counsel or
the substance of privileged communications involving Ms. Pettitt, SunTrust's counsel did
summarize for Ms. Pettitt's counsel the relevant facts that existed at the time Ms. Pettitt provided
the February 2008 E-Mail to Ms. Thurman.

deposition.2  This disagreement led to a telephonic hearing with the Court's law clerk on the afternoon of February 10, 2010.

By Order entered on February 11, 2010, the Court provided an expedited briefing schedule to address privilege issues and for the *in camera* inspection of the privileged documents requested in the Pettitt Motion.  The Court also ruled, however, that the deposition of Ms. Pettitt would still be taken on February 12, prior to the Court's receipt of briefs on the various privilege issues and its *in camera* review.3

At her deposition on February 12, Ms. Pettitt invoked her rights under the Fifth Amendment of the United States Constitution in response to most of the questions posed to her, and her counsel affirmatively stated that, in the exercise of that right, Ms. Pettitt would refuse to answer any questions concerning the February 2008 E-Mail, certain other e-mails she provided to Ms. Thurman, and any of her duties at SunTrust after 2005.  See Excerpt of Transcript of Mary Pettitt Deposition (2/12/10), pp. 69-72, attached as Exhibit A.

Although Ms. Pettitt's counsel would like to have the benefit of the documents requested in the Pettitt Motion for purposes of advising Ms. Pettitt, SunTrust nevertheless has the right to maintain the privileged status of those documents and should not be forced to divulge privileged information, particularly where at the relevant time Ms. Pettitt was herself a party to most of the privileged communications at issue and had access to the related privileged work product, such

---

2  United Guaranty suggested that SunTrust's concern about furnishing to Ms. Pettitt's counsel the documents they requested would be alleviated if United Guaranty agreed that it would not assert that submission of the documents to Ms. Pettitt's counsel was a waiver of any applicable privileges.  As discussed further below, however, such agreement would not be binding on third parties who might in the future assert that the privilege had been waived.  SunTrust, therefore, declined to proceed in the manner suggested by United Guaranty.

3  In addition to Ms. Pettitt's deposition, United Guaranty has also noticed the depositions of Joann Clack, Ms. Pettitt's immediate supervisor, and Ms. Thurman.  It is expected that, as it did in Ms. Pettitt's February 12 deposition, United Guaranty will seek to obtain privileged information from Ms. Clack and Ms. Thurman.

that she should be able to advise her counsel as to what she was asked to do and what she did in response.  Likewise, United Guaranty should not be permitted to penetrate the protections afforded by the applicable privileges by arguing that such privileges have somehow been waived by the unauthorized and unilateral acts of Ms. Pettitt.  The privileges SunTrust asserts are the most time-honored privileges recognized by American jurisprudence.  As this Memorandum demonstrates, nothing has occurred in this case that warrants the disregard of those privileges.

## STATEMENT OF RELEVANT FACTS

By the Summer of 2008, SunTrust and United Guaranty were involved in a major dispute over insurance coverage provided for millions of dollars in mortgage loans made by SunTrust. Members of SunTrust's legal staff had gotten involved and were in the process of gathering information and documents so that they could assess the parties' respective claims for purposes of advising SunTrust's management in ongoing discussions with United Guaranty and to prepare for litigation.

Ms. Pettitt, who had frequently interacted and communicated with United Guaranty concerning the insurance coverage at issue, was one of the SunTrust employees who provided information and documents to SunTrust's staff attorneys for their use in performing their work. Ms. Pettitt used e-mails to transmit much of her information and documentation to the SunTrust staff attorneys.[4]

Among the documents provided by Ms. Pettitt was the February 2008 E-Mail.  As the Court will be able to determine from the documents that SunTrust will furnish for *in camera* inspection, there were multiple exchanges between Ms. Thurman, Ms. Pettitt, and other senior

---

[4]  During the Summer and Fall of 2008, Ms. Pettitt was absent from her office for relatively extended periods for personal and medical reasons.  She was, however, able to access her computer files remotely and communicate by e-mail.

SunTrust personnel concerning documents and information that Ms. Thurman wanted to obtain in order to advise SunTrust's management and to be prepared for litigation, should that occur. This documentation will indicate what Ms. Thurman specifically was seeking and the reasons Ms. Thurman wanted the particular categories of documents and information requested. The documentation will accordingly reveal the opinions and observations of Ms. Thurman concerning the dispute with United Guaranty. There should be no dispute that the substance of the documents is privileged and protected from disclosure under both the attorney-client privilege and the work product doctrine.

Neither Ms. Pettitt nor United Guaranty can offer valid grounds for requiring this information to be revealed to them. The Court should therefore deny the disclosure requested by the Pettitt Motion and should likewise deny access to this information by United Guaranty.

## ARGUMENT

SunTrust, in compliance with the December 30 Order, has produced non-privileged, non-work product documents that mention or relate to the February 2008 E-Mail in their native format; responded subject to certain objections to an interrogatory and provided non-privileged information about that e-mail (albeit without the benefit of an interview with Ms. Pettitt); and timely served a separate privilege log of only those documents withheld on the grounds of

privilege/work product that relate to or mention the February 2008 E-Mail[5] (the "Privilege Log").[6]

   To accomplish these ends, SunTrust has incurred over $20,000 in fees from an electronic discovery vendor for the imaging and processing of data on Ms. Pettitt's computers and much more expense in attorney time investigating the issues, reviewing documents, and performing other necessary tasks.

   All of the documents set forth on the Privilege Log were generated pursuant to in-house counsel's investigation into SunTrust's claims against United Guaranty.  Accordingly, all of the documents are protected as attorney-client communications and/or work product.  The Privilege Log contains certain e-mails from Ms. Pettitt, in addition to other documents generated by various employees at SunTrust pursuant to SunTrust's investigation and communications between such employees and in-house counsel for SunTrust.  SunTrust is submitting for *in camera* inspection those documents identified on the Privilege Log that have been requested by Ms. Pettitt and her counsel in the Pettitt Motion.

   United Guaranty and Ms. Pettitt are each seeking broad disclosure of SunTrust's attorney-client privileged and work product information.  As discussed more fully below, however,

---

[5]  SunTrust also disclosed in a response to United Guaranty's emergency motion that it had previously investigated the possibility that Ms. Pettitt had materially altered two other e-mails that she had provided to Ms. Thurman in August, 2008, but was not able to conclusively determine that she had done so.  SunTrust, however, has never relied on either of the "altered versions" of those e-mails in this litigation.  Nevertheless, United Guaranty – as with the February 2008 E-Mail – contends that it is entitled to unlimited discovery and inquiry into privileged communications regarding these two other e-mails.

[6]  The Privilege Log contains multiple items, including many duplicate documents because several custodians received and retained the same communications.  Also, there are multiples of the same documents because, in an effort to be complete and open, SunTrust reviewed three images of Ms. Pettitt's data which were taken at different times.  In the interest of easing the Court's burden of reviewing the documents *in camera*, SunTrust has excluded duplicate documents, removed any attachments to the documents which do not relate to the February 2008 E-Mail, and put the documents in chronological order.

SunTrust should not be required to make such disclosures because:  (1) disclosure to Ms. Pettitt and her counsel could constitute a waiver of the attorney-client privilege and work product doctrine and Ms. Pettitt has failed to demonstrate a need for the information she seeks, and (2) United Guaranty has not established that it is entitled to the wide range of protected information it is demanding be turned over by SunTrust.

A.      Standard for Invoking Attorney-Client Privilege and Work Product Protection.

Protected information generally falls into three categories: (1) attorney-client privileged information, (2) "fact" work product information, and (3) "opinion" work product information.

1.      Attorney-Client Privilege.

The attorney-client privilege is a "bedrock principle of the adversary system." United States v. Lentz, 419 F. Supp. 2d 820, 826 (E.D. Va. 2005).[7]  The attorney-client privilege promotes open communication between lawyer and client and serves the public interest of informed advocacy.  Id.

The privilege applies under the following circumstances:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

_____

[7]  Pursuant to Rule 501 of the Federal Rules of Evidence, Virginia law applies to the attorney-client privilege issues in this case.  See Fed. R. Evid. 501 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.")  In addition, the communications at issue in this case occurred in Virginia.  Issues relating to the work product doctrine are governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Lentz, 419 F. Supp. 2d at 826-27 (citations omitted).  The burden of proving that the attorney-client privilege applies is on the party asserting the privilege, in this case, SunTrust.  Id. at 827.  See also Commonwealth v. Edwards, 235 Va. 499, 509, 370 S.E.2d 296, 301 (1988) ("The proponent has the burden to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived.")

    2.    Work Product Doctrine.

The work product doctrine protects information prepared in "anticipation of litigation." See Fed. R. Civ. P. 26(b)(3).  Information prepared in connection with a dispute is entitled to work product protection if it was created "because of" the prospect of litigation.  See RLI Insurance Co. v. Conseco, Inc., 477 F. Supp. 2d 741, 746-47 (E.D. Va. 2007) (J. Payne) (The requirement that information be prepared "in anticipation of litigation" is satisfied where the information was created "because of" the prospect of litigation and not in the ordinary course of business) (citing National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992)).

There are two types of work product: "fact" work product and "opinion" work product. Fact work product is information that does not contain "the attorney's mental impressions."  In re Grand Jury Proceedings, 401 F.3d 247, 250 (4th Cir. 2005).  Opinion work product includes information which contains "the fruit of an attorney's mental processes."  Id.  Opinion work product is entitled to greater protection than fact work product because "it represents the actual thoughts and impressions of the attorney."  Id.

Like the attorney-client privilege, the burden is on the party asserting the work product doctrine to show its applicability.  See Conseco, Inc., 477 F. Supp. 2d at 748.

B.    The Court Should Not Order Disclosure of SunTrust's Attorney-Client Privileged or Work Product Information to Ms. Pettitt and Her Counsel Because Doing So Would Likely Constitute a Waiver of Those Protections and Ms. Pettitt Has Not Made a <u>Sufficient Showing of Her Need for Such Information.</u>

In her Motion for Protective Order, Ms. Pettitt and her counsel requested that SunTrust be required to produce numerous documents that SunTrust has asserted are protected by the attorney-client privilege and work product doctrine.  Specifically, Ms. Pettitt requested that she provided:

a.  Email, memoranda, or other documents from any SunTrust employee or agent requesting that Ms. Pettitt make copies of documents related to the pending dispute with United Guaranty and any response that Ms. Pettitt made pursuant to any such request.

b.  Summaries of any oral communications between counsel for SunTrust and Ms. Pettitt regarding information or documents that Ms. Pettitt provided regarding the pending dispute with United Guaranty.

<u>See</u> Pettitt Motion, p. 4.

As discussed above, any written or oral communications involving Ms. Pettitt and relating to the February 2008 E-Mail occurred primarily in August 2008 in connection with an internal review coordinated through SunTrust's internal legal department, and therefore took place well after the point when litigation between SunTrust and United Guaranty was reasonably foreseeable.  Hence, the documents and communications sought by Ms. Pettitt are protected under the attorney-client privilege and work product doctrine.

The principal issue presented to the Court is whether these documents can be disclosed to Ms. Pettitt and her counsel without waiving the attorney-client privilege or work product protections, particularly in light of United Guaranty's representation that it will not assert a waiver.  SunTrust respectfully asserts that it cannot make such a disclosure without risking a waiver of the attorney-client privilege and work product doctrine as to third parties.

Setting aside for the moment United Guaranty's statements that it will not assert a waiver, disclosure of privileged and work product information to Ms. Pettitt and her counsel would ordinarily constitute a waiver.  Although the Fourth Circuit has held that disclosure of a company's privileged and/or work product information to a current or former employee does not waive those protections so long as the information arose within the scope of the employee's current or former duties (see, e.g., Allen v. McGraw, 106 F.3d 582, 605-606 (4th Cir. 1997)), that rule does not apply when disclosure is made to an employee who is represented by separate counsel and whose interests are, or may be, in conflict with the company's.  See, e.g., Diemer v. Fraternal Order of Police, 242 F.R.D. 452, 457-58 and fn. 8 (N.D. Ill. 2007) (stating that disclosure of a company's privileged information to an employee and his counsel could constitute a waiver "if a conflict of interest had precipitated [the employee's] decision to obtain the services of [independent counsel]."); see also, e.g., First Security Bank v. Northwest Airlines, Inc., 170 F.R.D. 1, 2-3 (D. Mass. 1996) (counsel for former employee of defendant-company should refrain from attempting to gain access to company's privileged information through former employee where counsel was acting in a capacity adverse to the company's interests).

At this point, Ms. Pettitt's employment at SunTrust has been involuntarily terminated, she is represented by her own counsel, and her interests are clearly in conflict with SunTrust's. Under these circumstances, any disclosure to Ms. Pettitt and her counsel could operate as a waiver.

Moreover, it makes no difference that United Guaranty has agreed not to assert any waiver in the event privileged or work product information is turned over to Ms. Pettitt, because disclosure of attorney-client privileged and work product information to an outside party may waive those protections with respect to other, third parties.  See, e.g., United States v. Jones, 696

F.2d 1069, 1072 (4th Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege.  Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.") (citation omitted).  Although SunTrust cannot predict how the information at issue in this case may come up in the future, it is unwilling to risk a waiver through voluntary disclosure.

In addition, Ms. Pettitt has not adequately explained why she needs all of the protected information she is seeking from SunTrust, including summaries of communications between Ms. Pettitt and SunTrust's counsel.  Ms. Pettitt's request for information goes well beyond the disputed February 2008 E-Mail.  Ms. Pettitt has further failed to provide any authority showing that SunTrust is required to provide her with summaries of privileged or work product information.

In the event the Court determines that some disclosure of privileged/work product information to Ms. Pettitt is warranted, SunTrust requests that the Court specifically state in any order requiring disclosure that the privilege/work product protections shall not be deemed waived by SunTrust, in accordance with recently-enacted Federal Rule of Evidence 502.  Rule 502 provides, in part:

> A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court − in which event the disclosure is also not a waiver in any other federal or state proceeding.

Fed. R. Evid. 502(d).

SunTrust further requests that the Court limit any such disclosure to written communications by Ms. Pettitt which specifically relate to the February 2008 E-Mail.

In sum, the Court should not order SunTrust to produce its privileged or work product information to Ms. Pettitt and her counsel.  Alternatively, the Court should only require a limited disclosure to Ms. Pettitt and her counsel accompanied by an order permitted under Federal Rule of Evidence 502(d) stating that any such disclosure shall not constitute a waiver of the attorney-client privilege or work product doctrine.

C.     The Crime-Fraud Exception Cannot be Invoked by United Guaranty to Obtain Broad Access to SunTrust's Protected Information.

United Guaranty has stated that it is entitled to review SunTrust's privileged and work product information under the crime-fraud exception.  Because United Guaranty cannot meet its burden that the crime-fraud exception applies (at least with respect to communications by persons other than Ms. Pettitt), the Court should prohibit or strictly limit disclosure of information protected by the attorney-client privilege and/or work product doctrine.

Under the crime-fraud exception, communications intended to further an unlawful purpose or illegal scheme are not entitled to privilege or work product protection.  See Lentz, 419 F. Supp. 2d at 829-30.  See also Seventh District Committee of the Virginia State Bar v. Gunter, 212 Va. 278, 183 S.E.2d 713 (1971) (discussing crime-fraud exception).

The party seeking to assert the crime-fraud exception must make a *prima facie* showing that the exception applies.  See Lentz, 419 F. Supp. 2d at 831.  To meet this burden the party must establish a *prima facie* case that:  (1) the communication was made for an unlawful purpose or an illegal scheme, and (2) the communication reflects an ongoing or future unlawful or illegal scheme or activity.  Id.  See also In re Grand Jury Proceedings, 401 F.3d at 251.  A *prima facie* case can be made by offering proof "'such as to subject the opposing party to the risk of non-persuasion [if] the evidence as to the disputed fact is left unrebutted.'"  Lentz, 419 F. Supp. 2d at

831 (citation omitted).  See also In re Grand Jury Proceedings, 33 F.3d 342, 352 (4th Cir. 1994) (same).

If a *prima facie* case is made, then the party asserting the privilege is entitled to "'come forward with [an] explanation'" for the communication allegedly in furtherance of a crime or fraud and, if "'the court finds the explanation satisfactory, the privilege remains.'"  In re Grand Jury Proceedings, 33 F.3d at 352 (citation omitted).  Put differently, if a *prima facie* case supporting the crime-fraud exception is made, the party asserting the privilege "may respond with evidence to explain why the vitiating party's evidence is not persuasive."  Id.

The crime-fraud exception may also apply to information protected under the work product doctrine.  However, in order for the fraud exception to apply to "opinion" work product (i.e. counsel's mental impressions, theories, strategies, etc.), the party asserting the exception must show that counsel participated in, or had knowledge of, the fraudulent scheme.  See In re Grand Jury Proceedings, 401 F.3d at 252.  Accordingly, memos, draft letters, and other opinion work product from in-house or outside counsel would not be subject to disclosure unless a *prima facie* showing was made that counsel participated in, or had knowledge of, any fraudulent scheme.  The party asserting the exception must also show that the opinion work product reflects the ongoing scheme.  Id. at 251 ("the documents containing the privileged materials [must] bear a close relationship to the client's existing or future scheme to commit a crime or fraud.")

In this case, the documents on the Privilege Log all arose from an effort by in-house counsel to obtain documents that relate to the dispute between SunTrust and United Guaranty. These documents divide into three categories that relate to or mention the February 2008 E-Mail: (1) communications by Ms. Pettitt; (2) communications of other non-attorneys at SunTrust; and (3) communications by SunTrust's in-house counsel.

SunTrust has already acknowledged that Ms. Pettitt likely altered the February 2008 E-Mail, because: (1) she is the only one who had access to her computer to make any alterations, and (2) Ms. Pettitt conveyed the e-mail to SunTrust's in-house counsel.

There is, however, no evidence that anyone else at SunTrust knew the February 2008 E-Mail was altered prior to receipt of United Guaranty's emergency motion.  United Guaranty cannot possibly make a *prima facie* case that anyone other than Ms. Pettitt participated in, or knew of, any alteration to the February 2008 E-Mail.  Accordingly, United Guaranty cannot show that communications by anyone other than possibly those of Ms. Pettitt herself were "made for an unlawful purpose or an illegal scheme" and "reflects an ongoing or future unlawful or illegal scheme or activity."  See Lentz, 419 F. Supp. 2d at 831; See also In re Grand Jury Proceedings, 401 F.3d at 251.

With respect to counsel's work product, for the fraud exception to apply to "opinion" work product (i.e. counsel's mental impressions, theories, strategies, etc.), the party asserting the exception must show that counsel participated in, or had knowledge of, the fraudulent scheme.  See In re Grand Jury Proceedings, 401 F.3d at 252.  Accordingly, memos, draft letters, and other opinion work product are not subject to disclosure unless counsel participated in, or had knowledge of, a fraudulent scheme or crime.

Again, United Guaranty can offer no evidence whatsoever showing that counsel or anybody else at SunTrust knew of, or participated in, any unlawful or fraudulent scheme.  Indeed, SunTrust has affirmed the same in its answer to an interrogatory from United Guaranty about the February 2008 E-Mail.  Accordingly, SunTrust has no obligation to produce such work product.

- 15 -

For these reasons, the Court should either deny any request by United Guaranty for SunTrust's privileged and work product information or limit such disclosure only to communications by Ms. Pettitt relating to the February 2008 E-Mail.

## CONCLUSION

Based on the foregoing, SunTrust respectfully requests that the Court:

A.     Deny Ms. Pettitt's request to access SunTrust's privileged and work product information or, alternatively, limit any access only to communications *by Ms. Pettitt* which relate to the February 2008 E-Mail, and further order that such disclosure does not constitute a waiver of the attorney-client privilege and work product doctrine pursuant to Federal Rule of Evidence 502(d);

B.     Deny any request by United Guaranty to access SunTrust's privileged and work product information or, alternatively, limit any access only to communications *by Ms. Pettitt* which relate to the February 2008 E-Mail; and

C.     Grant any further relief to SunTrust which the Court deems just and proper.

Respectfully submitted,

SUNTRUST MORTGAGE, INC.

By Counsel

/s/ S. Miles Dumville
S. Miles Dumville (VSB No. 15748)
Curtis G. Manchester (VSB No. 32696)
Travis A. Sabalewski (VSB No. 47368)
Reed Smith LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, VA 23219-4068
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
mdumville@reedsmith.com
cmanchester@reedsmith.com
tsabalewski@reedsmith.com
        Counsel for SunTrust Mortgage, Inc.

Joshua Gold
Anderson. Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
jgold@andersonkill.com
        Of Counsel for SunTrust Mortgage, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 16th day of February, 2010, a true and correct copy of the foregoing was served:

via ECF on:

Wyatt B. Durrette, Jr., Esquire
Durrette Bradshaw PLC
600 East Main Street, 20th Floor
Richmond, VA 23219
wdurrette@durrettebradshaw.com

and via ECF on:

John C. Millian, Esquire
Christyne K. Brennan, Esquire
Brian C. Baldrate, Esquire
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
jmillian@gibsondunn.com
cbrennan@gibsondunn.com
bbaldrate@gibsondunn.com

Counsel for AIG United Guaranty Corporation and United Guaranty Residential Insurance Company of North Carolina

/s/ S. Miles Dumville
S. Miles Dumville (VSB No. 15748)
Curtis G. Manchester (VSB No. 32696)
Travis A. Sabalewski (VSB No. 47368)
Reed Smith LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, VA 23219-4068
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
mdumville@reedsmith.com
cmanchester@reedsmith.com
tsabalewski@reedsmith.com
        Counsel for SunTrust Mortgage, Inc.

Joshua Gold
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
jgold@andersonkill.com
        Of Counsel for SunTrust Mortgage, Inc.