UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNTRUST MORTGAGE, INC.,

        Plaintiff,

v.                                          Civil Action No. 3:09cv00529

AIG UNITED GUARANTY CORPORATION
a/k/a UNITED GUARANTY CORPORATION, et al.,

        Defendants.

## SECOND AMENDED COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, for its Second Amended

Complaint against Defendant United Guaranty Residential Insurance Company of North

Carolina ("United Guaranty"), states as follows.

## INTRODUCTION AND NATURE OF DISPUTE

1.      SunTrust brings this action against United Guaranty for breach of contract and

alternatively for fraud, with regard to mortgage insurance sold by United Guaranty to SunTrust,

to protect SunTrust against losses sustained as a result of payment defaults by borrowers on

mortgage loans that SunTrust originated or purchased.  Pursuant to the terms of the Master

Policy issued by United Guaranty and related agreements (collectively the "Mortgage Insurance

Policy"), United Guaranty agreed that it would cover the risks of and losses caused by payment

defaults in connection with the subject mortgage loans originated or purchased by SunTrust.

United Guaranty nevertheless has refused to pay valid claims submitted by SunTrust on certain

individual loans and certain categories of loans, as more fully described hereinafter, despite

confirmations and representations to SunTrust that those loans were covered under the Mortgage

US_ACTIVE-103198309.4

Insurance Policy.  In reliance on the representations and actions of United Guaranty, SunTrust commenced making the loans and continued to make the loans, which it would not have done if United Guaranty had informed SunTrust that the loans did not qualify for coverage under the Mortgage Insurance Policy.

2.      In an effort to escape its insurance coverage obligations to SunTrust and contrary to its representations that coverage existed, United Guaranty has breached its obligations under the Mortgage Insurance Policy by systematically failing and refusing to pay valid claims made by SunTrust under the Mortgage Insurance Policy, resulting in substantial direct and consequential damages to SunTrust.  United Guaranty's actions have thus frustrated one of the fundamental purposes of the Mortgage Insurance Policy and consequently constitute a material breach of the parties' contract.

3.      Because of United Guaranty's wrongful conduct, SunTrust brings this Complaint seeking damages, including punitive damages, attorneys' fees and costs, for United Guaranty's breach of contract and bad faith claims settlement practices or, in the alternative, for actual or constructive fraud.

## THE PARTIES

4.      Plaintiff SunTrust Mortgage, Inc. is a Virginia corporation with its principal place of business located in the City of Richmond, Virginia.  SunTrust is in the business of, inter alia, making and purchasing mortgage loans to consumers for the purchase of residential real estate and the refinancing of existing mortgage loans.

5.      Defendant United Guaranty is an insurance company domiciled under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  Upon

information and belief, United Guaranty is a subsidiary of United Guaranty Corporation, whose

ultimate parent company is American International Group, Inc.

## JURISDICTION AND VENUE

6.      SunTrust seeks damages in excess of the minimum jurisdictional limits of this

Court in connection with the insurance coverage purchased by and sold to SunTrust insuring

SunTrust operations located in the City of Richmond, Virginia.

7.      Venue is proper in this Court as the causes of action alleged herein accrued, in

whole or in part, in the City of Richmond, Virginia.

8.      Furthermore, United Guaranty does business in the City of Richmond, or

otherwise transacts the business of insurance in Virginia.

## THE MORTGAGE INSURANCE POLICY

9.      SunTrust purchased insurance pursuant to the Mortgage Insurance Policy for a

period of years, including 2004 through 2009.  The Mortgage Insurance Policy in effect during

this period consists of, inter alia, a "Master Policy" and other documents defined therein as

comprising the Master Policy.  A true and correct copy of the Master Policy received by

SunTrust at or about the beginning of this period of coverage is attached as Exhibit A.

10.      The terms of the Master Policy were modified by a "SunTrust Mortgage

Agreement Closed-End Purchase Money Seconds - Flow Business Risk Sharing Program" dated

June 23, 2004 and an "AIG United Guaranty SunTrust Mortgage Agreement Closed-End

Purchase Money Second—Flow Business Risk Sharing Experienced Rating Plan (ERP)" dated

October 17, 2005 (the "Flow Plans"), copies of which are attached as Exhibits B and C.

11.      The Flow Plans state:  "Loan Product:  This flow insurance proposal covers all

products that are currently issued to [*sic* by] SunTrust Mortgage."

12.     Under the Flow Plans, the "loans covered" are "those loans submitted to United Guaranty for insurance that are still in force at the effective date and are not currently 30 days or more delinquent."

13.     Under the Flow Plans, the covered loans were loans that conformed to SunTrust Mortgage guidelines that were currently being used when the loan was made and had been mutually agreed upon.

14.     The Flow Plans extended coverage to "100% of the claim amount per loan minus any other recoverables."

15.     The Master Policy was also modified to allow coverage under the Policy for mortgage loans with a 100% loan to value ratio ("LTV").

16.     The Mortgage Insurance Policy is also comprised of "Certificates" assigned and issued by United Guaranty for each loan United Guaranty has undertaken an obligation to insure. Based upon representations made by United Guaranty, it issued certificate numbers in lieu of individual certificate documents for the loans at issue.

17.     SunTrust paid substantial insurance premiums for the Mortgage Insurance Policy, which United Guaranty accepted and deposited.

### The IOF Combo 100 Loans

18.     In the early 2000's, SunTrust developed a second lien program for loans with a combined loan to value ratio in excess of 90%. Because of regulatory requirements and internal SunTrust risk policies, SunTrust required lender-paid mortgage insurance for these second lien mortgage loans.   In the latter part of 2003, SunTrust made plans to issue a new loan product consisting of second lien loans following "traditionally underwritten" first lien loans with combined loan to value ratios of up to 95 percent.  This loan product offered the option of an

interest-only first mortgage ("IOF").  Because of regulatory requirements and its own internal

risk policies, SunTrust determined that it would not offer these loans unless it could obtain

lender-paid mortgage insurance from United Guaranty to cover potential losses on such loans.

Accordingly, SunTrust advised United Guaranty of the anticipated loan program and sought

confirmation from United Guaranty that such loans met United Guaranty's criteria for coverage

under the Mortgage Insurance Policy.  In seeking such confirmation, SunTrust expressly advised

United Guaranty that such loans would be "traditionally underwritten" (meaning that a potential

borrower's ability to qualify for the loan would be assessed by a SunTrust employee or broker or

agent engaged in loan underwriting) rather than being underwritten using an automated

underwriting software program.  United Guaranty notified SunTrust in December, 2003 that such

loans would be insured under the Master Policy.  As a result, SunTrust added the underwriting

guidelines for these loans to its product descriptions for use in the origination and purchase of

mortgage loans, and began making such loans.

19.     In late 2004, SunTrust decided that it would like to offer a similar loan product

that included second lien loans following "traditionally underwritten" interest only first lien

loans with combined loan to value ratios of up to 100 percent ("IOF Combo 100 Loans").

Because of regulatory requirements and its own internal risk policies, SunTrust was not willing

to offer these loans unless United Guaranty insured them under the Mortgage Insurance Policy.

SunTrust again sought confirmation from United Guaranty that such loans would be covered

under the Master Policy.

20.     United Guaranty's officers and employees confirmed and represented orally and

in writing both at the time SunTrust was considering making the IOF Combo 100 Loans and

after it had commenced making the loans that the loans were covered by the Mortgage Insurance

Policy.  Such representations included, but are not limited to, a January 7, 2005 email from Rick Hughes, who on information and belief was an officer of United Guaranty, to Mary Pettitt of SunTrust that confirmed that the IOF Combo 100 Loans had been approved by United Guaranty for coverage under the Policy.  In this email, Mr. Hughes confirmed the coverage and stated, among other things: "Let me know if this e-mail does not suffice for documentation of our acceptance."  A copy of the January 7, 2005 email is attached as Exhibit D.

21.     On January 27, 2006, in an email from Ms. Pettitt to United Guaranty, SunTrust sought confirmation from United Guaranty that IOF Combo 100 Loans secured by real estate consisting of two dwelling units would be covered under the Master Policy.  Ms. Pettitt's email included a proposed loan product description that expressly stated that traditional underwriting could be employed to underwrite these loans.  On February 1, 2006, Pam Gavin, who on information and belief was an officer of United Guaranty, responded with confirmation that such loans would be covered.  A copy of the January 27/February 1, 2006 email exchange is attached as Exhibit E.

22.     Based on the representations of United Guaranty's officers and employees that the IOF Combo 100 Loans had been approved by United Guaranty for coverage under the Mortgage Insurance Policy, SunTrust began making such loans and ultimately made thousands of such loans, totaling millions of dollars.  SunTrust submitted such loans to United Guaranty for coverage under the Mortgage Insurance Policy, and United Guaranty routinely confirmed that it had issued certificates of insurance, identified by unique certificate numbers for the covered loans, which confirmed that the loans were covered.  Based on information made available to SunTrust as of the date of filing this Second Amended Complaint, such certificate numbers were

issued for each of the loans that are the subject of this action.  SunTrust in turn paid United

Guaranty in excess of $14 million for this coverage and continues to pay such premiums.

23.     But for United Guaranty's repeated representations and actions confirming that

the IOF Combo 100 Loans were covered by the Mortgage Insurance Policy, SunTrust would not

have commenced or continued to make those loans.

24.     From the point SunTrust commenced making the IOF Combo 100 Loans in

March, 2005 through December, 2007, United Guaranty paid without objection or reservation of

rights approximately nine claims, totaling approximately $510,000.00, submitted by SunTrust as

a result of borrower defaults on IOF Combo 100 Loans.  Such loans were traditionally

underwritten.

25.     However, as a result of the unanticipated sharp declines in the economy and the

overall real estate market in the United States that began in 2007 - 2008, borrower defaults on the

IOF Combo 100 Loans, as well as other loans insured by the Mortgage Insurance Policy,

increased significantly, resulting in a substantial increase in the claims filed by SunTrust under

the Mortgage Insurance Policy.  Thereupon, in an effort to avoid its obligations under the

Mortgage Insurance Policy and contrary to its prior representations and actions confirming that

the IOF Combo 100 Loans were covered under the Mortgage Insurance Policy, beginning in the

spring of 2007, United Guaranty began to deny SunTrust's claims on defaulted IOF Combo 100

Loans.  Thereafter, from January 2008 to the present time United Guaranty has systematically

refused to cover losses suffered by SunTrust resulting from defaults on the IOF Combo 100

second-lien mortgages originated by SunTrust.  United Guaranty's contrived excuse for denying

such claims was that the interest-only first-lien mortgages were traditionally underwritten and

not underwritten using a particular automated software program known as "Desktop

Underwriter" ("DU").  United Guaranty asserted that use of DU was a requirement for coverage under the Mortgage Insurance Policy, despite its prior representations and agreement that, as a loan product currently offered by SunTrust and underwritten in accordance with SunTrust's underwriting guidelines, the IOF Combo 100 Loans were covered by such Policy.

26.     The Mortgage Insurance Policy does not contain a requirement that the interest-only first-lien mortgages were to be underwritten using the Desktop Underwriter program, the use of which would have been contrary to SunTrust's underwriting guidelines.  Indeed, at the time SunTrust initiated its IOF Combo 100 Loan program and for approximately two years thereafter, due to limitations of the DU program it was not possible to underwrite such 100% CLTV loans using this software, a fact that United Guaranty knew or should have known at the time it agreed and represented that the IOF Combo 100 Loans were covered under the Mortgage Insurance Policy.  In fact, other specific requirements in SunTrust's IOF Combo 100 underwriting guidelines are irrelevant when a loan is underwritten using Desktop Underwriter, which highlighted to United Guaranty that SunTrust was not employing Desktop Underwriter in underwriting these loans.  United Guaranty knew that SunTrust's underwriting guidelines for the IOF Combo 100 Loans called for traditional underwriting (not DU underwriting), since the SunTrust underwriting guidelines were made available to United Guaranty and United Guaranty had been told at the inception of the IOF Combo 100 loan program and thereafter that the loans were being traditionally underwritten.  Moreover, the traditional underwriting procedures employed by SunTrust to underwrite these loans provided a higher degree of scrutiny and protection against the risk of loss than would have been provided using the Desktop Underwriter program, if it could have been used to underwrite the loans.

27.     If in fact one of United Guaranty's requirements for providing coverage under the
Mortgage Insurance Policy was that such loans had to be underwritten using the Desktop
Underwriter program, such purported criteria was not disclosed to SunTrust until more than two
years after SunTrust had originated thousands of such loans in the millions of dollars and United
Guaranty had affirmatively represented that such loans were covered by the Mortgage Insurance
Policy, had issued certificate numbers for each of such loans and had accepted millions of dollars
in premiums for such coverage.

28.     Indeed, once United Guaranty began to assert in the spring of 2007 that the IOF
Combo 100 product purportedly "had" to be underwritten using DU, United Guaranty set upon a
campaign to deceive the SunTrust employees who processed claims under the Master Insurance
Policy to believe that internal "matrices" created by United Guaranty overrode the SunTrust
underwriting guidelines.  This campaign included email communications between Pam Gavin of
United Guaranty and Vicki Bolick of SunTrust on or about May 1, 2007.

29.     All of the IOF Combo 100 Loans on which United Guaranty has denied claims
are ones that, in accordance with the Flow Plans, were "products currently issued by SunTrust"
and that "conform to SunTrust Mortgage guidelines that are currently being used and have been
mutually agreed upon."

**Other Loans on which United Guaranty has Wrongfully Denied SunTrust's Claims**

30.     In addition to the IOF Combo 100 Loans, United Guaranty agreed to insure other
second liens under the Mortgage Insurance Policy, including second lien mortgage loans for
which SunTrust did not independently verify all of the facts stated on the borrowers' loan
applications.  United Guaranty also agreed to insure other types of loans that were underwritten
by SunTrust and made to borrowers under various loan programs maintained by SunTrust.  For

each of these loan programs, United Guaranty was made aware by SunTrust of its underwriting criteria for making the loans in question.

31.     United Guaranty was aware of and approved of SunTrust's underwriting practices with respect to these loans and charged and collected from SunTrust premiums for covering such mortgage loans.

32.     Borrower defaults on mortgage loans made by SunTrust have increased dramatically as a result of the economic turmoil in the United States that began in 2007-2008, which has resulted in significant job losses and "negative equity" due to declining home values, leading to a significant increase in SunTrust's claims for coverage under the Mortgage Insurance Policy for loans made under its various loan programs.

33.     Once it became clear that SunTrust's mortgage loan losses were increasing significantly, United Guaranty began to refuse to cover SunTrust's losses from defaults on such loans and has engaged in a pattern of asserting unfounded excuses for its failure to provide coverage for such loans, and has otherwise engaged in unreasonable claims processing with regard to such loans (hereinafter the "Defaulted Loans").

34.     One of the devices United Guaranty has employed to avoid paying claims on the Defaulted Loans is to assert an exclusion in the Mortgage Insurance Policy for borrower misrepresentation.  In doing so, United Guaranty has engaged in inappropriate post-loss insurance underwriting with respect to such loans.

35.     Among United Guaranty's inappropriate post-loss underwriting practices are its practices of (a) ignoring the underwriting facts that existed at the time the loan application was made; (b)  asserting that facts arising after the insured mortgage loan application was made and accepted establish the existence of a misrepresentation at the time the application was made; (c)

the use of inappropriate "retro" appraisals to contend that the values of the properties securing the loans were materially lower than represented in the loan applications; and (d) asserting that information obtained through unreliable sources or obtained improperly is accurate and demonstrates a misrepresentation at the time the application was made.

36.     The risk of increased defaults in an economic downturn is exactly the risk for which the Mortgage Insurance Policy was purchased by SunTrust.

37.     Instead of honoring its obligations under the Mortgage Insurance Policy, United Guaranty repeatedly and without reliable evidence on which to act, has systematically denied claims under the Mortgage Insurance Policy on Defaulted Loans and has unreasonably refused to consider SunTrust's evidence that the borrowers' applications did not contain material misrepresentations at the time they were presented to and accepted by SunTrust.

38.     United Guaranty's failure and refusal to honor its insurance coverage obligations promptly and in full is unreasonable, in material breach of the Mortgage Insurance Policy and contrary to its representations on which SunTrust relied to its detriment.  Such conduct is also in bad faith, in whole or in part, and violates applicable law.  In attempting to evade its obligations, United Guaranty has engaged in deceptive and fraudulent conduct.

39.     SunTrust has satisfied all of the conditions under the Mortgage Insurance Policy and has paid all insurance premiums due and owing.

## FIRST CAUSE OF ACTION

### [Breach of Contract – IOF Combo 100 Loans]

40. SunTrust re-alleges and incorporates by reference paragraphs 1 through 39 above as though set forth fully herein.

41. United Guaranty has breached its obligations under the Mortgage Insurance Policy, as modified by the Flow Plans, by failing and refusing to cover SunTrust, in full, for its covered losses on the IOF Combo 100 Loans. As a direct and proximate result of United Guaranty's breach of contract, SunTrust is entitled to recover damages, including substantial consequential damages, which continue to increase, plus prejudgment and post-judgment interest.

42. Through the conduct described above, United Guaranty has engaged in bad faith claim settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to provide for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair and equitable settlement of claims in which United Guaranty's liability has become clear; (d) compelling SunTrust to instigate the instant litigation to recover amounts due under the Mortgage Insurance Policy; (e) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to SunTrust; and (f) failing to pay SunTrust's claims without a legitimate reason. As a direct and proximate result of the acts of United Guaranty, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## SECOND CAUSE OF ACTION

### [Breach of Contract – Defaulted Loans]

43.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 39 above as though set forth fully herein.

44.     United Guaranty has breached its obligations under the Mortgage Insurance Policy, as modified by the Flow Plans, by failing and refusing to cover SunTrust, in full, for its covered losses on the Defaulted Loans.  As a direct and proximate result of United Guaranty's breach of contract, SunTrust is entitled to recover damages, including substantial consequential damages, which continue to increase, plus prejudgment and post-judgment interest.

45.     Through the conduct described above, United Guaranty has engaged in bad faith claim settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to provide for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair and equitable settlement of claims in which United Guaranty's liability has become clear; (d) compelling SunTrust to instigate the instant litigation to recover amounts due under the Mortgage Insurance Policy; (e) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to SunTrust; and (f) failing to pay SunTrust's claims without a legitimate reason.  As a direct and proximate result of the acts of United Guaranty, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## THIRD CAUSE OF ACTION

### [Alternative Claim for Actual Fraud with Regard to IOF Combo 100 Loans]

46.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 39 above as though set forth fully herein.

47.     Through its words, actions and silence when it had a duty to speak, United Guaranty by its officers and agents intentionally misrepresented to SunTrust that the IOF Combo 100 Loans were covered by the Mortgage Insurance Policy.  In commencing and continuing to make the IOF Combo 100 Loans, SunTrust reasonably relied on the representations and actions of United Guaranty, and would not have made such loans if United Guaranty had timely informed SunTrust that United Guaranty believed that such loans were not eligible for coverage under the Policy.  Furthermore, if in fact one of United Guaranty's requirements for coverage of such loans was that they had to be underwritten using the Desktop Underwriter program, United Guaranty was under a duty to timely and fully disclose that fact to SunTrust.   Rather than disclose this supposed requirement to SunTrust, United Guaranty continued to represent that these traditionally underwritten loans were eligible for coverage, issued certificates of insurance for them, and collected millions of dollars in premiums on the loans.  If United Guaranty's current contention that, because the IOF Combo 100 Loans were not underwritten using the Desktop Underwriter program they are not covered by the Mortgage Insurance Policy, is correct, as a result of its reliance on the prior contrary representations of United Guaranty SunTrust has suffered substantial actual and consequential damages resulting from making and continuing to make the IOF Combo 100 Loans that it would not have incurred but for United Guaranty's misrepresentations.

48.     United Guaranty's actions were intended to benefit United Guaranty through its collection of substantial additional premiums, were malicious and were in knowing or reckless disregard for the rights and interests of SunTrust.

49.     As a result of United Guaranty's wrongful acts, SunTrust is entitled to recover as damages all losses sustained by it as a result of its commencing and continuing to make the IOF Combo 100 Loans, which continue to increase, plus punitive damages.

50.     As a direct and proximate result of the acts of United Guaranty, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## FOURTH CAUSE OF ACTION

**[Alternative Claim for Constructive Fraud with Regard to IOF Combo 100 Loans]**

51.     SunTrust re-alleges and incorporates by reference paragraphs 1 through 39 above as though set forth fully herein.

52.     Through its words, actions and silence when it had a duty to speak, United Guaranty by its officers and employees misrepresented to SunTrust that the IOF Combo 100 Loans were covered by the Mortgage Insurance Policy.  In commencing and continuing to make the IOF Combo 100 Loans, SunTrust reasonably relied on the representations and actions of United Guaranty, and would not have made such loans if United Guaranty had timely informed SunTrust that United Guaranty believed that such loans were not eligible for coverage under the Policy.  Furthermore, if in fact one of United Guaranty's requirements for coverage of such loans was that they had to be underwritten using the Desktop Underwriter program, United Guaranty was under a duty to timely and fully disclose that fact to SunTrust.   Rather than disclose this supposed requirement to SunTrust, United Guaranty continued to represent that these traditionally underwritten loans were eligible for coverage, issued certificates of insurance for them, and collected millions of dollars in premiums on the loans.  If United Guaranty's current contention that, because the IOF Combo 100 Loans were not underwritten using the Desktop Underwriter program they are not covered by the Mortgage Insurance Policy, is correct, as a

result of its reliance on the prior contrary representations of United Guaranty SunTrust has suffered substantial actual and consequential damages resulting from making and continuing to make the IOF Combo 100 Loans that it would not have incurred but for United Guaranty's misrepresentations.

53.      United Guaranty's actions were intended to benefit United Guaranty through its collection of substantial additional premiums, and were in reckless disregard for the rights and interests of SunTrust.

54.      As a result of United Guaranty's wrongful acts, SunTrust is entitled to recover as damages all losses sustained by it as a result of its commencing and continuing to make the IOF Combo 100 Loans, which continue to increase.

55.      As a direct and proximate result of the acts of United Guaranty, SunTrust is also entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## JURY DEMAND

56.      Plaintiff requests a trial by jury on all issues so triable.

WHEREFORE, SunTrust prays that the Court award it the following relief:

1.      Under Count I, direct and consequential damages in an amount to be proven at trial, plus reasonable attorney's fees and all costs of litigation incurred;

2.      Under Count II, direct and consequential damages in an amount to be proven at trial, plus reasonable attorney's fees and all costs of litigation incurred;

3.      In the alternative as to Count I, under Count III direct and consequential damages in an amount to be proven at trial, plus reasonable attorney's fees and all costs of litigation incurred, and punitive damages in an amount sufficient to punish United Guaranty and to make an example of United Guaranty in order to deter similar conduct in the future;

4.      In the alternative as to Count I, under Count IV direct and consequential damages in an amount to be proven at trial, plus reasonable attorney's fees and all costs of litigation incurred;

5.      Pre-judgment and post-judgment interest; and

6.      Such other and further relief as may be deemed just and proper.

SUNTRUST MORTGAGE, INC.

By Counsel

/s/ S. Miles Dumville
S. Miles Dumville (VSB #15748)
Curtis G. Manchester (VSB # 32696)
Travis A. Sabalewski (VSB #47368)
Reed Smith LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, VA  23219
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
        Counsel for Plaintiff, SunTrust Mortgage, Inc.

Joshua Gold
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
        Of Counsel for Plaintiff, SunTrust Mortgage, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2010 a copy of the foregoing was served through CM/ECF on:

Wyatt B. Durrette, Jr., Esquire
Durrette Bradshaw PLC
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219

John C. Millian, Esquire
Christyne K. Brennan, Esquire
Brian C. Baldrate, Esquire
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
cbrennan@gibsondunn.com
jmillian@gibsondunn.com
bbaldrate@gibsondunn.com
Counsel for United Guaranty Residential Insurance
        Company of North Carolina


/s/ S. Miles Dumville
S. Miles Dumville (VSB No. 15748)
Curtis G. Manchester (VSB No. 32696)
Travis A. Sabalewski (VSB No. 47368)
Reed Smith LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, VA 23219-4068
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
mdumville@reedsmith.com
cmanchester@reedsmith.com
tsabalewski@reedsmith.com
        Counsel for SunTrust Mortgage, Inc.

Joshua Gold
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
jgold@andersonkill.com
        Of Counsel for SunTrust Mortgage, Inc.