IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:09cv529-REP |
| UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court for resolution of non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) on the Defendant's Motion to Stay the Execution of the Count I Judgment Pending Appeal and Approve United Guaranty's Security Agreement (ECF No. 572).[1] The matter has been sufficiently addressed by the parties submissions and the Court has entertained oral argument. For the reasons set forth herein, the Defendant's Motion is DENIED, and the Defendant's request for an extension of time of seven (7) days to secure a supersedeas bond is GRANTED.[2]

---

[1] On October 14, 2011, hours before the trial court's deadline of 5:00 p.m., the Defendant acknowledged that its proposed Security Agreement was impractical because it would require approval of the North Carolina Department of Insurance, which would take approximately thirty (30) days. Presumably, this development renders the pending Motion to Stay moot, and the Court could deny it on that basis. Nevertheless, given the time constraints imposed upon the parties and the Court, as well as the prospect of a subsequent request for relief should the Defendant fail to obtain a supersedeas bond, the Court shall address the merits of the Motion to Stay.

[2] The Defendant represents to the Court that the Plaintiff does not oppose such an extension, and the Plaintiff did not indicate otherwise during oral argument.

## I. BACKGROUND

**A.    Procedural History**

After a bench trial conducted on July 18, 2011, the trial Court entered judgment in favor of SunTrust Mortgage, Inc. ("SunTrust") on Count I of the Third Amended Complaint (ECF No. 121) in the principle amount of $34,152,634, as well as prejudgment interest in the amount of $5,794,420, with stipulated per diem prejudgment interest of $5,819 through entry of the final judgment order.  (Memorandum Opinion of August 19, 2011, ECF No. 548).  Defendant, United Guaranty Residential Insurance Company of North Carolina ("United Guaranty"), timely noticed its appeal on September 2, 2011 (ECF No. 554) and filed its Motion to Stay Execution of the Count I Judgment Pending Appeal on September 26, 2011 (the "Motion to Stay") (ECF No. 572).

In its Motion to Stay, United Guaranty argues that it should not be required to post a supersedeas bond because it can "provide SunTrust adequate protection for the collection of its judgment should it be so entitled at the end of an appeal." (Def.'s Br. Sup. Mot. To Stay at 1, ECF No. 573.)  As an alternative source of security, United Guaranty offered to fund an escrow account with U.S. Treasury notes and bonds in value exceeding $49,000,000 -- well in excess of the $46,127,339.18 which the parties agree will constitute the total judgment, with interest, as of March 31, 2013.

In concurrence with its Motion to Stay, United Guaranty filed a Motion for an Expedited Hearing, which the trial court granted.  However, during a telephonic hearing held before the trial judge on September 29, 2011, the Court found that counsel for the parties were engaged in good faith discussions in an effort to resolve the Motion to Stay.  (October 3, 2011 Order, ECF

No. 580.) Accordingly, the Court determined that it was in the interests of justice to allow the parties to negotiate a satisfactory alternative plan to secure the judgment. (Id.) To facilitate a timely resolution of the issue, the Court referred the Motion to Stay to this Court to resolve the matter no later than October 14, 2011 at 5:00 p.m., but with authority to extend that deadline by a period of no more than seven (7) days to allow the execution of any approved plan.

**B.    United Guaranty's Uncertain Financial Health**

A negotiated resolution no longer appears feasible, as SunTrust has expressed concerns about United Guaranty's financial health and the impact that possible insolvency might have on SunTrust's ability to collect the judgment proceeds from the proposed escrow account. In order to expedite resolution of the disputed issues, the parties have set forth their respective positions on the Motion to Stay by informal position papers in lieu of formal legal briefs, as requested by this Court. (ECF Nos. 586, 587.) Of particular significance, the submissions contain United Guaranty's audited financial reports from 2009 and 2010 (the "Audited Reports"), as well as its quarterly statement issued on June 30, 2011 (the "Quarterly Statement"). The parties dispute the degree to which the financial records evince a strong financial position on United Guaranty's part.

Citing its Quarterly Statement, United Guaranty asserts that it is in a strong financial position because, as of that time, it maintained a surplus of $287,965,981. However, SunTrust correctly notes that, as an insurance company, United Guaranty does not use Generally Accepted Accounting Principles ("GAAP"). Instead, it is required by North Carolina law to employ the standards of the National Association of Insurance Commissioners ("NAIC Standards"). At oral argument, the parties agreed that this discrepancy does not reflect any intent to deceive on United Guaranty's part, for it is required by law to utilize the NAIC Standards. Nevertheless, as the

Audited Reports suggest, the purpose of the NAIC Standards is to evaluate an insurance company's ability to pay its insured -- not to evaluate the overall financial health of the company as a going concern.

By employing NAIC Standards rather than GAAP, United Guaranty's financial reports classify "surplus notes" owed to its parent company as "surplus," while the GAAP standards would characterize those "surplus notes" as a liability. Thus, it might be fair to consider the "surplus notes," which total $663,614,500, as a liability rather than an asset. Subtracted from United Guaranty's claimed surplus of $287,965,981, a positive sum according to NAIC Standards suddenly becomes a significant negative number according to GAAP.

Several other aspects of United Guaranty's surplus give the Court reason for concern. First, the supposed surplus does not include the approximately $46.1 million judgment obtained on Count I in this litigation. Second, many of the assets identified in the Quarterly Statement are stocks, approximately half of which are held in affiliated companies, and none of which can be certain to hold the same value today that they held on June 30, 2011. Finally, United Guaranty's financial situation is dependent on the financial health of its parent company, American International Group ("AIG"), with whom it maintains a capital maintenance agreement. Because United Guaranty has not shared the terms of the capital maintenance agreement with SunTrust or the Court, the impact of this relationship on United Guaranty's financial health cannot be assessed. At best, United Guaranty's solvency is uncertain for the purpose of resolving the pending motion.

### C.  Potential Consequences of Insolvency

With United Guaranty's uncertain financial health in mind, there is at least *some* risk that it could become insolvent within one year. As an insurance company, it would not enter the

federal bankruptcy process, but would instead be subject to rehabilitation or liquidation pursuant to North Carolina law. To that end, SunTrust argues that N.C. Gen. Stat. §§ 58-30-140, -145, and -150, which provide circumstances under which a transfer of assets could be voided, might allow United Guaranty's other creditors to gain access to the escrow funds. Such an outcome would effectively render the stay, if granted, without any security. United Guaranty challenges such a prospective string of events as highly speculative and doubtful, arguing that the escrow account places SunTrust in the same position as if United Guaranty simply satisfied the judgment. This is the gravamen of the dispute now before the Court.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 62(d) provides that, when an appeal is taken, the appellant is entitled to a stay if it posts a supersedeas bond. However, the Court has broad discretion to grant such a stay with alternative security where appropriate. Alexander v. Chesapeake, Potomac & Tidewater Books, Inc., 190 F.R.D. 190, 192 (E.D. Va. 1999). "Rule 62(d) does not address, and hence does not preclude, issuance of a stay on the basis of some lesser bond, or indeed, no bond. It follows, logically, that this Rule leaves unimpaired a district court's inherent, discretionary power to stay judgments pending appeal on terms other than a full supersedeas bond." Id. It is generally appropriate to permit such alternative security "where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." Olympia Equip. Leasing Co. v. Western Union Telegraph Co., 786 F.2d 794, 796 (7th Cir. 1986).

However, "[i]n the typical case, of course, [security] is best served by requiring a full supersedeas bond as a condition to the issuance of a stay of judgment pending appeal." Alexander, 190 F.R.D. at 193. Permitting an alternative form of security is a "'very difficult task,' as the district court must find some way 'to make the judgment creditor as well off during

the appeal as it would be if it could execute at once.'" Id (quoting Olympia, 786 F.2d at 800 (Easterbrook, J., concurring)).

### III. DISCUSSION

Under the circumstances, the Court is arguably within its sound discretion to either grant *or deny* the relief sought by United Guaranty's Motion to Stay. However, in weighing the equities, the Court concludes that the most appropriate way to secure satisfaction of SunTrust's judgment pending appeal is to require United Guaranty to post a supersedeas bond.

First, United Guaranty's uncertain financial position suggests that it is possible, however unlikely, that it will become insolvent within the next year. Under those circumstances, SunTrust would be inviting further litigation were it to accept the escrow account plan (or even cash payment) because such a transfer could constitute a voidable preference pursuant to N.C. Gen. Stat. § 58-30-150(a)(3). Moreover, in weighing SunTrust's risk of losing its $46.1 million judgment against the cost of a supersedeas bond (approximately $460,000 to $690,000), such costs are relatively minor compared to the potential losses that SunTrust might otherwise face.

**A. SunTrust's Risk of Further Litigation**

At the outset of oral argument, counsel for United Guaranty offered what first appears to be a compelling argument based on the rule that the Court "should act to 'preserve the status quo while protecting the non-appealing party's rights pending appeal.'" Alexander, 190 F.R.D. at 193 (quoting Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190-91 (5th Cir. 1979)). As counsel analyzed the situation, the relevant North Carolina statutes would govern the proposed escrow account in the exact same way that they would govern a voluntary satisfaction of the judgment in full. Stated differently, a liquidator would be equally

able to void a simple cash payment of the judgment as a fraudulent transfer or voidable preference.

While this argument is compelling, it appears to be based on an analysis of N.C. Gen. Stat. § 58-30-140, which governs fraudulent transfers.  This is because § 58-30-140 applies to "[e]very transfer made or suffered and every obligation incurred by an insurer," regardless of whether such transfer constitutes a preference.  Compare N.C. Gen. Stat. § 58-30-140 with § 58-30-150.  While § 58-30-140 was the focus of the parties' disagreement in their submissions and at oral argument, the Court's review of the other referenced provisions reveals that § 58-30-150 presents a more compelling argument against the alternative arrangement proposed by the Motion to Stay.

The Court agrees with United Guaranty that § 58-30-140 does not pose a significant risk because it applies only if there is evidence of an intent "to hinder, delay, or defraud either existing or future creditors," and fair consideration was not paid.  Here, the trial judge concluded that the parties were negotiating this deal in good faith.  (October 3, 2011 Order, ECF No. 581.) This Court agrees with that assessment, and further finds no other evidence of any intent to defraud United Guaranty's other creditors.  Moreover, by saving the cost of securing a supersedeas bond, and "enjoying" temporary relief from execution of the judgment, United Guaranty would receive "fair consideration" in exchange for funding the escrow account.  N.C. Gen. Stat. § 58-30-10(9)(b) ("[P]roperty or obligation [] received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared to the

property or obligation obtained"). It is, therefore, unlikely that § 58-30-140 could serve as a basis for other creditors to set aside the transfer of assets into the escrow account.[3]

However, in review of the referenced statutory provisions, the Court has concluded that § 58-30-150 does, indeed, pose a significant risk to SunTrust were it to agree to the terms of the escrow arrangement. According to that provision, if United Guaranty funded an escrow account to secure its obligation to SunTrust, such a transfer would be a voidable preference because: (a) it would allow SunTrust to "obtain a greater percentage of [its] debt than another creditor of the same class; and (b) SunTrust has, "at the time the transfer [is] made, reasonable cause to believe that [United Guaranty] was insolvent *or was about to become insolvent*. N.C. Gen. Stat. § 58-30-150(a)(3) (emphasis added). Because SunTrust has now performed a cursory analysis of United Guaranty's Audited Reports and Quarterly Report, and concluded that there is a risk of insolvency in the near future, it is now arguably on notice that United Guaranty is "about to become insolvent." Id.

Indeed, the problem posed by N.C. Gen. Stat. § 58-30-150(a)(3) is overlooked by United Guaranty's otherwise compelling argument that SunTrust's risks are no greater than would have existed had United Guaranty simply paid the judgment. SunTrust would not have examined United Guaranty's financial health had United Guaranty simply paid the judgment *instead of filing the Motion to Stay*. But that is not what happened, and by filing the Motion to Stay, United Guaranty prompted SunTrust to conduct such an examination and reach its conclusion that United Guaranty is, at least, at risk of becoming insolvent in the near term. Whether or not this conclusion is accurate, it has placed SunTrust in the untenable position of possessing that

---

[3] The Court similarly rejects any possibility that N.C. Gen. Stat. § 58-30-145 might serve as a basis to set aside the escrow transfer. On its face, that section applies only if the transfer occurs *after* an insolvent insurer files a petition for rehabilitation or liquidation. Here, no such petition has yet been filed.

knowledge which could render the escrow account transfer voidable pursuant to § 58-30-150(a)(3). SunTrust cannot be expected to knowingly accept the escrow arrangement under these circumstances, and the Court will not compel it to do so.

The status quo cannot be preserved by the proposed escrow arrangement given the potential avoidance of the transfer pursuant to North Carolina law, should United Guaranty become insolvent in the next year. The Court therefore concludes that only the posting of a supersedeas bond can adequately protect SunTrust's interests pending appeal.

**B.     Cost of Supersedeas Bond is Not Unduly Burdensome**

During oral argument, United Guaranty revealed that it has obtained an estimated cost of posting a supersedeas bond, and that such cost amounts to one percent (1%) of the judgment amount per year. Thus, assuming that the appeal may remain pending for between twelve and eighteen months, the total cost of securing the bond could amount to a range from $460,000 to $690,000. By no means does the Court conclude that such figures are nominal. But when weighed against SunTrust's potential risk of loss -- $46.1 million -- the risk of losing tens of millions of dollars far outweighs the cost of the supersedeas bond.

Two other facts place additional weight on such a risk comparison. First, as acknowledged between the parties, SunTrust would bear the cost of securing the supersedeas bond should the Court of Appeals reverse the Count I judgment. Nevertheless, SunTrust prefers the supersedeas bond to the proposed alternative. Secondly, United Guaranty has gone to great lengths to demonstrate its sound financial condition to the Court. If its condition is as sound as its Quarterly Report might suggest, then the cost of the bond does not appear to impose an undue burden on it. But, if its financial position is so tenuous that securing this bond will cause it to endure hardship, then such a result would only increase the concerns that the escrow account

might become jeopardized in a dispute during liquidation. Either way, the equities involved counsel the use of a supersedeas bond.

**C.     Use of an AIG-Affiliated Bond Company**

Should United Guaranty seek to secure a stay of execution pursuant to a supersedeas bond, SunTrust asks the Court to forbid the securing of such a bond through any AIG affiliate. Regardless of SunTrust's concerns, there is simply no authority to prohibit the use of a particular surety simply because the appellant shares some indirect corporate affiliation. Rather, as a general rule, securing a supresedeas bond *entitles* the appellant to a stay of execution. Fed. R. Civ. P. 62(d); Alexander, 190 F.R.D. 192 ("A judgment debtor wishing to appeal a judgment is *entitled* to a stay of the judgment if the debtor provides a supersedeas bond") (emphasis added).

However, Rule 62(d) also states that "[t]he stay takes effect when the court *approves the bond*." Approval necessarily implies the authority to disapprove of a bond where the Court determines that it does not adequately protect the appellee's interests. However, a court must require some evidence to establish that the bond is inadequate before it refuses to approve a supersedeas bond of what, otherwise, appears to be of adequate value.

SunTrust has submitted no evidence demonstrating that the AIG affiliate at issue, National Union Fire Ins. Co. of Pittsburgh ("National Union"), has failed to observe corporate formalities, demanded less than fair consideration to secure the bond, or would otherwise use its affiliation with AIG to avoid its obligation as a surety. The only evidence submitted by SunTrust indicates that National Union's bond rating has been downgraded over the past two years from A++ to A. Nevertheless, United Guaranty has submitted sufficient evidence establishing that the U.S. Treasury Department certifies National Union to issue such bonds in excess of $1.2 billion. There is no way to quantify the effect of the downgrade from A++ to A on the particular

supersedeas bond in this case, especially where the value of the bond at issue represents less than four percent (4%) of the total level of bond certification. Thus, the Court is satisfied, based on the evidence presently before the Court, that a supersedeas bond secured with National Union would adequately secure SunTrust's interests.[4]

In addition, the Court rejects SunTrust's argument that it has an unfettered contractual right to approve the surety for a supersedeas bond securing the judgment rendered as to Count I. Citing Section 1(e) of the compromise, SunTrust argues that it has the "contractual right to approve the identity of the insurer." (SunTrust's Supplemental Statement, ECF No. 589.) This statement is only *partially* accurate, as the provision at issue states:

> In addition to *any other bond required by the Court with respect to Count I*, [United Guaranty] will post a bond (with a surety satisfactory to [SunTrust] or, in the event of a dispute over the identity of the surety, satisfactory to the Court) specifically covering the $5.4 million and simple interest thereon at 6% from the date of judgment, pending the outcome fo the appeal of Count I.

(SunTrust's Br. in Opp'n Mot. To Stay at Tab 6, ECF No. 588 (emphasis added).) In other words, the bond at issue in the settlement agreement is not necessarily the only bond contemplated by the parties, as SunTrust has alleged in its Supplemental Statement. (ECF No. 589.) More importantly, the very contractual term cited contemplates that the Court has the authority to resolve a dispute and approve a surety "satisfactory to the Court."[5]

Regardless of SunTrust's concerns, the Court approves the proposed supersedeas bond to be issued by National Union.

---

[4] SunTrust has suggested that the Court may take judicial notice of parent company AIG's financial woes. Court *will not* take judicial notice of AIG's financial condition, one way or the other, because there is simply no evidence before the Court regarding AIG's finances. It would be inappropriate for the Court to express any opinion on the issue absent sufficient evidence.

[5] Having raised the contractual right claim on the "cusp" of the deadline (one hour and fifteen minutes), one might arguably conclude that the right has been waived, even if such an absolute right exists.

## IV. CONCLUSION

For the reasons discussed herein, the Defendant's Motion to Stay the Execution of the Count I Judgment Pending Appeal and Approve United Guaranty's Security Agreement (ECF No. 572) is DENIED. However, the Defendant's request for an extension of time to secure a supersedeas bond is GRANTED. The Defendant shall have until October 21, 2011 at 5:00 p.m. to secure a supersedeas bond, at which time the execution of the Count I judgment shall be STAYED pending appeal. Moreover, National Union shall be APPROVED to issue the supersedeas bond in this case.

An appropriate Order shall issue.

                                                  /s/
                                     Dennis W. Dohnal
                                     United States Magistrate Judge

Richmond, Virginia
Dated: October 14, 2011