IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia



SUNTRUST MORTGAGE, INC.,

    Plaintiff,

v.                                          Civil Action No. 3:09cv529

UNITED GUARANTY RESIDENTIAL
INSURANCE COMPANY OF
NORTH CAROLINA,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT UNITED GUARANTY'S REQUEST FOR ENTRY OF FINAL JUDGMENT ON COUNTERCLAIM COUNT IV (Docket No. 617) and SUNTRUST'S MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE SUMMARY JUDGMENT, ON COUNT IV OF UNITED GUARANTY'S COUNTERCLAIM (Docket Nos. 627 and 628) following a decision by the United States Court of Appeals for the Fourth Circuit. The motions have been briefed and argued.

However, while preparing the opinion, the Court recalled facts respecting the defendant's parent company that the Court thought proper to disclose to the parties. (Docket No. 655.) Therein, the Court expressed that, in its view, those facts did not present a basis for disqualification, but asked counsel to advise if they thought otherwise. Thereafter, the defendant, United Guaranty Residential Insurance Company of North Carolina

("UG"), expressed, in a letter, the view that "Your Honor [should] recuse himself from further proceedings in this case." (Docket No. 656.) At the same time, UG said, "[i]n the event Your Honor elects to remain as the presiding judge, UG does not intend to file a formal motion asking for recusal." (Id.) UG also filed a formal response reiterating those views. (Docket No. 660.) The plaintiff, SunTrust Mortgage, Inc. ("ST"), responded to UG's letter that "[t]here is no reason whatsoever that Your Honor should consider recusal in this case." (Docket No. 659.)[1] It is necessary to address the recusal question because the Court has a duty to do so even if UG had not requested recusal.

**BACKGROUND**

This action was decided in part on summary judgment and in part by the Court sitting without a jury; and, with one exception, the judgments entered in favor of ST were affirmed on

---

[1] ST therein also disputed UG's "recitation of the relevant procedural history and the reasons certain motions were made." (Id.) However, ST saw no need "to delve into these matters at this point," but did request an opportunity to brief them, if the Court decided "to seriously consider UG's recusal request." (Id.) Because UG's recitation of procedural history and the reason why motions were made in the case have no bearing on the recusal issue, additional briefing is not necessary.

appeal.[2] However, the Fourth Circuit's opinion vacated the judgment for ST on Count IV of UG's counterclaim.

After the Fourth Circuit issued its mandate, UG filed DEFENDANT UNITED GUARANTY'S REQUEST FOR ENTRY OF FINAL JUDGMENT ON COUNTERCLAIM COUNT IV (Docket No. 617), and ST filed SUNTRUST'S MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE SUMMARY JUDGMENT, ON COUNT IV OF UNITED GUARANTY'S COUNTERCLAIM (Docket Nos. 627 and 628), which is a reciprocal of UG's motion. The motions present two issues: (1) whether, considering the Fourth Circuit's opinion, its mandate, and the mandate rule, the Court is permitted to decide a question that ST says was not decided by the Fourth Circuit in the part of its opinion vacating judgment in favor of ST in Count IV of UG's counterclaim; and (2) if that is permitted, whether ST's so-called "first material breach defense" bars Count IV of UG's counterclaim on its merits.

---

[2] SunTrust Mortgage, Inc. v. United Guaranty Residential Insurance Company of North Carolina, 508 F. App'x 243 (4th Cir. 2013); SunTrust Mortgage, Inc. v. United Guaranty Residential Insurance Company of North Carolina, 806 F. Supp. 2d 872 (E.D. Va. Aug. 19, 2011); SunTrust Mortgage, Inc. v. AIG United Guaranty Corp., 800 F. Supp. 2d 722 (E.D. Va. June 30, 2011); SunTrust Mortgage, Inc. v. AIG United Guaranty Corp., 784 F. Supp. 2d 600 (Apr. 26, 2011). In the June 30, 2011 and April 26, 2011 opinions, the Court inadvertently used the old caption, listing AIG United Guaranty Corporation as the first-named defendant, even though, as explained in the Court's November 1, 2013 letter to counsel (Docket No. 655), when the Third Amended Complaint was filed on May 27, 2010, the only named defendant was United Guaranty Residential Insurance Company of North Carolina.

While preparing an opinion addressing those issues, the presiding judge, in reviewing the file, was caused to recall that, at one time, UG's ultimate parent, American International Group, Inc. ("AIG"), had been referred to in the caption of the case and, to some extent, in early versions of the complaint, and that the presiding judge had made claims in settlement funds in class actions in which AIG was the defendant. The letter to counsel (Docket No. 655) is recited verbatim below:

> In the course of considering the motions, I was caused to recall that, when this case was removed to this Court on August 24, 2009, the named defendants were "AIG United Guaranty Corporation a/k/a United Guaranty Corporation, United Guaranty Residential Insurance Company of North Carolina and John Does 1 through 10." A review of the docket sheet shows that: (1) when the Amended Complaint was filed on November 24, 2009, and when the Second Amended Complaint was filed on February 18, 2010, the defendants were listed as "AIG United Guaranty Corporation a/k/a United Guaranty Corporation, et al.;" and (2) when the Third Amended Complaint was filed on May 27, 2010, the only named defendant was United Guaranty Residential Insurance Company of North Carolina. Since then there has been no reference to "AIG" in the name of a defendant entity, and, according to Docket Entry No. 121, the AIG entity was terminated as a defendant in the case when the Third Amended Complaint was filed.
>
> For some years my IRA's and other investments have been managed pursuant to a program over which I have no control as to purchases or sales of stock, except to cancel a purchase made in a case over which I am then presiding. The account managers, in the 1990's and until 2004, purchased shares in American International Group, Inc. in the accounts that they managed. I did not own shares of American International Group, Inc. when this

4

action was removed to this Court. Nor have any such shares been owned since that time.

Having determined that "AIG" had been in the name of a defendant entity in this action, I also recalled that I am, or have been, a member of three class actions in which American International Group, Inc. was or is a defendant. There are pending and concluded settlements in those cases. The class actions in which I am a class member are:

1. <u>United States Securities and Exchange Commission v. American International Group, Inc.</u>, No. 06cv1000 (LAP) in the United States District Court for the Southern District of New York (the "SEC/AIG Fair Fund Litigation"). That case was settled; and, on August 12, 2008, I submitted a claim for 80 shares. On June 12, 2009 and September 20, 2010, I received payments of $113.70 and $19.40, respectively, from that settlement. No further payments are expected.

2. <u>In Re American International Group, Inc. Securities Litigation</u> Master File No. 04cv8141 (DAB) in the United States District Court for the Southern District of New York which also has been resolved by settlement. On March 26, 2013, I submitted a Proof of Claim for 267 shares. That claim was withdrawn on October 28, 2013 after I realized that, early in the case one of the defendants had "AIG" as part of its name. The settlement administrator has acknowledged receipt of the letter withdrawing the claim.

5

>   3. <u>In Re American International Group, Inc. Securities Litigation</u>, Master File No. 04cv8141 (DAB), Gen Re Settlement, in the United States District Court for the Southern District of New York. No claim has been, or will be, submitted to that settlement fund.
>
>   Although I think it appropriate to inform counsel of the foregoing circumstances, I do not understand that those circumstances present a reason for disqualification. If counsel are of a different view, they should advise their position by November 15, 2013.

Court's November 1, 2013 letter to counsel (Docket No. 655).

**DISCUSSION**

With the foregoing factual background in mind, the matter of recusal is determined with reference to applicable statutory and decisional law.

**A. The Applicable Statutes**

The standards governing recusal of federal judges are found in 28 U.S.C. §§ 455 and 144.[3] In 1974, Congress amended § 455 to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge . . . conform generally with the . . . canons of the Code of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974).

---

[3] Section 144 applies only to district judges and requires recusal "whenever a party" in a district court "files a timely and sufficient affidavit" demonstrating that the presiding judge has a "personal bias or prejudice" against or in favor of a party. Section 144 is not at issue here.

"[E]ven if the parties do not move for recusal, section 455 creates an independent duty requiring federal judges to evaluate in every case whether they should disqualify themselves." In re Initial Public Offering Securities Litigation, 174 F.2d 70, 74-75 (S.D.N.Y. 2001)(citations omitted). "Because § 455 places a duty directly upon the judge to evaluate his own actions, it does not require that an affidavit be filed." In re Beard, 811 F.2d 818, 827 (4th Cir. 1987).

Section 455(a), in its current form, provides that: "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Although the 1974 revisions to § 455 broadened the standard for recusal, Congress emphasized that those standards did not permit recusal unless the parties presented a reasonable basis for disqualification. H.R. Rep. No. 93-1453 (Oct. 9, 1974). In that regard, the report advised that "each judge must be alert to the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." Id. "Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." Id.

**B.   The Standard To Be Applied To § 455(a)**

Before it was amended in 1974, § 455(a) only required a judge to disqualify himself "in any case in which he ha[d] a substantial interest." Congress amended § 455(a) in order to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge . . . conform generally with the . . . canons of the Code of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974). Thus, § 455(a) now provides that: "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned."

In Liljeberg Health Services Acquisition Corp., 486 U.S. 847, 850 (1988), the Supreme Court examined a circumstance said to be a violation of § 455(a). In so doing, the Supreme Court held that:

> Scienter is not an element of a violation of § 455(a). The judges' lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons. To read § 455(a) to provide that the judge must know of the disqualifying facts, requires not simply ignoring the language of the provision-which makes no mention of knowledge-but further requires concluding that the language in subsection (4)-which expressly provides that a judge must *know* of his or her interest-is extraneous. A careful reading of the

8

> respective subsections make clear that Congress intended to require knowledge under subsection (b)(4) and not to require knowledge under subsection (a).

Liljeberg v. Health Services Acquisition Corp., 486 U.S. at 859-60. The Court went on to observe that:

> Moreover, advancement of the purpose of the provision-to promote public confidence in the integrity of the judicial process [internal citations omitted]-does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew.

Id.

"The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude." Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127 (2nd Cir. 2003) (citing Liljeberg, 486 U.S. at 860-61). The analysis assumes that a reasonable person not only knows all the relevant facts, but also understands them. See Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985).

In weighing recusal, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality simply might be trying to avoid what they apprehend may be an adverse ruling. See In re United States, 666 F.2d 690, 695 (1st Cir. 1981). But, the general standard set out in § 455(a) "is

9

not intended to be an invitation for judges freely to disqualify themselves whenever their impartiality is questioned on any ground." Hauptman v. Wilentz, 555 F. Supp. 28, 31 (D.N.J. 1982). As one expert on disqualification put it in hearings on the bill that became § 455(a):[4]

> I want to make loud and clear for purposes of this record, because I assume that this record may have importance for many, many years in the future, that this does not mean that judges are going to be casually getting off the bench or that somebody can march up to a judge and say, 'Well, I just don't feel comfortable with you. I wish you would go away. I question your impartiality.' This is not to happen at all.

To ascertain the appearance of impartiality, it is necessary to identify the facts that would be known to, and understood by, a reasonable person. First, a reasonable person would know that AIG is the ultimate parent company that owns, directly or indirectly, most of the stock in United Guaranty Corporation which is the parent corporation of UG. (Docket No. 2).

Second, a reasonable person would know and understand that, on or about October 28, 2013, while reviewing the file in

---

[4] Hearings on S. 1064 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 93rd Cong., 2d Sess. 14-15 (1974) (remarks of John P. Frank, Esq., Phoenix, Arizona, author of *Disqualification of Judges: In Support of the Bayh Bill*, 35 Law & Contemp. Prob. 43 (1970); *Disqualification of Judges*, 56 Yale L.J. 605 (1949); *Commentary on Disqualification of Judges*, 1972 Utah L. Rev. 377).

10

connection with the pending motions (Docket Nos. 617, 627 and 628), the presiding judge was caused to recall that, when this case was removed to this Court on August 24, 2009, the named defendants were "AIG United Guaranty Corporation a/k/a United Guaranty Corporation, United Guaranty Residential Insurance Company of North Carolina and John Does 1 through 10." In that regard, a reasonable person also would know and understand, that: (1) when the Amended Complaint was filed on November 24, 2009, and when the Second Amended Complaint was filed on February 18, 2010, the defendants were listed as "AIG United Guaranty Corporation a/k/a United Guaranty Corporation, et al.;" and (2) when the Third Amended Complaint was filed on May 27, 2010, the only named defendant was UG (United Guaranty Residential Insurance Company of North Carolina). Thus, a reasonable person would understand that UG, not its ultimate parent AIG, was the defendant in this case and that references to AIG in the first three versions of the complaint were misnomers.

Third, a reasonable person would understand that, even though AIG was not a defendant in the original complaint, ST used the short-form term "AIG" when referring collectively to the defendants. (Docket No. 1, Ex. 1.)[5] It would be known that,

---

[5] A reasonable person also would know and understand that, in the notice of removal filed by the defendants, the defendants

11

in the Amended Complaint filed on November 24, 2009 (Docket No. 42), the first-named defendant in the caption contained the preface "AIG" before "United Guaranty Corporation" (which is UG's immediate parent), but that the entity alleged therein to have engaged in wrongful conduct was UG, and that the same was true of the Second Amended Complaint filed on February 18, 2010 (Docket No. 88); and that the Third Amended Complaint, filed on May 27, 2010 (Docket No. 121), specified that AIG was UG's ultimate parent, but named only UG as the defendant and identified only UG as the entity that had wronged ST.

Fourth, it would be known, as UG says, that, at an early stage in the proceedings, ST contended that UG had refused to pay ST's claims as an effort to help alleviate the financial difficulties AIG was experiencing. (See Docket Nos. 414, 422, and 430.) It would be known as well that the Court rejected ST's efforts to introduce evidence about AIG's financial condition as evidence of UG's motivation for denying ST's insurance claims. (See April 18, 2011 Order, Docket No. 443.)

---

actually dropped "AIG" from the caption and, in the introductory paragraph, listed the defendants as "United Guaranty Corporation ("UGC") and United Guaranty Residential Insurance Company of North Carolina, Inc. ("UGRIC")." (Docket No. 1, at 1.) Despite this action by the defendants, the Clerk, following its standard practice, opened the case and entered the case name as it was written in the original complaint that was removed from state court.

Fifth, a reasonable person would know and understand that, for some years, the presiding judge's IRAs and other investments have been managed pursuant to a program over which he has no control as to purchases or sales of stock, except to cancel a purchase made in a case over which he is then presiding. In that regard, it would be known that the account managers, in the 1990s, purchased shares in AIG in the accounts that they managed, but that the presiding judge did not own shares of AIG when this action was removed to this Court, and that no shares have been owned since 2004.

Sixth, a reasonable person would know and understand that, on or about October 28, 2013, while considering the pending motions (Docket Nos. 617, 627 and 628), and after have recalled that AIG had appeared in the pleadings described above, the presiding judge also recalled that he was a member of three class actions in which AIG was or is the defendant and that there are pending and concluded settlements in those cases. A reasonable person would know and understand that the membership in the class actions resulted from the presiding judge's ownership of shares in AIG that predated the filing of this action.

Seventh, a reasonable person would know and understand the financial consequences of the ownership of AIG shares in the

managed accounts. Thus, it would be known that the total loss in two managed accounts attributable to AIG stock was $3,962.28.[6]

Eighth, a reasonable person would know and understand that the class actions in which the presiding judge was or is a class member and the relevant details are as follows:

1. <u>United States Securities and Exchange Commission v. American International Group, Inc.</u>, No. 06cv1000 (LAP) in the United States District Court for the Southern District of New York (the "SEC/AIG Fair Fund Litigation"). That case was settled; and, on August 12, 2008, approximately one year before this case was removed to this Court, the presiding judge submitted a claim for 80 shares. On June 12, 2009, approximately two months before this case was removed, the presiding judge received a payment of $113.70 from the settlement, and on September 20, 2010, approximately five months after the defendant with "AIG" as part of its name was terminated as a defendant in this case, the presiding judge received a payment of $19.40 from the settlement. No further payments are expected.

2. <u>In Re American International Group, Inc. Securities Litigation</u> Master File No. 04cv8141 (DAB) in the United States District Court for the Southern District of New York which also has been resolved by settlement. On March 26, 2013, the presiding judge submitted a Proof of Claim for 267 shares. That claim was withdrawn on October 28, 2013 after the presiding judge realized that, early in the case, one of the defendants had "AIG" as part of its name. The settlement administrator has acknowledged receipt of the letter withdrawing the claim.

---

[6] In one account, there was a loss of $4,891.60 and, in the other account, there were losses of $327.83, $139.04 and $59.12, and a gain of $1,545.31. Thus, losses in both accounts amounted to $5,507.59, and they were offset by a gain of $1,545.31.

14

3. <u>In Re American International Group, Inc. Securities Litigation</u>, Master File No. 04cv8141 (DAB), Gen Re Settlement, in the United States District Court for the Southern District of New York. No claim has been, or will be, submitted to that settlement fund.

The nubbin of UG's view on impartiality is that: "UG viewed its association with AIG as a matter of consequence and potential prejudice, and sought to be perceived [sic] standing on its own without this association. Therefore, UG's serious apprehensions regarding the Court's disclosures should be easily understood when viewed in this historical context." (Docket No. 656.) That statement must be addressed mindful of the fact that it is UG, not AIG, that is a party to the insurance contract at issue in this case. It is UG, not AIG, that is the named defendant that is alleged to have breached the insurance contract and wronged ST. UG has pointed to nothing in the record that would suggest partiality against it because AIG is UG's ultimate parent, or for any reason. In fact, when ST tried to offer evidence linking UG and AIG, the Court granted UG's motion *in limine* and refused to allow evidence to that effect. Thus, the question devolves to whether, knowledgeable of all facts respecting the submission of claims to settlement funds in class actions in which AIG was the defendant, the public might reasonably believe that the presiding judge knew of facts creating the appearance of impropriety.

15

UG has not explained how that connection could be made. Nor has the Court independently discerned how that could be so. Whatever was done to precipitate the class actions was done by AIG, not UG. Nor has UG pointed to any evidence of its involvement in the conduct that led to the class actions against AIG. And, the Court is aware of none. There is nothing to show that UG is in any way affected by the settlements made by AIG.

The payments that were received from the settlement funds were made pursuant to a claim that was submitted long before this action was filed. And, although there was a claim submitted in one class action while this action was pending, it was not paid and, in fact, the claim was withdrawn as soon as the presiding judge recalled that AIG's name had appeared in the caption of the case and that AIG was UG's ultimate parent.

Under all the foregoing facts and circumstances, the Court cannot conclude that the public might reasonably believe that the judge knew of facts creating an appearance of impartiality. Thus, recusal is not appropriate under section 455(a).

C.  **The Standard To Be Applied To § 455(b)(4)**

The statute requires disqualification in a matter if the judge "knows that he, individually or as a fiduciary [7] . . . has a financial interest in the subject matter in controversy or in a

---

[7] The statute also refers to the judge's spouse or minor child residing in his household, but those references are omitted here since they do not apply.

party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). UG does not suggest that there is ground for disqualification under § 455(b)(4). And, the Court perceives no basis upon which disqualification would be called for because he has no financial interest in this case, no financial interest in a party to this case, and no other interest that could be affected by the outcome of this case.

## CONCLUSION

For the foregoing reasons, the Court concludes that there is no basis for disqualification under 28 U.S.C. § 455(a). Hence, the Court will proceed to decide the pending motions.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 13, 2014