**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SUNTRUST MORTGAGE, INC.,

    Plaintiff,

v.                                      Civil Action No. 3:09cv529

UNITED GUARANTY RESIDENTIAL
CORPORATION OF NORTH CAROLINA,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT UNITED GUARANTY'S REQUEST FOR ENTRY OF FINAL JUDGMENT ON COUNTERCLAIM COUNT IV (Docket No. 617) and SUNTRUST'S MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE SUMMARY JUDGMENT, ON COUNT IV OF UNITED GUARANTY'S COUNTERCLAIM (Docket Nos. 627 and 628) following an appeal to the United States Court of Appeals for the Fourth Circuit. For the reasons set forth below, DEFENDANT UNITED GUARANTY'S REQUEST FOR ENTRY OF FINAL JUDGMENT ON COUNTERCLAIM COUNT IV (Docket No. 617) will be denied, and SUNTRUST'S MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE SUMMARY JUDGMENT, ON COUNT IV OF UNITED GUARANTY'S COUNTERCLAIM (Docket Nos. 627 and 628) will be granted.

## BACKGROUND

In its Third Amended Complaint, Suntrust Mortgage, Inc. ("ST") charged United Guaranty Residential Insurance Company of North Carolina ("UG") with breaching the insurance contract that it had issued to ST insuring against payment defaults by borrowers on some of ST's mortgage loans. UG filed a Counterclaim, Count IV of which sought a declaration that, under the insurance contract, ST was obligated to pay premiums beyond those that ST had already paid.[1] One of ST's affirmative defenses to Count IV was that, because UG had first breached the contract, Virginia's "first material breach doctrine" relieved ST of the obligation to pay those additional premiums.

The pending reciprocal motions present two issues. First, it is necessary to determine what is required, or permitted, by the Fourth Circuit's mandate. Second, if the Court finds that it is permitted to do so under the mandate, it must resolve the substance of ST's first material breach defense.

## I. THE MANDATE ISSUE

Resolution of the mandate issue necessitates an understanding of (i) the history of this case in this Court as

---

[1] In Count IV of its Counterclaim, UG sought a "declaratory judgment stating that SunTrust is obligated under [the insurance policy] to continue making annual renewal premium payments on all loans in each of the Loan Pools, notwithstanding that the Maximum Cumulative Liability amount has been reached with respect to a particular Loan Pool." (Counterclaim at 32, ¶ 4.a.)

reflected in previous opinions; (ii) the decision of the Court of Appeals; and (iii) the mandate of the Court of Appeals. Each will be addressed in turn.

## A.   District Court Proceedings

On April 26, 2011, the Court entered summary judgment in favor of UG on Count IV of its Counterclaim. (Mem. Op. and Order, Docket Nos. 451 and 452, 784 F. Supp. 2d 600 (E.D. Va. 2011), hereinafter "April 2011 Opinion".)[2]   In the April 2011 Opinion, the Court held that: "[t]he insurance policy clearly and unambiguously requires SunTrust . . . to pay annual premiums to United Guaranty . . . for the life of the insured loans, notwithstanding that UG's Maximum Cumulative Liability . . . for loss on those loans has been reached." (April 2011 Opinion at 2).

However, ST asserted Virginia's so-called "first material breach doctrine" as an affirmative defense to Count IV of UG's Counterclaim, and the Court, by inadvertence, did not address ST's first material breach defense in the April 2011 Opinion. During a conference call with the parties on May 3, 2011, the Court realized that oversight and, therefore, on May 4, 2011, the Court vacated the order that had granted summary judgment on

---

[2]   The procedural history predating the Court's entry of summary judgment in favor of UG on Count IV of its Counterclaim is set forth in the April 2011 Opinion.

3

Count IV of UG's Counterclaim and set the matter for a bench trial and briefing. (Order, Docket No. 459, May 4, 2011.)

Nine days later, on May 13, 2011, the Court addressed ST's motion for summary judgment on Count I of its Third Amended Complaint and held that UG's denial of ST's claims on IOF Combo 100 Loans[3] was a breach of the insurance policy. On that basis, the Court granted summary judgment in favor of ST on Count I. (Order, Docket No. 476.) On June 30, 2011, the Court issued a memorandum opinion setting forth the reasons for granting summary judgment in favor of ST on Count I. (Mem. Op., Docket No. 518, 800 F. Supp. 2d 722 (E.D. Va. 2011), hereinafter "June 2011 Opinion".)

Thereafter, on August 19, 2011, following a bench trial, the Court held that ST had "met its burden on the affirmative defense (alternatively, 'first material breach defense')," and entered judgment in favor of ST on Count IV of UG's Counterclaim. (Mem. Op., Docket No. 546, 806 F. Supp. 2d 872, 875 (E.D. Va. 2011), hereinafter "August 2011 Opinion".) The August 2011 Opinion explained the first material breach defense as follows:

> ST's first material breach defense was that UG materially breached the insurance policy

---

[3] IOF Combo 100 Loans are second-lien loans that follow interest-only first-lien loans, with a combined loan-to-value ratio of up to 100%. (August 2011 Opinion, 806 F. Supp. 2d at 876, n.7; Trial Tr. 53:25-61:17.)

> by "(a) continuing to collect and failing to refund premiums on [performing] IOF Combo 100 Loans [the type of loans at issue in Count I of the Third Amended Complaint] when United Guaranty knew it would not pay claims on those loans; and (b) relying on a legally unsupportable basis for denying SunTrust's claims [on defaulted IOF Combo 100 Loans]."

806 F. Supp. 2d at 875-76. As explained, in the August 2011 Opinion, "Count I of [ST's] Third Amended Complaint thus overlaps the second of the two alleged breaches in ST's first material breach defense: that UG breached the insurance policy by denying claims on IOF Combo 100 Loans." Id. at 876. The August 2011 Opinion then explained that the substantive questions were limited to "whether the improper collection of premiums alleged in ST's first material breach defense was in fact a breach of the insurance policy, and, if so, whether that breach, and the breach already found by the Court, were material in view of the policy." Id. (emphasis added). The underscored text refers to the breach found in the June 2011 Opinion.

The August 2011 Opinion concluded that "UG breached the insurance policy both in denying claims on ST's IOF Combo 100 Loans and in continuing to demand and collect premiums on performing IOF Combo 100 Loans for which it knew claims would be denied." Id. at 888 (emphasis added). In reaching that conclusion, the Court analyzed whether UG's continued collection of premiums "breached its duty to deal in good faith with its

5

insured on a matter of the insurance contract," id. at 8`90, and concluded that "in billing for, and accepting premiums on loans which it knew it would not cover, UG breached the duty of good faith and fair dealing it owed to ST." Id. at 891.

The Court then found "that UG breached the insurance policy, first, in denying claims on IOF Combo 100 Loans that are the subject of Count I of the TAC and, second, in continuing to demand and collect premiums on performing IOF Combo 100 Loans on the Partlow list, the claims for which it had decided it would deny." Id. at 900 (emphasis added). Thus, it is clear that, although ST argued that "both breaches were material in view of the insurance policy," id., the Court only considered the "combined – or 'cumulative' – effect of the breaches" in assessing the materiality issue. Id. at 902, n.64.

The August 2011 Opinion then concluded: "ST has carried its burden to prove that UG's failures to perform its obligations, respecting both the payment of claims and the collection of premiums, defeated an essential purpose of the contract of insurance." Id. at 904 (emphasis added). Moreover, "[h]aving determined that UG breached the insurance policy in two distinct ways, and having now further determined that those breaches were material under Virginia law in view of the language and purpose of the insurance policy, it follows that UG may not sue for further performance on the contract under the first material

6

breach doctrine." Id. (emphasis added).   Thereupon, judgment was entered in favor of ST on Count IV of UG's Counterclaim.

**B.   Proceedings at the United States Court of Appeals for the Fourth Circuit**

The Court of Appeals affirmed the decision that UG had breached the insurance contract by not timely paying ST's claims, and it affirmed the grant of summary judgment to ST on Count I of its Third Amended Complaint.   However, the Court of Appeals vacated the decision on ST's first material breach defense to Count IV of UG's Counterclaim.

To resolve the mandate issue, it is useful to understand the issues presented on appeal. The statement of issues on appeal as set forth in UG's brief was as follows:

1.   Whether the district court erred in granting summary judgment to SunTrust on its claim for breach of contract.

2.   Whether the district court erred in granting judgment to SunTrust on United Guaranty's counterclaim for declaratory judgment.

3.   Whether the district court erred in refusing to reduce SunTrust's damage award by the amount of premiums it was excused from paying.

4.   Whether the district court erred in declining to impose more severe sanctions, including dismissal of SunTrust's complaint, based on the misconduct of SunTrust and its senior executives and lawyers, and in excluding evidence of that misconduct.

The statement of issues as set forth in ST's brief was as follows:

1.   Whether "SunTrust Mortgage guidelines" is unambiguous.

2.   Whether any ambiguity in "SunTrust Mortgage guidelines" must be resolved in SunTrust's favor because parol evidence is not admissible to resolve a patent ambiguity.

3.   Whether any ambiguity in the insurance policy must be resolved against United Guaranty ("UG"), the insurer, under the rule of liberal construction.

4.   Whether the district court correctly rejected UG's partial integration doctrine theory.

5.   Whether UG waived any right to assert a purported exclusion based on failing to underwrite loans using Desktop Underwriter.

6.   Whether UG waived its objections regarding the court's procedure on the first material breach defense by failing to move to re-open evidence or for a new trial or for JMOL.

7.   Whether UG is barred from enforcing the policy going forward because of its first material breach of the policy.

8.   Whether policy renewals are void for lack of consideration when an insurer no longer has any risk.

9.   Whether the district court correctly calculated damages.

10.  Whether the discovery-related sanction fashioned by the district court was within its broad discretion.

On appeal of the August 2011 Opinion and Order respecting the grant of summary judgment to ST on Count IV of UG's Counterclaim, UG argued that the district court "based its ruling on two purported breaches, both of which were necessary

to its conclusion that United Guaranty committed a first material breach." (UG's Opening Brief, at 46.) UG further contended that "the first material breach ruling must be vacated because it depended on the combined effect of the alleged breach of contract and the alleged breach of the duty of good faith and fair dealing." (Id.)(emphasis added). UG also argued: "But even if this Court were to affirm the breach of contract finding,[4] the first material breach ruling cannot stand, because (1) the district court erred in concluding that United Guaranty breached the duty of good faith and fair dealing, (2) the contract is severable, and (3) neither of the alleged breaches was material." (Id. at 46-47.)   ST argued in its response brief that UG had breached the policy in two ways, that both breaches were material ("[W]ith both breaches, UG failed to provide coverage – the only purpose of the contract"), and that it did not waive its "first material breach defense."[5] (ST's Brief, at 45-55.)

---

[4]  The Court of Appeals did, in fact, affirm the breach of contract finding.

[5]  ST's brief on this point is a bit confusing because it argues in the heading that it "did not waive its first material breach defense," but argues more precisely in the text that it "did not waive its right to assert UG's breach of the implied covenant of good faith and fair dealing." (ST's Brief, at 52.) These are two different issues that overlap in part. The Court of Appeals ruled only that ST waived its right to assert UG's breach of the implied covenant of good faith and fair dealing, but it did not address the district court's conclusion that ST had not waived its right to assert its first material breach defense.

In announcing its decision, the Court of Appeals explained that it would "affirm the district court's breach of contract and sanctions and evidentiary rulings and vacate as to the district court's first material breach determination."[6] (Docket No. 609, Slip Op. at 3, 508 F. App'x 243, 245 (4th Cir. Feb. 1, 2013).) The Court of Appeals first held that "summary judgment for SunTrust Mortgage on its breach of contract claim was proper." 508 F. App'x at 251. Next, it held that "SunTrust Mortgage [] waived the good faith and fair dealing issue, and the district court erred in considering it." Id. at 253. It also noted that "even Virginia state law would not have put United Guaranty on notice," and that "even the undisputedly applicable substantive law would not have suggested to United Guaranty that an implied covenant of good faith and fair dealing claim inhered in SunTrust's first material breach defense." Id. at 253-54. In summarizing its decision, the Court of Appeals "vacate[d] the district court's judgment in favor of SunTrust Mortgage as to first material breach, which relied on the good faith and fair dealing determination." Id. at 254. The Court of Appeals did not address whether UG's breach of contract (which the Court affirmed), standing alone, constituted a first

---

[6] The references to the "sanctions and evidentiary rulings" are immaterial to the issues presented by the pending motions.

material breach of the insurance policy.[7]

The parties disagree about the effect of the decision of the Court of Appeals. UG contends that, because the Court of Appeals "vacated this Court's first material breach ruling, which was the basis for this Court's withdrawal of its Order granting summary judgment in favor of Defendant on Counterclaim Count IV and its entry of judgment in favor of Plaintiff SunTrust on Counterclaim Count IV," the Court should "reinstate its Order granting Defendant's Renewed Motion for Summary Judgment on Counterclaim Count IV [Docket No. 452], and enter Final Judgment for Defendant on Counterclaim Count IV." (Docket No. 617 at 2.) ST contends that, "[b]ased on prior findings of fact and conclusions of law made by the Court that remain effective after the decision of the United States Court of Appeals . . ., SunTrust is entitled to judgment as a matter of law on Count IV." (Docket Nos. 629 & 630, at 1.)

## C.    The Mandate Rule

With the foregoing procedural background in mind, it is now time to turn to the mandate rule and its application here.

"Few legal concepts are as firmly established as the

---

[7] Nor did the Court of Appeals address UG's arguments that "the contract was severable" or that "neither of the alleged breaches was material." Nor did it address ST's arguments in response that both breaches were material and that the contract was not severable.

doctrine that the mandate of a higher court is controlling as to matters within its compass." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). In considering the parties' motions, the Court "may not deviate from [the] mandate but is required to give full effect to its execution." Invention Submission Corp. v. Dudas, 413 F.3d 411, 414 (4th Cir. 2005). "This 'mandate rule' is a more powerful version of the law of the case doctrine and is based on 'the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system.'" Invention Submission Corp., 413 F.3d at 414 (citations omitted).

When appellate courts have "executed their power in a cause before them, and their final decree or judgment requires some further act to be done, [they] cannot issue an execution, but shall send a special mandate to the court below to award it." Sibbald v. United States, 37 U.S. 488, 492 (1838). The Supreme Court in Sibbald went on to declare that:

> Whatever was before the [appellate court], and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

12

Id. If the lower court "mistakes or misconstrues the decree of [the appellate] court, and does not give full effect to the mandate, its action may be controlled, either upon a new appeal . . . or by a writ of mandamus to execute the mandate of [the appellate] court." In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895). However, the lower court "may consider and decide any matters left open by the mandate of [the appellate] court; and its decision on such matters can be reviewed by a new appeal only." Id. at 256. And, of course, "the opinion delivered by [the Court of Appeals], at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate; and, either upon an application for a writ of mandamus, or upon a new appeal, it is for [that] court to construe its own mandate, and to act accordingly." Id.

The Court of Appeals recently pointed out that "[t]he mandate rule requires that the district court 'implement both the letter and spirit of the . . . mandate, taking into account [the Court of Appeals'] opinion and the circumstances it embraces.'" Georgia-Pacific Consumer Products, LP v. Von Drehle Corp., 710 F.3d 527, 536 n.13 (4th Cir. 2013)(citations omitted). "[T]he mandate rule also 'forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.'" Id. (citation omitted)(emphasis in

13

original).

It also is settled that "the mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" S. Atlantic Ltd. P'ship of Tenn. v. Riese, 356 F.3d 576, 584 (4th Cir. 2004)(citation omitted). But, "[a]lthough the doctrine applies both to questions actually decided as well as to those decided by necessary implication, it does not reach questions which might have been decided but were not." Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)(citation omitted).[8]

These principles control the resolution of the mandate issue in this case.

## D.   Application Of The Mandate Rule

The Court of Appeals' decision "affirm[ed] in part and vacat[ed] in part the orders on appeal." 508 F. App'x at 256. The decision contains no explicit remand to this Court, but an explicit remand was not necessary because the effect of issuing the mandate was to return the case to this Court. Gerald M. Moore & Son, Inc. v. Drewry & Assocs., Inc., 945 F. Supp. 117, 121-122 (E.D. Va. 1996)("[T]he mandate of the court of appeals, once issued, returns [the case] to the district court.").

---

[8] "The law of the case doctrine applies to an appellate court's ruling both if the case is on appeal of a final judgment or if the appeal is interlocutory." McCullen v. Coakley, 759 F. Supp. 2d 133, 137 (D. Mass. 2010)(citations omitted).

"Simply put, jurisdiction follows the mandate." United States v. Rivera, 844 F.2d 916, 921 (2d Cir. 1988)(cited in United States v. Owen, 553 F.3d 161, 164 (2d Cir. 2009)).

Here, the judgment reviewed on appeal was reviewed as a final judgment on less than all claims, but it did not dispose of the entire case. That is because on October 3, 2011, this Court entered a FINAL JUDGMENT ORDER PURSUANT TO RULE 54(b), which stated that "[t]he relationship among the decided claims and the unresolved ones suggests that the litigation will be materially advanced by immediate appeal," and that "[e]ntry of a final judgment respecting fewer than all claims brought in this action is appropriate under Rule 54(b)." (Docket No. 581, at 1-2.) Thus, it was clear on the record that, following the decision on appeal, the matter would return to the district court for further proceedings.

The question for the Court to determine now is "what was intended by [the] mandate," In re Sanford Fork & Tool Co., 160 U.S. at 256, what was actually decided, what was decided by necessary implication, and what might have been decided but was not. Sejman, 845 F.2d at 69.

In this case, the Court of Appeals decided several issues. The Court of Appeals ruled that the Court's granting of summary judgment in favor of ST on its breach of contract claim was

proper and affirmed that decision.[9]  It also held that ST had waived the issue of UG's alleged breach of the implied covenant of good faith and fair dealing because of the "late date" when it was raised, and, as a result, the Court of Appeals vacated the judgment in favor of ST on Count IV of UG's Counterclaim. The effect of the vacatur was to "return[] the parties to their original positions, before the now-vacated order was issued." Bryan v. BellSouth Communications, Inc., 492 F.3d 231, 241 (4th Cir. 2007). "[W]hen an order is vacated it is as if the order never existed." Id.

To assess the effect of the vacatur here, it is well to remember the panoply of rulings available to an appellate court. Specifically, a "court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review . . . ." 28 U.S.C. § 2106. Here, the Court of Appeals did not reverse this Court's determination that UG had materially breached the contract but instead "vacate[d] the district court's judgment in favor of SunTrust Mortgage as to first material breach, which relied on the good faith and fair dealing determination." 508 F. App'x at 254 (emphasis added).  As explained in Kelso v. U.S.

---

[9] The Court of Appeals also ruled that this Court did not abuse its discretion in declining harsher sanctions for ST's misconduct related to the fraudulent email alterations, affirming that decision.

<u>Dept. of State</u>, 13 F. Supp. 2d 12, 18 (D.D.C. 1998)(citation omitted), "the distinction between 'reverse,' on the one hand, and 'modify' or 'vacate,' on the other, represents far more than a quibble about semantics."  As the court in <u>Kelso</u> points out, "Black's Law Dictionary further underscores the distinction between vacatur and reversal," noting that "[a]lthough the word reverse shares vacate's meanings of 'to annul' and 'to set aside,' [], it has an additional, more extensive definition: 'To reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it <u>for error</u>.'" <u>Id.</u> (citations omitted)(emphasis in original).

The Court of Appeals addressed the four issues raised by UG.[10] Issue 1, "[w]hether the district court erred in granting summary judgment to SunTrust on its claim for breach of contract," was resolved by the Court of Appeals' decision that the district court had not erred and that its granting summary judgment in favor of ST on its breach of contract claim was proper. Issue 2, "[w]hether the district court erred in granting judgment to SunTrust on United Guaranty's counterclaim for declaratory judgment," was resolved by the Court of Appeals' decision that the district court had erred in considering the good faith and fair dealing issue when deciding ST's first material breach defense. Issue 3, "[w]hether the district court

---

[10] Those issues are set out fully <u>supra</u>, at 7.

erred in refusing to reduce SunTrust's damage award by the amount of premiums it was excused from paying," was declared moot by the Court of Appeals because of its ruling on Issue 2. Issue 4, "[w]hether the district court erred in declining to impose more severe sanctions," was resolved by the Court of Appeals' decision that: (1) the district court did not abuse its discretion with regard to some of its decisions; and that (2) some of the district court's alleged errors were moot because the Court of Appeals affirmed the district court's grant of summary judgment in favor of ST.

The Court of Appeals also addressed most, but not all, of the issues raised by ST in its response brief.[11] Issues 1, 2, 3, 4, and 5 necessarily were resolved when the Court of Appeals affirmed the grant of summary judgment in favor of ST on the breach of contract claim (Count I of ST's Third Amended Complaint). Issue 6 was not specifically addressed, but it was necessarily subsumed in the Court of Appeals' decision that ST had waived the issue of UG's alleged breach of the implied covenant of good faith and fair dealing. Issue 10, regarding the sanction fashioned by the district court, was resolved. But, three issues raised by ST were not resolved. Issue 7, "[w]hether UG is barred from enforcing the policy going forward because of

---

[11] Those issues are set forth fully _supra_, at 8.

its first material breach of the policy," remains unresolved and is the precise issue now facing this Court. Issue 8, "[w]hether policy renewals are void for lack of consideration when an insurer no longer has any risk," was not addressed by the Court of Appeals.[12] And, Issue 9, "[w]hether the district court correctly calculated damages," was determined by the Court of Appeals to be moot.

There were other more specific arguments that the Court of Appeals did not address, including UG's arguments that "neither of the alleged breaches was material" and that "the contract was severable." ST's argument that UG breached the policy in two ways was addressed only in part by the Court of Appeals when it ruled in favor of ST on its breach of contract claim, but the Court did not address ST's arguments (which mirrored UG's arguments) that both breaches were material and that the contract was not severable.

Contrary to UG's arguments, the Court cannot agree that the Court of Appeals "necessarily rejected the proposition that the alleged breach of contract alone could support the first material breach ruling." Once the Court of Appeals ruled that

---

[12] This argument was an alternative to ST's first material breach argument. ST argued that "UG also is not entitled to continued renewal premiums after the MCL is reached because there is a failure of consideration." (ST's Brief, at 60 (emphasis added).) ST raised that issue in the district court but it was not necessary to address it because of the grant of summary judgment on the first material breach defense.

ST had waived the issue of UG's alleged breach of the implied covenant of good faith and fair dealing, the Court of Appeals merely vacated this Court's judgment in favor of ST as to the first material breach, because this Court's judgment had "relied on the good faith and fair dealing determination." But, the record is clear that ST asserted two predicates for the first material breach defense: (1) the breach involved in Count I of the Third Amended Complaint; and (2) the breach of the duty of good faith and fair dealing. The Court of Appeals, having concluded that ST had waived the right to assert one ground of the alleged breach on which the district court relied, and having found in favor of ST on the other breach, simply vacated this Court's judgment on the first material breach issue, leaving for resolution on remand the issue whether the breach of contract by UG found by the district court, and sustained on appeal, standing alone was a first material breach that would provide a defense to Count IV of UG's Counterclaim. Indeed, it is not surprising that the Court of Appeals did not address the separate ground (the breach of contract) because the district court opinion under review had relied on the combined effect of that breach and the good faith breach.

Nor does UG's argument respecting the appellate decision with regard to damages persuade that the Court of Appeals has concluded that the first material breach defense is completely

invalid. Once the Court of Appeals vacated this Court's first material breach determination, it had no option but to reject UG's argument with regard to damages as moot.

For the foregoing reasons, the mandate of the Court of Appeals permits this Court, on remand, to decide whether UG's breach of contract (the denial of claims without legal justification), which determination was affirmed by the Court of Appeals, constitutes a first material breach when considered alone.[13]

## II. THE SUBSTANTIVE ISSUE: MATERIALITY OF UG'S BREACH

It is settled under Virginia law that, "[g]enerally, a party who commits the first breach of a contract is not entitled to enforce the contract." Horton v. Horton, 487 S.E.2d 200, 203 (Va. 1997)(citations omitted). "An exception to this rule arises when the breach did not go to the 'root of the contract' but only to a minor part of the consideration." Id. (citations omitted). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Id. at 204 (citations omitted). A material breach includes a

---

[13] As noted previously, the Court stated in its August 2011 Opinion that "UG's refusal to pay such a significant portion of its total coverage obligation was certainly a material breach of the policy." Id. at 903. But the Court also noted that "it is appropriate to consider the combined – or 'cumulative' – effect of the breaches," and that is what the Court did.

"failure of consideration of such a degree that the remaining consideration may be deemed to be no substantial consideration." Neely v. White, 14 S.E.2d 337, 341 (Va. 1941). "If the initial breach is material, the other party to the contract is excused from performing his contractual obligations." Horton at 204 (citations omitted).

The dispositive question here is whether UG's breach of contract was "so central to the parties' agreement that it defeated an essential purpose of the [insurance policy]," i.e., whether the breach substantially denied ST the benefit it reasonably expected under the insurance policy. As the Court previously has determined, and as the Court of Appeals has affirmed, UG breached the insurance policy by denying claims on ST's IOF Combo 100 Loans without legal justification for doing so.

The materiality analysis, as to that breach, begins with the undisputed record evidence that the IOF Combo loans being insured were known to carry more risk for the mortgagor than standard mortgage loans. Trial Tr. 55-58. That is because the first lien is paid first so that the second lien absorbs the losses. Id. Also, as ST's Mr. Partlow explained, that inherent risk becomes worse in the event of a declining real estate market. Id. at 57. The purpose of having insurance was to guard against the reasonably foreseeable consequences of a declining

real estate market. As Mr. Partlow put it: ". . . we're paying for the bad times. Like insurance, you want that insurance for the bad times." Id. at 60. And, when this contract was arrived at, it was known that there were "times in the history of the United States real estate market when the market has tumbled." Id. The parties knew that the market had "tumbled" as recently as the 1980's. Id. at 60-61. Knowing that bad times could come again, ST was "paying insurance in the good times, borrowing on our [ST's] earnings in the good times, to protect ourselves in the bad times." Id. There was no evidence to the contrary.

In sum, it is undisputed that the very purpose of this contract was to secure unto ST in bad times payments from UG to replace those that ordinarily in good times would be paid by the borrower. Having those funds in declining real estate markets was for ST the very core of the contract at issue.

And, of course, the borrowers paid their mortgage payments on a monthly basis. So timely payments by the insurer were essential to replace the payment stream no longer being made by defaulting borrowers. In the August 2011 Opinion, the Court summarized the importance of the contractual right to prompt payment of claims, holding that:

> Pursuant to Section 6.3 of the Master Policy, ST paid premiums in exchange for UG's promise to pay claims within sixty days of their being made. ST Ex. 3 § 6.3; see also Trial Tr. 410:1-16; 421:12-22. The

> timeliness of UG's payment of claims was
> critical not just because the policy
> indicated it was, but also because ST had
> purchased insurance from UG to protect
> itself in precisely the type of situation in
> which it found itself in and around 2007,
> 2008, and 2009, when its claims were being
> denied. During those years, ST, like most
> banks, was under severe stress from the
> national collapse of the stock and
> residential real estate markets. Trial Tr.
> 95:24-96:23. It is hollow for UG to claim
> that substantially delayed receipt of the
> insurance coverage is tantamount to
> receiving the insurance proceeds within the
> time specified by the policy and that ST
> needed, and had contemplated needing, in
> those years.

806 F. Supp. 2d at 902. This has not changed. "Timely payment
of its claims was an integral feature of both the policy and
ST's decision to purchase insurance from UG." Id. at 903.
Wholly apart from the alleged breach of the implied covenant of
good faith and fair dealing, breach of UG's obligation to timely
pay valid claims was central to the insurance contract.

In addition to the timeliness issue, the record showed, and
the Court previously has held, that "the magnitude of UG's
denial of claims forced substantial hardship on ST." Id.

> In June 2009, shortly before ST filed suit,
> the claims outstanding for IOF Combo 100
> loans was approximately $63 million. ST Ex.
> 74; Trial Tr. 410:1-16. This outstanding
> balance equated to more than 25% of UG's
> total coverage obligation at that time for
> the six pools containing IOF Combo 100
> Loans. UG's refusal to pay such a
> significant portion of its total coverage
> obligation was certainly a material breach

24

of the policy.

Id. at 902-03; see also Trial Tr. 196:4-197:24. Citing
Farnsworth on Contracts § 8.16, the Court also noted that it was
appropriate to measure the effect of UG's denial of claims in
June 2009 and not some later time, as UG argued. UG continues to
argue that it will ultimately provide more than 97% of the
consideration - $280 million out of $287 million - that ST could
have expected to receive under the contract, an argument that
the Court addressed in the August 2011 Opinion.[14]   As noted
there, in order to accept UG's position, the Court would be
required to ignore both the policy's sixty-day limit for the
payment of claims and ST's reasons for procuring insurance from
UG on the loans at issue. See 806 F. Supp. 2d at 903 n.65.
Moreover, whether a first breach is material is judged at the
time of the breach, not years later, as UG's argument posits.
Farnsworth on Contracts § 8.16 ("The time for determining
materiality is the time of the breach . . . .").

The essential purpose of the insurance policy here was to
protect against the higher risk presented by this type of
second-lien loan, a risk that increased in a declining real
estate market. ST's purpose was to protect itself in the bad
times by ensuring that it would be paid promptly after making a

---

[14] The Court also explained why UG's reliance on Neely v. White
was misplaced, and those explanations are incorporated herein.
806 F. Supp. 2d at 903-04 & n.65.

claim to maintain its cash flow. On this record, UG's breach substantially denied ST the benefit it reasonably expected under the insurance policy and, thus, constitutes a material breach of the insurance policy.

For the foregoing reasons, application of Virginia law necessitates the conclusion that the breach by UG in not paying the claims when they should have been paid went to the root of the insurance contract and defeated its essential purpose. Thus, the first breach by UG was a material one.[15]

Both UG and ST cite the Restatement (Second) of Contracts § 241 in making their arguments. As observed in the August 2011 Opinion and by the Court of Appeals, the Supreme Court of Virginia has not formally adopted Section 241 of the Restatement with its multi-factor test. See 508 F. App'x at 253 (citing J.A. 1514 (806 F. Supp. 2d at 901) n.63). The factors are:

> (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

---

[15] UG argues that application of the first material breach rule here would impose a forfeiture on UG. That argument was addressed in the August 2011 Opinion, 806 F. Supp. 2d at 903-04. Those reasons are incorporated herein, and the Court reconfirms its determination that relieving ST of its obligation to pay additional premiums will not result in a forfeiture to UG.

Previously, the Court also determined that the insurance policy was not severable. The Court of Appeals did not address that determination. Accordingly, for the reasons set forth previously in the August 2011 Opinion, 806 F. Supp. 2d at 904-911, which are incorporated herein, the Court reconfirms its determination that the policy is not severable.

    (2)   the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

    (3)   the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

    (4)   the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

    (5)   the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

The Fourth Circuit's decision certainly forecloses consideration of the fifth factor even if § 241 is available to help analyze the first material breach issue. Although the appellate decision did not prohibit examination of § 241 in making that analysis, this opinion does not accept the invitation to rely on it.

Nonetheless, a review of decisions of the Supreme Court of Virginia demonstrates that, although there has been no formal adoption of Section 241, some of the decisions do address one or more of the five factors without identifying them as such, in particular factor (1) – the extent of the deprivation of the reasonably expected benefit. For example, in two cases in which the complainants sought specific performance, one could conclude

27

that the court applied principles quite similar to the factors that now appear in the Restatement[16] in the analyses and denied the bill for specific performance. In Cox v. Cox, 26 Gratt. 305 (Va. 1875), Virginia's highest court (then the Court of Appeals) applied precepts that strongly resemble Restatement factors (1) (the extent of the deprivation of the reasonably expected benefit), (2) (the extent to which the injured party can be adequately compensated for the deprivation), and (3) (the forfeiture suffered by the breaching party) in its discussion of the materiality of the breach. In Grubb Bros. v. Moore, Clemens & Co., 60 S.E. 757 (1908), the Virginia Court of Appeals applied principles similar to Restatement factors (1) and (5) (the good faith and fair dealing factor).[17] In both Federal Ins. Co. v. Starr Electric Co., 410 S.E.2d 684 (Va. 1991) and Countryside Orthopaedics, P.C., v. Peyton, 541 S.E.2d 279 (Va. 2001), the decisions cited as important reasoning that approximates Restatement factor (1). In Neely v. White, the Supreme Court of Virginia court applied principles that are now Restatement

---

[16] The Restatement of the Law of Contracts was approved and promulgated in May 1932, and the Restatement (Second) of Contracts was approved and promulgated in April 1981.

[17] Interestingly, the Grubb Bros. decision also suggests that the first breach might not preclude damages. But shortly thereafter, in 1921, the Supreme Court of Virginia stated:   "The rule is strict and inflexible that a plaintiff has no right of action for damages for breach of contract where he himself has breached the contract." Johnson v. Hoffman, 107 S.E. 645, 648 (Va. 1921).

factors (1) and (2), and in Horton, the Supreme Court of Virginia applied reasoning that strongly resembles Restatement factors (1), (2), and (4) (the cure factor).

Thus, if § 241, excepting factor (5), were found to provide the guide to decision, the result would be the same. Factor (4) (the cure factor) is not applicable on this record. And, as explained previously, ST was deprived of the benefit it reasonably expected (factor (1)), thereby animating the first material breach doctrine, and application of the doctrine does not work a forfeiture on UG (factor (3)). Factor (2), of course, must be applied at the time of the first breach, and there is no evidence that ST could have been compensated for the lost contract and benefit other than by receiving the insurance payments.

## CONCLUSION

For the reasons stated above, ST has met its burden on its first material breach defense, and judgment will be entered for ST on Count IV of UG's Counterclaim. The DEFENDANT UNITED GUARANTY'S REQUEST FOR ENTRY OF FINAL JUDGMENT ON COUNTERCLAIM COUNT IV (Docket No. 617) will be denied, and SUNTRUST'S MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE SUMMARY JUDGMENT, ON COUNT IV OF UNITED GUARANTY'S COUNTERCLAIM (Docket Nos. 627

and 628) will be granted.

It is so ORDERED.

_____ /s/       *REP*_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March *13*, 2014